# ATTACHMENT

# W

26 C.F.R. § 1.861-8

Treas. Reg. § 1.861-8

**Effective: April 09, 2008**

Code of Federal Regulations Currentness
  Title 26. Internal Revenue
    Chapter I. Internal Revenue Service, Department of the Treasury
      Subchapter A. Income Tax
        Part 1. Income Taxes (Refs & Annos)
          Normal Taxes and Surtaxes
            Tax Based on Income from Sources Within or Without the United States
              Determination of Sources of Income

**§ 1.861-8 Computation of taxable income from sources within the United States and from other sources and activities.**

**(a) In general–(1) Scope.** Sections 861(b) and 863(a) state in general terms how to determine taxable income of a taxpayer from sources within the United States after gross income from sources within the United States has been determined. Sections 862(b) and 863(a) state in general terms how to determine taxable income of a taxpayer from sources without the United States after gross income from sources without the United States has been determined. This section provides specific guidance for applying the cited Code sections by prescribing rules for the allocation and apportionment of expenses, losses, and other deductions (referred to collectively in this section as "deductions") of the taxpayer. The rules contained in this section apply in determining taxable income of the taxpayer from specific sources and activities under other sections of the Code, referred to in this section as operative sections. See paragraph (f)(1) of this section for a list and description of operative sections. The operative sections include, among others, sections 871(b) and 882 (relating to taxable income of a nonresident alien individual or a foreign corporation which is effectively connected with the conduct of a trade or business in the United States), section 904(a)(1) (as in effect before enactment of the Tax Reform Act of 1976, relating to taxable income from sources within specific foreign countries), and section 904(a)(2) (as in effect before enactment of the Tax Reform Act of 1976, or section 904(a) after such enactment, relating to taxable income from all sources without the United States).

**(2) Allocation and apportionment of deductions in general.** A taxpayer to which this section applies is required to allocate deductions to a class of gross income, and then, if necessary to make the determination required by the operative section of the Code, to apportion deductions within the class of gross income between the statutory grouping of gross income (or among the statutory groupings) and the residual grouping of gross income. Except for deductions, if any, which are not definitely related to gross income (see paragraphs (c)(3) and (e)(9) of this section) and which, therefore, are ratably apportioned to all gross income, all deductions of the taxpayer (except the deductions for personal exemptions enumerated in paragraph (e)(11) of this section) must be so allocated and apportioned. As further detailed below, allocations and apportionments are made on the basis of the factual relationship of deductions to gross income.

**(3) Class of gross income.** For purposes of this section, the gross income to which a specific deduction is definitely related is referred to as a "class of gross income" and may consist of one or more items (or subdivisions of these items) of gross income enumerated in section 61, namely:

**(i)** Compensation for services, including fees, commissions, and similar items;

**(ii)** Gross income derived from business;

**(iii)** Gains derived from dealings in property;

**(iv)** Interest;

**(v)** Rents;

**(vi)** Royalties;

**(vii)** Dividends;

**(viii)** Alimony and separate maintenance payments;

**(ix)** Annuities;

**(x)** Income from life insurance and endowment contracts;

**(xi)** Pensions;

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.     **Attachment W– page 1 of 28**

26 C.F.R. § 1.861-8

**(xii)** Income from discharge of indebtedness;

**(xiii)** Distributive share of partnership gross income;

**(xiv)** Income in respect of a decedent;

**(xv)** Income from an interest in an estate or trust.

**(4) Statutory grouping of gross income and residual grouping of gross income.** For purposes of this section, the term "statutory grouping of gross income" or "statutory grouping" means the gross income from a specific source or activity which must first be determined in order to arrive at "taxable income" from which specific source or activity under an operative section. (See paragraph (f)(1) of this section.) Gross income from other sources or activities is referred to as the "residual grouping of gross income" or "residual grouping." For example, for purposes of determining taxable income from sources within specific foreign countries and possessions of the United States, in order to apply the per-country limitation to the foreign tax credit (as in effect before enactment of the Tax Reform Act of 1976), the statutory groupings are the separate gross incomes from sources within each country and possession. Moreover, if the taxpayer has income subject to section 904(d) (as in effect after enactment of the Tax Reform Act of 1976), such income constitutes one or more separate statutory groupings. In the case of the per-country limitation, the residual grouping is the aggregate of gross income from sources within the United States. In some instances, where the operative section so requires, the statutory grouping or the residual grouping may include, or consist entirely of, excluded income. See paragraph (d)(2) of this section with respect to the allocation and apportionment of deductions to excluded income.

**(5) Effective date--(i) Taxable years beginning after December 31, 1976.** The provisions of this section apply to taxable years beginning after December 31, 1976.

**(ii)** [Reserved]. For further guidance, see § 1.861-8T(a)(5) (ii).

**(iii) Taxable years beginning before January 1, 1977.** For taxable years beginning before January 1,

1977, § 1.861-8 applies as in effect on October 23, 1957 (T.D. 6258), as amended on August 22, 1966 (T.D. 6892) and on September 29, 1975 (T.D. 7378). The specific rules for allocation and apportionment of deductions set forth in this section may, at the option of the taxpayer, apply to those taxable years on a deduction-by-deduction basis if the rules are applied consistently to all taxable years with respect to which action by the Internal Revenue Service is not barred by any statute of limitations. Thus, for example, a calendar year taxpayer may choose to have the rules of paragraph (e)(2) of this section apply for the allocation and apportionment of all interest expenses for the two taxable years ending December 31, 1975 and 1976, which are open years under examination, and may justify the allocation and apportionment of all research and development expenses for those years on a basis supportable under § 1.861-8 as in effect for 1975 and 1976 without regard to the rules of paragraph (e)(3) of this section.

**(b) Allocation--(1) In general.** For purposes of this section, the gross income to which a specific deduction is definitely related is referred to as a "class of gross income" and may consist of one or more items of gross income. The rules emphasize the factual relationship between the deduction and a class of gross income. See paragraph (d)(1) of this section which provides that in a taxable year there may be no item of gross income in a class or less gross income than deductions allocated to the class, and paragraph (d)(2) of this section which provides that a class of gross income may include excluded income. Allocation is accomplished by determining, with respect to each deduction, the class of gross income to which the deduction is definitely related and then allocating the deduction to such class of gross income (without regard to the taxpayable year in which such gross income is received or accrued or is expected to be received or accrued). The classes of gross income are not predetermined but must be determined on the basis of the deductions to be allocated. Although most deductions will be definitely related to some class of a taxpayer's total gross income, some deductions are related to all gross income. In addition, some deductions are treated as not definitely related to any gross income and are ratably apportioned to all gross income. (See paragraph (e)(9) of this section.) In allocating deductions it is not necessary to differentiate between deductions related to one item of gross income and deductions related to another item of gross income where both items of gross income are exclusively within the same statutory grouping or exclusively within the residual grouping.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.     **Attachment W– page 2 of 28**

26 C.F.R. § 1.861-8

**(2) Relationship to activity or property.** A deduction shall be considered definitely related to a class of gross income and therefore allocable to such class if it is incurred as a result of, or incident to, an activity or in connection with property from which such class of gross income is derived. Where a deduction is incurred as a result of, or incident to, an activity or in connection with property, which activity or property generates, has generated, or could reasonably have been expected to generate gross income, such deduction shall be considered definitely related to such gross income as a class whether or not there is any item of gross income in such class which is received or accrued during the taxable year and whether or not the amount of deductions exceeds the amount of the gross income in such class. See paragraph (d)(1) of this section and example 17 of paragraph (g) of this section with respect to cases in which there is an excess of deductions. In some cases, it will be found that this subparagraph can most readily be applied by determining, with respect to a deduction, the categories of gross income to which it is not related and concluding that it is definitely related to a class consisting of all other gross income.

**(3) Supportive functions.** [Reserved] For guidance, see § 1.861-8T(b)(3).

**(4) Deductions related to a class of gross income.** See paragraph (e) of this section for rules relating to the allocation and apportionment of certain specific deductions definitely related to a class of gross income. See paragraph (c)(1) of this section for rules relating to the apportionment of deductions.

**(5) Deductions related to all gross income.** If a deduction does not bear a definite relationship to a class of gross income constituting less than all of gross income, it shall ordinarily be treated as definitely related and allocable to all of the taxpayer's gross income except where provided to the contrary under paragraph (e) of this section. Paragraph (e)(9) of this section lists various deductions which generally are not definitely related to any gross income and are ratably apportioned to all gross income.

**(c) Apportionment of deductions--(1) Deductions definitely related to a class of gross income.** [Reserved]

For guidance, see § 1.861-8T(c)(1).

**(2) Apportionment based on assets.** [Reserved] For guidance, see § 1.861- 8T(c)(2).

**(3) Deductions not definitely related to any gross income.** If a deduction is not definitely related to any gross income (see paragraph (e)(9) of this section), the deduction must be apportioned ratably between the statutory grouping (or among the statutory groupings) of gross income and the residual grouping. Thus, the amount apportioned to each statutory grouping shall be equal to the same proportion of the deduction which the amount of gross income in the statutory grouping bears to the total amount of gross income. The amount apportioned to the residual grouping shall be equal to the same proportion of the deduction which the amount of the gross income in the residual grouping bears to the total amount of gross income.

**(d) Excess of deductions and excluded and eliminated income--(1) Excess of deductions.** Each deduction which bears a definite relationship to a class of gross income shall be allocated to that class in accordance with paragraph (b)(1) of this section even though, for the taxable year, no gross income in such class is received or accrued or the amount of the deduction exceeds the amount of such class of gross income. In apportioning deductions, it may be that, for the taxable year, there is no gross income in the statutory grouping (or residual grouping), or that deductions exceed the amount of gross income in the statutory grouping (or residual grouping). If there is no gross income in a statutory grouping or the amount of deductions allocated and apportioned to a statutory grouping exceeds the amount of gross income in the statutory grouping, the effects are determined under the operative section. If the taxpayer is a member of a group filing a consolidated return, such excess of deductions allocated or apportioned to a statutory grouping of income of such member is taken into account in determining the consolidated taxable income from such statutory grouping, and such excess of deductions allocated or apportioned to the residual grouping of income is taken into account in determining the consolidated taxable income from the residual grouping. See § 1.1502-4(d)(1) and the last sentence of § 1.1502-12. For an illustration of the principles of this paragraph (d)(1), see example 17 of paragraph (g) of this section.

**(2) Allocation and apportionment to exempt,**

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

26 C.F.R. § 1.861-8

**excluded, or eliminated income.** [Reserved] For guidance, see § 1.861-8T(d)(2).

**(e) Allocation and apportionment of certain deductions--(1) In general.** Paragraphs (e)(2) and (e)(3) of this section contain rules with respect to the allocation and apportionment of interest expense and research and development expenditures, respectively. Paragraphs (e)(4) through (e)(8) of this section contain rules with respect to the allocation of certain other deductions. Paragraph (e)(9) of this section lists those deductions which are ordinarily considered as not being definitely related to any class of gross income. Paragraph (e)(10) of this section lists special deductions of corporations which must be allocated and apportioned. Paragraph (e)(11) of this section lists personal exemptions which are neither allocated nor apportioned. Paragraph (e)(12) of this section contains rules with respect to the allocation and apportionment of deductions for charitable contributions. Examples of allocation and apportionment are contained in paragraph (g) of this section.

**(2) Interest.** [Reserved] For guidance, see § 1.861-8T(e)(2).

**(3) Research and experimental expenditures.** For rules regarding the allocation and apportionment of research and experimental expenditures, see § 1.861-17.

**(4)** [Reserved]. For further guidance, see § 1.861-8T(e)(4).

**(5) Legal and accounting fees and expenses.** Fees and other expenses for legal and accounting services are ordinarily definitely related and allocable to specific classes of gross income or to all the taxpayer's gross income, depending on the nature of the services rendered (and are apportioned as provided in paragraph (c)(1) of this section). For example, accounting fees for the preparation of a study of the costs involved in manufacturing a specific product will ordinarily be definitely related to the class of gross income derived from (or which could reasonably have been expected to be derived from) that specific product. The taxpayer is not relieved from his responsibility to make a proper allocation and apportionment of fees on the grounds that the statement of services rendered does not identify the services performed beyond a generalized designation such as "professional," or does not

provide any type of allocation, or does not properly allocate the fees involved.

**(6) Income taxes--(i) In general.** The deduction for state, local, and foreign income, war profits and excess profits taxes ("state income taxes") allowed by section 164 shall be considered definitely related and allocable to the gross income with respect to which such state income taxes are imposed. For example, if a domestic corporation is subject to state income taxation and the state income tax is imposed in part on an amount of foreign source income, then that part of the taxpayer's deduction for state income tax that is attributable to foreign source income is definitely related and allocable to foreign source income. In allocating and apportioning the deduction for state income tax for purposes including (but not limited to) the computation of the foreign tax credit limitation under section 904 of the Code and the consolidated foreign tax credit under § 1.1502-4 of the regulations, the income upon which the state income tax is imposed is determined by reference to the law of the jurisdiction imposing the tax. Thus, if a state attributes taxable income to a corporate taxpayer by applying an apportionment formula that takes into consideration the income and factors of one or more corporations related by ownership to the corporate taxpayer and engaging in activities related to the business of the corporate taxpayer, then the income so attributed is the income upon which the state income tax is imposed. If the income so attributed to the corporate taxpayer includes foreign source income, then, in computing the taxpayer's foreign tax credit limitation under section 904, for example, the taxpayer's deduction for state income tax will be considered definitely related and allocable to a class of gross income that includes the statutory grouping of foreign source income. When the law of the state includes dividends that are treated under section 862(a)(2) as income from sources without the United States in taxable income apportionable to the state, but does not include factors of the corporation paying such dividends in the apportionment formula used to determine state taxable income, an appropriate portion of the deduction for state income tax will be considered definitely related and allocable to a class of gross income consisting solely of foreign source dividend income. A deduction for state income tax will not be considered definitely related to a hypothetical amount of income calculated under federal tax principles when the jurisdiction imposing the tax computes taxable income under different

26 C.F.R. § 1.861-8

principles. A corporate taxpayer's deduction for a state franchise tax that is computed on the basis of income attributable to business activities conducted within the state must be allocated and apportioned in the same manner as the deduction for state income taxes. In determining, for example, both the foreign tax credit under section 904 of the Code and the consolidated foreign tax credit limitation under § 1.1502-4 of the regulations, the deduction for state income tax may be allocable and apportionable to foreign source income in a statutory grouping described in section 904(d) in a taxable year in which the taxpayer has no foreign source income in such statutory grouping. Alternatively, such an allocation or apportionment may be appropriate if a taxpayer corporation has no foreign source income in a statutory grouping, but its deduction is attributable to foreign source income in such grouping that is attributed to the taxpayer corporation under the law of a state which attributes taxable income to a corporation by applying an apportionment formula that takes into consideration the income and factors of one or more corporations related by ownership to the taxpayer corporation and engaging in activities related to the business of the taxpayer corporation. Example 30 of paragraph (g) of this section illustrates the application of this last rule.

**(ii) Methods of allocation and apportionment--(A)** In general. A taxpayer's deduction for a state income tax is to be allocated (and then apportioned, if necessary, subject to the rules of § 1.861-8(d)) by reference to the taxable income that the law of the taxing jurisdiction attributes to the taxpayer ("state taxable income").

(B) Effect of subsequent recomputations of state income tax. [Reserved]

(C) Illustrations--(1) In general. Examples 25 through 32 of paragraph (g) of § 1.861-8 illustrate, in the given factual situations, the application of this paragraph (e)(6) and the general rule of paragraph (b)(1) of this section that a deduction must be allocated to the class of gross income to which the deduction is factually related. In general, these examples employ a presumption that state income taxes are allocable to a class of gross income that includes the statutory grouping of income from sources without the United States when the total amount

of taxable income determined under state law exceeds the amount of taxable income determined under the Code (without taking into account the deduction for state income taxes) in the residual grouping of income from sources within the United States. A taxpayer that allocates and apportions the deduction for state income tax in accordance with the methodology of Example 25 of paragraph (g) of this section must also apply the modifications illustrated in Examples 26 and 27 of paragraph (g) of this section, when applicable. The modification illustrated in Example 26 is applicable when the deduction for state income tax is attributable in part to taxes imposed by a state which factually excludes foreign source income (as determined for federal income tax purposes) from state taxable income. The modification illustrated in Example 27 is applicable when the taxpayer has income-producing activities in a state which does not impose a corporate income tax. The specific allocation of state income tax illustrated in Example 28 follows the rule in paragraph (e)(6)(i) of this section, and must be applied whenever a taxpayer's state taxable income includes dividends apportioned to the state under a formula that does not take into account the factors of the corporations paying those dividends, regardless of whether the taxpayer uses the methodology of Example 25 with respect to the remainder of the deduction for state income taxes.

(2) Modifications. Before applying a method of allocation and apportionment illustrated in the examples, the computation of state taxable income under state law may be modified, subject to the approval of the District Director, to reflect more accurately the income with respect to which the state income tax is imposed. Any modification to the state law computation of state taxable income must yield an allocation and apportionment of the deduction for state income taxes that is consistent with the rules contained in this paragraph (e)(6), and that accurately reflects the factual relationship between the state income tax and the income on which that tax is imposed. For example, a modification to the computation of taxable income under state law might be appropriate to compensate for differences between the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Attachment W– page 5 of 28**

26 C.F.R. § 1.861-8

state law definition of taxable income and the federal definition of taxable income, due to a difference in the rate of allowable depreciation or the amount of another deduction that is allowable under both systems. This rule is illustrated in Example 31 of paragraph (g) of this section. However, a modification to the computation of taxable income under state law will not be appropriate, and will not more accurately reflect the factual relationship between the state tax and the income on which the tax is imposed, to the extent such modification reflects the fact that the state does not follow federal tax principles in attributing income to the taxpayer's activities in the state. This rule is illustrated in Example 32 of paragraph (g) of this section. A taxpayer may not modify the methods illustrated in the examples, or use an alternative method of allocation and apportionment of the deduction for state income taxes, if the modification or alternative method would be inconsistent with the rules of paragraph (e)(6)(i) of this section. A taxpayer that uses a method of allocation and apportionment other than one illustrated in Example 25 (as modified by Examples 26 and 27), or 29 with respect to a factual situation similar to those of the examples, must describe the alternative method on an attachment to its federal income tax return and establish to the satisfaction of the District Director, upon examination, that the result of the alternative method more accurately reflects the factual relationship between the state income tax and the income on which the tax is imposed.

(D) Elective safe harbor methods--(1) In general. In lieu of applying the rules set forth in paragraphs (e)(6)(ii) (A) through (C) of this section, a taxpayer may elect to allocate and apportion the deduction for state income tax in accordance with one of the two safe harbor methods described in paragraph (e)(6)(ii)(D) (2) and (3) of this section. A taxpayer shall make this election for a taxable year by filing a timely tax return for that year that reflects an allocation and apportionment of the deduction for state income tax under one of the safe harbor methods and attaching to such return a statement that the taxpayer has elected to use the safe harbor

method provided in either paragraph (e)(6)(ii)(D) (2) or (3) of this section, as appropriate. Once made, this election is effective for the taxable year for which made and all subsequent taxable years, and may be revoked only with the consent of the Commissioner. Example 33 of paragraph (g) of this section illustrates the application of these safe harbor methods.

(2) Method One--(i) Step One--Specific allocation to foreign source portfolio dividends and other income. If any portion of the deduction for state income tax is attributable to tax imposed by a state which includes in a corporate taxpayer's taxable income apportionable to the state, portfolio dividends (as defined in paragraph (i) of Example 28 of paragraph (g) of this section) that are treated under section 862(a)(2) as income from sources without the United States, but does not include factors of the corporations paying the portfolio dividends in the apportionment formula used to determine state taxable income, the taxpayer shall allocate an appropriate portion of the deduction to a class of gross income consisting solely of foreign source portfolio dividends. The portion of the deduction so allocated, and the amount of foreign source portfolio dividends included in such class, shall be determined in accordance with the methodology illustrated in paragraph (ii) of Example 28 of paragraph (g). If a state income tax is determined based upon formulary apportionment of the total taxable income attributable to the taxpayer's unitary business, the taxpayer must also apply the methodology illustrated in paragraph (ii)(C) through (G) of Example 29 of paragraph (g) of this section to make specific allocations of appropriate portions of the deduction for state income tax on the basis of income that, under separate accounting, would have been attributed to other members of the unitary group. The taxpayer shall reduce its aggregate state taxable income by the amount of foreign source portfolio dividends and other income to which a specific allocation is made (the reduced amount being referred to hereinafter as "adjusted state taxable income").

26 C.F.R. § 1.861-8

(ii) Step Two--Adjustment of U.S. source federal taxable income. If the taxpayer has significant income-producing activities in a state which does not impose a corporate income tax or other state tax measured by income derived from business activities in the state, the taxpayer shall reduce its U.S. source federal taxable income (solely for purposes of this safe harbor method) by the amount of federal taxable income attributable to its activities in such state. This amount shall be determined in accordance with the methodology illustrated in paragraph (ii) of Example 27 of paragraph (g) of this section, provided that the taxpayer shall be required to use the rules of the Uniform Division of Income for Tax Purposes Act to attribute income to the relevant state. The taxpayer's U.S. source federal taxable income, as so reduced, is referred to hereinafter as "adjusted U.S. source federal taxable income."

(iii) Step Three--Allocation. The taxpayer shall allocate the remainder of the deduction for state income tax (after reduction by the portion allocated to foreign source portfolio dividends and other income under Step One) in accordance with the methodology illustrated in paragraph (ii) of Example 25 of paragraph (g) of this section. However, the taxpayer shall substitute for the comparison of aggregate state taxable income to U.S. source federal taxable income, illustrated in paragraph (ii) of Example 25 of paragraph (g) of this section, a comparison of its adjusted state taxable income to an amount equal to 110% of its adjusted U.S. source federal taxable income.

(iv) Step Four--Apportionment. In the event that apportionment of the remainder of the deduction for state income tax is required, the taxpayer shall apportion that remaining deduction to U.S. source income in accordance with the methodology illustrated in paragraph (iii) of Example 25 of paragraph (g) of this section, substituting for domestic source income in that paragraph an amount equal to 110% of the taxpayer's

adjusted U.S. source federal taxable income. The remaining portion of the deduction shall be apportioned to the statutory groupings of foreign source income described in section 904(d) of the Code in accordance with the proportion of the income in each statutory grouping of foreign source income described in section 904(d) to the taxpayer's total foreign source federal taxable income (after reduction by the amount of foreign source portfolio dividends to which tax has been specifically allocated under Step One, above).

(3) Method Two--(i) Step One--Specific allocation to foreign source portfolio dividends and other income. Step One of this method is the same as Step One of Method One (as described in paragraph (e)(6)(ii)(D)(2)(i) of this section).

(ii) Step Two--Adjustment of U.S. source federal taxable income. Step Two of this method is the same as Step Two of Method One (as described in paragraph (e)(6)(ii)(D)(2)(ii) of this section).

(iii) Step Three--Allocation. The taxpayer shall allocate the remainder of the deduction for state income tax (after reduction by the portion allocated to foreign source portfolio dividends and other income under Step One) in accordance with the methodology illustrated in paragraph (ii) of Example 25 of paragraph (g) of this section. However, the taxpayer shall substitute for the comparison of aggregate state taxable income to U.S. source federal taxable income, illustrated in paragraph (ii) of Example 25 of paragraph (g) of this section, a comparison of its adjusted state taxable income to its adjusted U.S. source federal taxable income.

(iv) Step Four--Apportionment. In the event that apportionment of the deduction is required, the taxpayer shall apportion to U.S. source income that portion of the deduction that is attributable to state income taxes imposed upon an amount of state taxable income equal to adjusted U.S. source federal taxable income. The taxpayer shall

26 C.F.R. § 1.861-8

apportion the remaining amount of the deduction to U.S. and foreign source income in the same proportions that the taxpayer's adjusted U.S. source federal taxable income and foreign source federal taxable income (after reduction by the amount of foreign source portfolio dividends to which tax has been specifically allocated under Step One, above) bear to its total federal taxable income (taking into account the adjustment of U.S. source federal taxable income under Step Two and after reduction by the amount of foreign source portfolio dividends to which tax has been specifically allocated under Step One). The portion of the deduction apportioned to foreign source income shall be apportioned among the statutory groupings described in section 904(d) of the Code in accordance with the proportions of the taxpayer's total foreign source federal taxable income (after reduction by the amount of foreign source portfolio dividends to which tax has been specifically allocated under Step One, above) in each grouping.

(iii) Effective dates. The rules of § 1.861-8(e)(6)(i) and the language preceding the examples in § 1.861-8(g) are effective for taxable years beginning after December 31, 1976. The rules of § 1.861-8(e)(6)(ii) (other than § 1.861-8(e)(6)(ii)(D)) and Examples 25 through 32 of § 1.861-8(g) are effective for taxable years beginning on or after January 1, 1988. The rules of § 1.861-8(e)(6)(ii)(D) and Example 33 of § 1.861-8(g) are effective for taxable years ending after March 12, 1991. At the option of the taxpayer, however, the rules of § 1.861-8(e)(6)(ii) (other than § 1.861-8(e)(6)(ii)(D)) and Examples 25 through 32 of § 1.861-8(g) may be applied with respect to deductions for state taxes incurred in taxable years beginning before January 1, 1988.

(7) **Losses on the sale, exchange, or other disposition of property--(i) Allocation.** The deduction allowed for loss recognized on the sale, exchange, or other disposition of a capital asset or property described in section 1231(b) shall be considered a deduction which is definitely related and allocable to the class of gross income to which such asset or property ordinarily gives rise in the hands of the taxpayer. Where the nature of gross income

generated from the asset or property has varied significantly over several taxable years of the taxpayer, such class of gross income shall generally be determined by reference to gross income generated from the asset or property during the taxable year or years immediately preceding the sale, exchange, or other disposition of such asset or property. Thus, for example, where an asset generates primarily sales income from domestic sources in the early years of its operation and then is leased by the taxpayer to a foreign subsidiary in later years, the class of gross income to which the asset gives rise will be considered to be the rental income derived from the lease and will not include sales income from domestic sources.

(ii) **Apportionment of losses.** Where in the unusual circumstances that an apportionment of a deduction for losses on the sale, exchange, or other disposition of a capital asset or property described in section 1231(b) is necessary, the amount of such deduction shall be apportioned between the statutory grouping (or among the statutory groupings) of gross income (within the class of gross income) and the residual grouping (within the class of gross income) in the same proportion that the amount of gross income within such statutory grouping (or statutory groupings) and such residual grouping bear, respectively, to the total amount of gross income within the class of gross income. Apportionment will be necessary where, for example, the class of gross income to which the deduction is allocated consists of gross income (such as royalties) attributable to an intangible asset used both within and without the United States, or gross income (such as from sales or services) attributable to a tangible asset used both within and without the United States.

(iii) **Allocation of loss recognized in taxable years after 1986.** See §§ 1.865-1 and 1.865-2 for rules regarding the allocation of certain loss recognized in taxable years beginning after December 31, 1986.

(8) **Net operating loss deduction.** A net operating loss deduction allowed under section 172 shall be allocated and apportioned in the same manner as the deductions giving rise to the net operating loss deduction.

(9) **Deductions which are not definitely related.** Deductions which shall generally be considered as

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.     **Attachment W– page 8 of 28**

26 C.F.R. § 1.861-8

not definitely related to any gross income, and therefore are ratably apportioned as provided in paragraph (c)(3) of this section, are--

**(i)** The deduction allowed by section 163 for interest described in subparagraph (2)(iii) of this paragraph (e);

**(ii)** The deduction allowed by section 164 for real estate taxes on a personal residence or for sales tax on the purchase of items for personal use;

**(iii)** The deduction for medical expenses allowed by section 213; and

**(iv)** The deduction for alimony payments allowed by section 215.

**(10) Special deductions.** The special deductions allowed in the case of a corporation by section 241 (relating to the deductions for partially tax exempt interest, dividends received, etc.), section 922 (relating to Western Hemisphere trade corporations), and section 941 (relating to China Trade Act corporations) shall be allocated and apportioned consistent with the principles of this section.

**(11) Personal exemptions.** The deductions for the personal exemptions allowed by section 151, 642(b), or 873(b)(3) shall not be taken into account for purpose of allocation and apportionment under this section.

**(12) Deductions for certain charitable contributions--(i) In general.** The deduction for charitable contributions that is allowed under sections 170, 873(b)(2), and 882(c)(1)(B) is definitely related and allocable to all of the taxpayer's gross income. The deduction allocated under this paragraph (e)(12)(i) shall be apportioned between the statutory grouping (or among the statutory groupings) of gross income and the residual grouping on the basis of the relative amounts of gross income from sources in the United States in each grouping.

**(ii) Treaty provisions.** If a deduction for charitable contributions not otherwise permitted by sections 170, 873(b)(2), and 882(c)(1)(B) is allowed under a U.S. income tax treaty, and such treaty limits the amount of the deduction based on a percentage of

income arising from sources within the treaty partner, the deduction is definitely related and allocable to all of the taxpayer's gross income. The deduction allocated under this paragraph (e)(12)(ii) shall be apportioned between the statutory grouping (or among the statutory groupings) of gross income and the residual grouping on the basis of the relative amounts of gross income from sources within the treaty partner within each grouping.

**(iii) Coordination with §§ 1.861-14 and 1.861-14T.** A deduction for a charitable contribution by a member of an affiliated group shall be allocated and apportioned under the rules of this section, § 1.861-14(e)(6), and § 1.861-14T(c)(1).

**(iv) Effective date.** (A) The rules of paragraphs (e)(12)(i) and (iii) of this section shall apply to charitable contributions made on or after July 28, 2004. Taxpayers may apply the provisions of paragraphs (e)(12)(i) and (iii) of this section to charitable contributions made before July 28, 2004, but during the taxable year ending on or after July 28, 2004.

(B) The rules of paragraphs (e)(12)(ii) of this section shall apply to charitable contributions made on or after July 14, 2005. Taxpayers may apply the provisions of paragraph (e)(12)(ii) of this section to charitable contributions made before July 14, 2005, but during the taxable year ending on or after July 14, 2005.

**(f) Miscellaneous matters--(1) Operative sections.** The operative sections of the Code which require the determination of taxable income of the taxpayer from specific sources or activities and which give rise to statutory groupings to which this section is applicable include the sections described below.

**(i) Overall limitation to the foreign tax credit.** Under the overall limitation to the foreign tax credit, as provided in section 904(a)(2) (as in effect before enactment of the Tax Reform Act of 1976, or section 904(a) after such enactment) the amount of the foreign tax credit may not exceed the tentative U.S. tax (i.e., the U.S. tax before application of the foreign tax credit) multiplied by a fraction, the numerator of which is the taxable income from sources without the United States and the denominator of which is the entire taxable income. Accordingly, in this case, the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Attachment W– page 9 of 28**

26 C.F.R. § 1.861-8

statutory grouping is foreign source income (including, for example, interest received from a domestic corporation which meets the tests of section 861(a)(1)(B), dividends received from a domestic corporation which has an election in effect under section 936, and other types of income specified in section 862). Pursuant to sections 862(b) and 863(a) and §§ 1.862-1 and 1.863-1, this section provides rules for identifying the deductions to be taken into account in determining taxable income from sources without the United States. See section 904(d) (as in effect after enactment of the Tax Reform Act of 1976) and the regulations thereunder which require separate treatment of certain types of income. See example 3 of paragraph (g) of this section for one example of the application of this section to the overall limitation.

**(ii)** [Reserved]

**(iii) DISC and FSC taxable income.** Sections 925 and 994 provide rules for determining the taxable income of a FSC and DISC, respectively, with respect to qualified sales and leases of export property and qualified services. The combined taxable income method available for determining a DISC's taxable income provides, without consideration of export promotion expenses, that the taxable income of the DISC shall be 50 percent of the combined taxable income of the DISC and the related supplier derived from sales and leases of export property and from services. In the FSC context, the taxable income of the FSC equals 23 percent of the combined taxable income of the FSC and the related supplier. Pursuant to regulations under sections 925 and 994, this section provides rules for determining the deductions to be taken into account in determining combined taxable income, except to the extent modified by the marginal costing rules set forth in the regulations under sections 925(b)(2) and 994(b)(2) if used by the taxpayer. See Examples (22) and (23) of paragraph (g) of this section. In addition, the computation of combined taxable income is necessary to determine the applicability of the section 925(d) limitation and the "no loss" rules of the regulations under sections 925 and 994.

**(iv) Effectively connected taxable income.** Nonresident alien individuals and foreign corporations engaged in trade or business within the United States, under sections 871(b)(1) and 882(a)(1), on taxable income which is effectively connected with the conduct of a trade or business within the United States. Such taxable income is determined in most instances by initially determining, under section 864(c), the amount of gross income which is effectively connected with the conduct of a trade or business within the United States. Pursuant to sections 873 and 882(c), this section is applicable for purposes of determining the deductions from such gross income (other than the deduction for interest expense allowed to foreign corporations (see § 1.882-5)) which are to be taken into account in determining taxable income. See example 21 of paragraph (g) of this section.

**(v) Foreign base company income.** Section 954 defines the term "foreign base company income" with respect to controlled foreign corporations. Section 954(b)(5) provides that in determining foreign base company income the gross income shall be reduced by the deductions of the controlled foreign corporation "properly allocable to such income". This section provides rules for identifying which deductions are properly allocable to foreign base company income.

**(vi) Other operative sections.** The rules provided in this section also apply in determining--

(A) The amount of foreign source items of tax preference under section 58(g) determined for purposes of the minimum tax;

(B) The amount of foreign mineral income under section 901(e);

(C) [Reserved]

(D) The amount of foreign oil and gas extraction income and the amount of foreign oil related income under section 907;

(E) The tax base for individuals entitled to the benefits of section 931 and the section 936 tax credit of a domestic corporation that has an election in effect under section 936;

(F) The exclusion for income from Puerto Rico for bona fide residents of Puerto Rico under section 933;

26 C.F.R. § 1.861-8

(G) The limitation under section 934 on the maximum reduction in income tax liability incurred to the Virgin Islands;

(H) The income derived from the U.S. Virgin Islands or from a section 935 possession (as defined in § 1.935-1(a)(3)(i)).

(I) The special deduction granted to China Trade Act corporations under section 941;

(J) The amount of certain U.S. source income excluded from the subpart F income of a controlled foreign corporation under section 952(b);

(K) The amount of income from the insurance of U.S. risks under section 953(b)(5);

(L) The international boycott factor and the specifically attributable taxes and income under section 999; and

(M) The taxable income attributable to the operation of an agreement vessel under section 607 of the Merchant Marine Act of 1936, as amended, and the Capital Construction Fund Regulations thereunder (26 CFR, part 3). See 26 CFR 3.2(b)(3).

**(2) Application to more than one operative section.** (i) Where more than one operative section applies, it may be necessary for the taxpayer to apply this section separately for each applicable operative section. In such a case, the taxpayer is required to use the same method of allocation and the same principles of apportionment for all operative sections.

**(ii)** When expenses, losses, and other deductions that have been properly allocated and apportioned between combined gross income of a related supplier and a DISC or former DISC and residual gross income, regardless of which of the administrative pricing methods of section 994 has been applied, such deductions are not also allocated and apportioned to gross income consisting of distributions from the DISC or former DISC attributable to income of the DISC or former DISC as determined under the administrative pricing methods

with respect to DISC or former DISC taxable years beginning after December 31, 1986. Accordingly, Example (22) of paragraph (g) of this section does not apply to distributions from a DISC or former DISC with respect to DISC or former DISC taxable years beginning after December 31, 1986. This rule does not apply to the extent that the taxable income of the DISC or former DISC is determined under the section 994(a)(3) transfer pricing method. In addition, for taxable years beginning after December 31, 1986, in the case of expenses, losses, and other deductions that have been properly allocated and apportioned between combined gross income of a related supplier and a FSC and residual gross income, regardless of which of the administrative pricing methods of section 925 has been applied, such deductions are not also allocated and apportioned to gross income consisting of distributions from the FSC or former FSC which are attributable to the foreign trade income of the FSC or former FSC as determined under the administrative pricing methods. This rule does not apply to the extent that the foreign trade income of the FSC or former FSC is determined under the section 925(a)(3) transfer pricing method. See Example (23) of paragraph (g) of this section.

**(3) Special rules of section 863(b)--(i) In general.** Special rules under section 863(b) provide for the application of rules of general apportionment provided in §§ 1.863-3 to 1.863-5, to worldwide taxable income in order to attribute part of such worldwide taxable income to U.S. sources and the remainder of such worldwide taxable income to foreign sources. The activities specified in section 863(b) are--

(A) Transportation or other services rendered partly within and partly without the United States,

(B) Sales of personal property produced by the taxpayer within and sold without the United States, or produced by the taxpayer without and sold within the United States, and

(C) Sales within the United States of personal property purchased within a possession of the United States.

In the instances provided in §§ 1.863-3 and 1.863-4 with respect to the activities described in (A), (B), and (C) of

26 C.F.R. § 1.861-8

this subdivision, this section is applicable only in determining worldwide taxable income attributable to these activities.

**(ii) Relationship of sections 861, 862, 863(a), and 863(b).** Sections 861, 862, 863(a), and 863(b) are the four provisions applicable in determining taxable income from specific sources. Each of these four provisions applies independently. Where a deduction has been allocated and apportioned to income under one of these four provisions, the deduction shall not again be allocated and apportioned to gross income under any of the other three provisions. However, two or more of these provisions may have to be applied at the same time to determine the proper allocation and apportionment of a deduction. The special rules under section 863(b) take precedence over the general rules of Code sections 861, 862 and 863(a). For example, where a deduction is allocable in whole or in part to gross income to which section 863(b) applies, such deduction or part thereof shall not otherwise be allocated under section 861, 862, or 863(a). However, where the gross income to which the deduction is allocable includes both gross income to which section 863(b) applies and gross income to which section 861, 862, or 863(a) applies, more than one section must be applied at the same time in order to determine the proper allocation and apportionment of the deduction.

**(4) Adjustments made under other provisions of the Code--(i)** [Reserved]. For further guidance, see § 1.861-8T(f)(4)(i).

**(ii) Example.** X, a domestic corporation, purchases and sells consumer items in the United States and foreign markets. Its sales in foreign markets are made to related foreign subsidiaries. X reported $1,500,000 as sales during the taxable year of which $1,000,000 was domestic sales and $500,000 was foreign sales. X took a deduction for expenses incurred by its marketing department during the taxable year in the amount of $150,000. These expenses were determined to be allocable to both domestic and foreign sales and are apportionable between such sales. Thus, X allocated and apportioned the marketing department deduction as follows:

```
To gross income from domestic sales:
$150,000 x
   ($1,000,000/$1,500,000)
```

```
...........................................
...... $100,000
To gross income from foreign sales:
$150,000 x ($500,000/$1,500,000) ...
50,000

                                   _____
___
   Total
...........................................
...................... 150,000
```

On audit of X's return for the taxable year, the District Director adjusted, under section 482, X's sales to related foreign subsidiaries by increasing the sales price by a total of $100,000, thereby increasing X's foreign sales and total sales by the same amount. As a result of the section 482 adjustment, the apportionment of the deduction for the marketing department expenses is redetermined as follows:

```
To gross income from domestic sales:
$150,000 x
   ($1,000,000/$1,600,000)
...........................................
....... $93,750
To gross income from foreign sales:
$150,000 x ($600,000/$1,600,000)
...........................................
. 56,250

                                   ____
___
   Total
...........................................
...................... 150,000
```

**(5) Verification of allocations and apportionments.** Since, under this section, allocations and apportionments are made on the basis of the factual relationship between deductions and gross income, the taxpayer is required to furnish, at the request of the District Director, information from which such factual relationships can be determined. In reviewing the overall limitation to the foreign tax credit of a domestic corporation, for example, the District Director should consider information which would enable him to determine the extent to which deductions attributable to functions performed in the United States are related to earning foreign source income, United States source income, or income from both sources. In addition to functions with a specific

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.     **Attachment W– page** 12 of 28

26 C.F.R. § 1.861-8

international purpose, consideration should be given to the functions of management, the direction and results of an acquisition program, the functions of operating units and personnel located at the head office, the functions of support units (including but not limited to engineering, legal, budget, accounting, and industrial relations), the functions of selling and advertising units and personnel, the direction and uses of research and development and the direction and uses of services furnished by independent contractors. Thus, for example when requested by the District Director, the taxpayer shall make available any of its organization charts, manuals, and other writings which relate to the manner in which its gross income arises and to the functions of organizational units, employees, and assets of the taxpayer and arrange for the interview of such of its employees as the District Director deems desirable in order to determine the gross income to which deductions relate. See section 7602 and the regulations thereunder which generally provide for the examination of books and witnesses. See also section 905(b) and the regulations thereunder which require proof of foreign tax credits to the satisfaction of the Secretary or his delegate.

(g) **General examples.** The following examples illustrate the principles of this section. In each example, unless otherwise specified, the operative section which is applied and gives rise to the statutory grouping of gross income is the overall limitation to the foreign tax credit under section 904(a). In addition, in each example, where a method of allocation or apportionment is illustrated as an acceptable method, it is assumed that such method is used by the taxpayer on a consistent basis from year to year (except in the case of the optional method for apportioning research and development expense under paragraph (e)(3)(iii) of § 1.861-8). Further, it is assumed that each party named in each example operates on a calendar year accounting basis and, where the party is a U.S. taxpayer, files returns on a calendar year basis.

Examples 1 to 16--[Reserved]

**Example 17.** [Reserved]. For further guidance, see § 1.861-8T(g), Example 17.

**Example 18.** [Reserved]. For further guidance, see § 1.861-8T(g), Example 18.

**Example 19**--Supportive · Expense--(i) Facts. X, a

domestic corporation, purchases and sells products both in the United States and in foreign countries. X has no foreign subsidiary and no international department. During the taxable year, X incurs the following expenses with respect to its worldwide activities:

```
Personnel department expenses
.................................
$50,000
Training department expenses
.................................
35,000
General and administrative expenses
........................... 55,000
President's salary
.................................
....... 40,000
Sales manager's salary
.................................
... 20,000

                              -------
   Total
.................................
................ 200,000

                              -------

                              -------
```

X has domestic gross receipts from sales of $750,000 and foreign gross receipts from sales of $500,000 and has gross income from such sales in the same ratio, namely $300,000 from domestic sources and $200,000 from foreign sources.

(ii) Allocation. The above expenses are definitely related and allocable to all of X's gross income derived from both domestic and foreign markets.

(iii) Apportionment. For purposes of applying the overall limitation, the statutory grouping is gross income from sources outside the United States and the residual grouping is gross income from sources within the United States. X's deductions for its worldwide sales activities must be apportioned between these groupings. Company X in this example (unlike Company X in example 18) does not have a separate international division which performs essentially all of the functions required to manage and oversee its foreign activities. The president and sales manager do not maintain time records. The

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Attachment W-- page 13 of 28**

26 C.F.R. § 1.861-8

division of their time between domestic and foreign activities varies from day to day and cannot be estimated on an annual basis with any reasonable degree of accuracy. Similarly, there are no facts which would justify a method of apportionment of their salaries or of one of the other listed deductions based on more specific factors than gross receipts or gross income. An acceptable method of apportionment would be on the basis of gross receipts. The apportionment of the $200,000 deduction is as follows:

```
Apportionment of the $200,000 expense
to the statutory grouping of
  gross income: $200,000 x
[$500,000/($500,000 + $750,000) ]
......... $80,000
Apportionment of the $200,000 expense
to the residual grouping of
  gross income: $200,000 x
[$750,000/($500,000 + $750,000) ]
......... 120,000

                             ----
---
  Total apportioned supportive expense
..............................
200,000
```

**Example 20**--Supportive Expense--(i) Facts. Assume the same facts as above except that X's president devotes only 5 percent of his time to the foreign operations and 95 percent of his time to the domestic operations and that X's sales manager devotes approximately 10 percent of his time to foreign sales and 90 percent of his time to domestic sales.

(ii) Allocation. The expenses incurred by X with respect to its worldwide activities are definitely related, and therefore allocable to X's gross income from both its foreign and domestic markets.

(iii) Apportionment. On the basis of the additional facts it is not acceptable to apportion the salaries of the president and the sales manager on the basis of gross receipts. It is acceptable to apportion such salaries between the statutory grouping (gross income from sources without the United States) and residual grouping (gross income from sources within the United States) on the basis of time devoted to each sales activity. Remaining expenses may still be apportioned on the basis of gross receipts. The apportionment is as follows:

```
Apportionment of the $200,000 expense
to the statutory grouping of
  gross income:
  President's salary: $40,000 x 5 pct
.............................
$2,000
  Sales manager's salary: $20,000 x
10 pct ...........................
2,000
  Remaining expenses: $140,000 x
[$500,000/($500,000 + $750,000) ] ....
56,000

                             ----
---
      Subtotal: Apportionment of
expense to statutory grouping .......
60,000
                             ----
---

                             ----
---
Apportionment of the $200,000 expense
to the residual grouping of
  gross income:
  President's salary: $40,000 x 95
pct .............................
38,000
  Sales manager's salary: $20,000 x
90 pct ..........................
18,000
  Remaining expenses: $140,000 x
[$750,000/($500,000 + $750,000) ] ....
84,000

                             ----
---
      Subtotal: Apportionment of
expense to residual grouping .......
140,000

                             ----
---

                             ----
---
      Total: Apportioned general and
administrative expense ........
200,000
```

26 C.F.R. § 1.861-8

**Example 21**--Supportive Expense--(i) Facts. X, a foreign corporation doing business in the United States, is a manufacturer of metal stamping machines. X has no United States subsidiaries and no separate division to manage and oversee its business in the United States. X manufactures and sells these machines in the United States and in foreign countries A and B and has a separate manufacturing facility in each country. Sales of these machines are X's only source of income. In 1977, X incurs general and administrative expenses related to both its U.S. and foreign operations of $100,000. It has machine sales of $500,000, $1,000,000 and $1,000,000 on which it earns gross income of $200,000, $400,000 and $400,000 in the United States, country A, and country B, respectively. The income from the manufacture and sale of the machines in countries A and B is not effectively connected with X's business in the United States.

(ii) Allocation. The $100,000 of general and administrative expense is definitely related to the income to which it gives rise, namely a part of the gross income from sales of machines in the United States, in country A, and in country B. The expenses are allocable to this class of income. even though X's gross income from sources outside the United States is excluded income since it is not effectively connected with a U.S. trade or business.

(iii) Apportionment. Since X is a foreign corporation, the statutory grouping is gross income effectively connected with X's trade of business in the United States. namely gross income from sources within the United States. and the residual grouping is gross income not effectively connected with a trade or business in the United States. namely gross income from countries A and B. Since there are no facts which would require a method of apportionment other than on the basis of sales or gross income. the amount may be apportioned between the two groupings on the basis of amounts of gross income as follows:

```
Apportionment of general and
administrative expense to the
statutory
   grouping, gross income from sources
within the United States:
   $100,000 x [$200,000/($200,000 +
$400,000 + $400,000) ] .............
$20,000
Apportionment of general and
administrative expense to the residual
```

```
   grouping, gross income from sources
without the United States:
   $100,000 x [ ($400,000 +
$400,000)/($200,000 + $400,000 +
   $400,000) ]
.......................................
..................... 80,000

                                ----
---
   Total apportioned general and
administrative expense ..........
100,000
```

**Example 22**--Domestic International Sales Corporations--(i) Facts. X, a domestic corporation, manufactures a line of kitchenware and sells it to retailers in the United States, France, and the United Kingdom. After the Domestic International Sales Corporation (DISC) legislation was passed in 1971, X established, as of January 1, 1972, a DISC and thereafter did all of its foreign marketing through sales by the DISC. In 1977 the DISC has total sales of $7,700,000 for which X's cost of goods sold is $6,000,000. Thus, the gross income attributable to exports through the DISC is $1,700,000 ($7,700,000 - $6,000,000). Moreover, X has U.S. domestic sales of kitchenware of $12,000,000 on which it earned gross income of $900,000, and X receives royalty income from the foreign license of its kitchenware technology in the amount of $800,000. The DISC's expenses attributable to the resale of export property are $400,000 of which $300,000 qualify as export promotion expenses. X also incurs $125,000 of general and administrative expenses in connection with its domestic and foreign sales activities, and its foreign licensing activities. X and the DISC determine transfer prices charged on the basis of a single product grouping and the "50-50" combined taxable income method (without marginal costing) which permits the DISC to have a taxable income equal to 50 percent of the combined taxable income attributable to the production and sales of the export property. plus 10 percent of the DISC's export promotion expenses.

(ii) Allocation. For purposes of determining combined taxable income of X and the DISC from export sales. general and administrative expenses of $125,000 must be allocated to and apportioned between gross income resulting from the production and sale of kitchenware for export, and from the production and sale of kitchenware for the domestic market. The deduction of $400,000 for expenses attributable to the resale of export property is

26 C.F.R. § 1.861-8

allocated solely to gross income from the production and sale of kitchenware in foreign markets.

(iii) Apportionment. Apportionment of expense takes place in two stages. In the first stage, for computing combined taxable income from the production and sale of export property, the general and administrative expense should be apportioned between the statutory grouping of gross income from the export of kitchenware and the residual grouping of gross income from domestic sales and foreign licenses. In the second stage, since the limitation on the foreign tax credit requires the use of a separate limitation with respect to dividends from a DISC (section 904(d)), the general and administrative expense should be apportioned between two statutory groupings, DISC dividends and foreign royalty income (for which the overall limitation is used), and the residual grouping of gross income from sales within the United States. In the first stage, in the absence of more specific or contrary information, the general and administrative expense may be apportioned on the basis of gross income in the respective groupings, as follows:

```
Apportionment of general and
administrative expense to the
statutory
  grouping, gross income from exports
of kitchenware: $125,000 x
  [$1,700,000/($1,700,000 + $900,000 +
$800,000)] ....................
$62,500
Apportionment of general and
administrative expense to the residual
  grouping, gross income from domestic
sales of kitchenware and
  foreign royalty income from
licensing kitchenware technology:
  $125,000 x [ ($900,000 +
$800,000)/($1,700,000 + $900,000 +
  $800,000) ]
......................................
.................... 62,500
                                  ----
___
      Total apportionment of general
and administrative expense ......
125,000
```

On the basis of this apportionment, the combined taxable income, and the DISC portion of taxable income may be calculated as follows:

```
Gross income from exports
..............................
$1,700,000
Less:
    DISC expense for resale of export
property ............ 400,000
    Apportioned general and
administrative expense ........
62,500

            ----------

$462,500

                        ------
---
Combined taxable income from
production and export of kitchenware
... 1,237,500

                        ------
---

                        ------
---
DISC income:
    50 pct of combined taxable income
..............................
618,750
    10 pct of export promotion
expense of $300,000
.................... 30,000

                        ------
---
      Total DISC income
......................................
..... 648,750
DISC income as a percentage of
combined taxable income
.................... 52.4
```

In the second stage, in the absence of more specific or contrary information, the general and administrative expense may also be apportioned on the basis of gross income in the respective groupings. Since DISC taxable income is 52.4 percent of combined taxable income, DISC gross income is treated as 52.4 percent of the gross income from exports $1,700,000. The apportionment follows:

26 C.F.R. § 1.861-8

```
Apportionment of general and
administrative expense to the
statutory
  grouping, DISC dividends: $125,000 x
[ (0.524 x
  $1,700,000)/($1,700,000 + $900,000 +
$800,000) ] ..................
$32,750
Apportionment of general and
administrative expense to the
statutory
  grouping, foreign royalty income:
$125,000 x [ $800,000/($1,700,000 +
  $900,000 + $800,000) ]
..................................
......... 29,412
Apportionment of general and
administrative expense to the residual
  grouping, gross income from sources
within the United States:
  $125,000 x [ ($900,000 + (0.476 x
$1,700,000))/($1,700,000 +
  $900,000 + $800,000) ]
..................................
......... 62,838

                                ----
---
        Total apportioned general and
administrative expense ..........
125,000
```

(iv) This Example 22 applies only to DISC taxable
years ending before January 1, 1987, and to distributions
from a DISC or former DISC with respect to DISC or
former DISC taxable years ending before January 1, 1987.

**Example 23**--[Reserved]

**Example 24**--[Reserved] For guidance, see § 1.861-
8T(g) Example 24.

**Example 25**--Income Taxes--(i) Facts. X, a domestic
corporation, is a manufacturer and distributor of
electronic equipment with operations in states A, B, and
C. X also has a branch in country Y which manufactures
and distributes the same type of electronic equipment. In
1988, X has taxable income from these activities, as
described under the Code (without taking into account the
deduction for state income taxes), of $1,000,000, of which

$200,000 is foreign source general limitation income
subject to a separate limitation under section 904(d)(1)(I)
("general limitation income") and $800,000 is domestic
source income. States A, B, and C each determine X's
income subject to tax within their state by making
adjustments to X's taxable income as determined under
the Code, and then apportioning the adjusted taxable
income on the basis of the relative amounts of X's payroll,
property, and sales within each state as compared to X's
worldwide payroll, property, and sales. The adjustments
made by states A, B, and C all involve adding and
subtracting enumerated items from taxable income as
determined under the Code. However, in making these
adjustments to taxable income, none of the states
specifically exempts foreign source income as determined
under the Code. On this basis, it is determined that X has
taxable income of $550,000, $200,000, and $200,000 in
states A, B, and C, respectively. The corporate tax rates in
states A, B, and C are 10 percent, 5 percent, and 2
percent, respectively, and X has total state income tax
liabilities of $69,000 ($55,000 + $10,000 + $4,000),
which it deducts as an expense for federal income tax
purposes.

(ii) Allocation. X's deduction of $69,000 for state
income taxes is definitely related and thus allocable to the
gross income with respect to which the taxes are imposed.
Since the statutes of states A, B, and C do not specifically
exempt foreign source income (as determined under the
Code) from taxation and since, in the aggregate, states A,
B, and C tax $950,000 of X's income while only $800,000
is domestic source income under the Code, it is presumed
that state income taxes are imposed on $150,000 of
foreign source income. The deduction for state income
taxes is therefore related and allocable to both X's foreign
source and domestic source income.

(iii) Apportionment. For purposes of computing the
foreign tax credit limitation, X's income is comprised of
one statutory grouping, foreign source general limitation
gross income, and one residual grouping, gross income
from sources within the United States. The state income
tax deduction of $69,000 must be apportioned between
these two groupings. Corporation X calculates the
apportionment on the basis of the relative amounts of
foreign source general limitation taxable income and U.S.
source taxable income subject to state taxation. In this
case, state income taxes are presumed to be imposed on
$800,000 of domestic source income and $150,000 of
foreign source general limitation income.

26 C.F.R. § 1.861-8

```
State income tax deduction apportioned
to foreign source general
  limitation income (statutory
grouping): $69,000 x
  ($150,000/$950,000)
.......................................
.......... $10,895
State income tax deduction apportioned
to income from sources
  within the United States (residual
grouping): $69,000 x
  ($800,000/$950,000)
.......................................
........... 58,105
                              _____
---
Total apportioned state income tax
deduction .........................
$69,000
```

**Example 26--Income Taxes--(i) Facts.** Assume the same facts as in Example 25 except that the language of state A's statute and the statute's operation exempt from taxation all foreign source income, as determined under the Code, so that foreign source income is not included in adjusted taxable income subject to apportionment in state A (and factors relating to X's country Y branch are not taken into account in computing the state A apportionment fraction).

(ii) Allocation. X's deduction of $69,000 for state income taxes is definitely related and thus allocable to the gross income with respect to which the taxes are imposed. Since state A exempts all foreign source income by statute, state A is presumed to impose tax on $550,000 of X's $800,000 of domestic source income. X's state A tax of $55,000 is allocable, therefore, solely to domestic source income. Since the statutes of states B and C do not specifically exclude all foreign source income as determined under the Code, and since states B and C impose tax on $400,000 ($200,000 + $200,000) of X's income of which only $250,000 ($800,000 - $550,000) is presumed to be domestic source, the deduction for the $14,000 of income taxes imposed by states B and C is related and allocable to both foreign source and domestic source income.

(iii) Apportionment. (A) For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation

gross income, and one residual grouping, gross income from sources within the United States. The deduction of $14,000 for income taxes of states B and C must be apportioned between these two groupings.

(B) Corporation X calculates the apportionment on the basis of the relative amounts of foreign source general limitation income and U.S. source income subject to state taxation.

```
States B and C income tax deduction
apportioned to foreign source
  general limitation income (statutory
grouping): $14,000 x
  ($150,000/$400,000)
.......................................
........... $5,250
States B and C income tax deduction
apportioned to income from sources
  within the United States (residual
grouping): $14,000 x
  ($250,000/$400,000)
.......................................
........... 8,750
                              ____
---
Total apportioned state income tax
deduction .........................
$14,000
```

(C) Of X's total income taxes of $69,000, the amount allocated and apportioned to foreign source general limitation income equals $5,250. The total amount of state income taxes allocated and apportioned to U.S. source income equals $63,750 ($55,000 + $8,750).

**Example 27--Income Tax--(i) Facts.** Assume the same facts as in Example 25 except that state A, in which X has significant income-producing activities, does not impose a corporate income tax or other state tax computed on the basis of income derived from business activities conducted in state A. X therefore has a total state income tax liability in 1988 of $14,000 ($10,000 paid to state B plus $4,000 paid to state C), all of which is subject to allocation and apportionment under paragraph (b) of this section.

(ii) Allocation. (A) X's deduction of $14,000 for state income taxes is definitely related and allocable to the gross income with respect to which the taxes are imposed.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Attachment W-- page 18 of 28**

26 C.F.R. § 1.861-8

However, in these facts, an adjustment is necessary before the aggregate state taxable incomes can be compared with U.S. source income on the federal income tax return in the manner described in Examples 25 and 26. Unlike the facts in Examples 25 and 26, state A imposes no income tax and does not define taxable income attributable to activities in state A. The total amount of X's income subject to state taxation is, therefore, $400,000 ($200,000 in state B and $200,000 in state C). This total presumptively does not include any income attributable to activities performed in state A and therefore can not properly be compared to total U.S. source taxable income reported by X for federal income tax purposes, which does include income attributable to state A activities.

(B)(1) Accordingly, before applying the method used in Examples 25 and 26 to the facts of this example, it is necessary first to estimate the amount of taxable income that state A could reasonably attribute to X's activities in state A, and then to reduce federal taxable income by that amount.

(2) Any reasonable method may be used to attribute taxable income to X's activities in state A. For example, the rules of the Uniform Division of Income for Tax Purposes Act ("UDITPA") attribute income to a state on the basis of the average of three ratios that are based upon the taxpayer's facts-- property within the state over total property, payroll within the state over total payroll, and sales within the state over total sales--and, with adjustments, provide a reasonable method for this purpose. When applying the rules of UDITPA to estimate U.S. source income derived from state A activities, the taxpayer's UDITPA factors must be adjusted to eliminate both taxable income and factors attributable to a foreign branch. Therefore, in this example all taxable income as well as UDITPA apportionment factors (property, payroll, and sales) attributable to X's country Y branch must be eliminated.

(C)(1) Since it is presumed that, if state A had had an income tax, state A would not attempt to tax the income derived by X's country Y branch, any reasonable estimate of the income that would be taxed by state A must exclude any foreign source income.

(2) When using the rules of UDITPA to estimate the income that would have been taxable by state A in these facts, foreign source income is excluded by starting with federally defined taxable income (before deduction for state income taxes) and subtracting any income derived

by X's country Y branch. The hypothetical state A taxable income is then determined by multiplying the resulting difference by the average of X's state A property, payroll, and sales ratios, determined using the principles of UDITPA (after adjustment by eliminating the country Y branch factors). The resulting product is presumed to be exclusively U.S. source income, and the allocation and apportionment method described in Example 26 must then be applied.

(3) If, for example, state A taxable income were determined to equal $550,000, then $550,000 of U.S. source income for federal income tax purposes would be presumed to constitute state A taxable income. Under Example 26, the remaining $250,000 ($800,000 - $550,000) of U.S. source income for federal income tax purposes would be presumed to be subject to tax in states B and C. Since states B and C impose tax on $400,000, the application of Example 25 would result in a presumption that $150,000 is foreign source income and $250,000 is domestic source income. The deduction for the $14,000 of income taxes of states B and C would therefore be related and allocable to both foreign source and domestic source income and would be subject to apportionment.

(iii) Apportionment. The deduction of $14,000 for income taxes of states B and C is apportioned in the same manner as in Example 26. As a result, $5,250 of the $14,000 of state B and state C income taxes is apportioned to foreign source general limitation income ($14,000 x $150,000/$400,000), and $8,750 ($14,000 x $250,000/$400,000) of the $14,000 of state B and state C income taxes is apportioned to U.S. source income.

**Example 28--**Income Tax--(i) Facts. (A) Assume the same facts as in Example 25 (X has $1,000,000 of taxable income for federal income tax purposes, $800,000 of which is U.S. source income and $200,000 of which is foreign source general limitation income), except that $100,000 of X's $200,000 of foreign source general limitation income consists of dividends from first-tier controlled foreign corporations ("CFCs") (as defined in section 957(a) of the Code) which derive exclusively foreign source general limitation income. X owns stock representing 10 to 50 percent of the vote and value in such CFCs.

(B) State A taxable income is computed by first making adjustments to X's federal taxable income. These adjustments result in X having a total of $1,100,000 of

26 C.F.R. § 1.861-8

apportionable taxable income for state A tax purposes. None of the $100,000 of adjustments made by state A relate to the dividends paid by the CFCs. As in Example 25, the amount of apportionable taxable income attributable to business activities conducted in state A is determined by multiplying apportionable taxable income by a fraction (the "state apportionment fraction") that compares the relative amounts of X's payroll, property, and sales within state A with X's worldwide payroll, property and sales. An analysis of state A law indicates that state A law includes in its definition of the taxable business income of X which is apportionable to X's state A activities, dividends paid to X by its subsidiaries that are in the same business as X, but are less than 50 percent owned by X ("portfolio dividends"). The dividends received by X from the 10 to 50 percent owned first-tier CFCs, therefore, are considered to be portfolio dividends includable in apportionable business income for state A tax purposes. However, the factors of these CFCs are not included in the state A apportionment fraction for purposes of apportioning income to X's activities in the state. The comparison of X's state A factors with X's worldwide factors results in a state apportionment fraction of 50 percent. Applying this fraction to apportionable taxable income of $1,100,000, as determined under state law, results in attributing 50 percent of apportionable taxable income to state A, and produces total state A taxable income of $550,000. State A imposes an income tax at a rate of 10 percent on the amount of income that is attributed to state A, which results in $55,000 of tax imposed by state A.

(ii) Allocation. (A) States A, B, and C impose income taxes of $69,000 which must be allocated to the classes of gross income upon which the taxes are imposed. A portion of X's federal income tax deduction of $55,000 for state A income tax is definitely related and thus allocable to the class of gross income consisting of foreign source portfolio dividends. A definite relationship exists between a deduction for state income tax and portfolio dividends when a state includes portfolio dividends in state taxable income apportionable to the state, but determines state taxable income by applying an apportionment fraction that excludes the factors of the corporations paying those dividends. By applying a state apportionment fraction that excludes factors of the corporations paying portfolio dividends to apportionable taxable income that includes the $100,000 of foreign source portfolio dividends, $50,000 (50 percent of the $100,000) of the portfolio dividends is attributed to X's activities in state A and subjected to state A income tax. Applying the state A income tax rate of 10 percent to the $50,000 of foreign

source portfolio dividends subjected to state A income tax, $5,000 of X's $55,000 total state A income tax liability is definitely related and allocable to a class of gross income consisting of the foreign source portfolio dividends. Since under the look-through rules of section 904(d)(3) the foreign source portfolio dividends from the first-tier CFCs are included within the general limitation described in section 904(d)(1)(I), the $5,000 of state A tax on foreign source portfolio dividends is allocated entirely to foreign source general limitation income and, therefore, is not apportioned. (If the total amount of state A tax imposed on foreign source portfolio dividends were to exceed the actual amount of X's state A income tax liability (for example, due to net operating losses), the actual amount of state A tax would be allocated entirely to those foreign source portfolio dividends.) After allocation of a portion of the state A tax to portfolio dividends, $50,000 ($55,000 - $5,000) of state A tax remains to be allocated.

(B) A total of $64,000 (the aggregate of the $50,000 remaining state A tax, and the $10,000 and $4,000 of taxes imposed by states B and C, respectively) is to be allocated (as provided in Example 25) by comparing U.S. source taxable income (as determined under the Code) with the aggregate of the state taxable incomes determined by states A, B, and C (after reducing state apportionable taxable incomes by the amount of any portfolio dividends included in apportionable taxable income to which tax has been specifically allocated). X's state A taxable income, after reduction by the $50,000 of portfolio dividends taxed by state A, equals $500,000. X also has taxable income of $200,000 and $200,000 in states B and C, respectively. In the aggregate, therefore, states A, B, and C tax $900,000 of X's income, after excluding state taxable income attributable to portfolio dividends. Since X has only $800,000 of U.S. source taxable income for federal income tax purposes, it is presumed that state income taxes are imposed on $100,000 of foreign source income. The remaining deduction of $64,000 for state income taxes is therefore related and allocable to both foreign source and domestic source income and is subject to apportionment.

(iii) Apportionment. For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation income, and one residual grouping, gross income from sources within the United States. The remaining state income tax deduction of $64,000 must be apportioned between these two groupings on the basis of relative

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Attachment W– page 20 of 28**

26 C.F.R. § 1.861-8

amounts of foreign source general limitation taxable income and U.S. source taxable income subject to state taxation. In this case, the $64,000 of state income taxes is considered to be imposed on $800,000 of domestic source income and $100,000 of foreign source general limitation income and is apportioned as follows:

```
State income tax deduction apportioned
to foreign source general
  limitation income (statutory
grouping): $64,000 x
  ($100,000/$900,000)
....................................
.......... $ 7,111
State income tax deduction apportioned
to income from sources
  within the United States (residual
grouping): $64,000 x
  ($800,000/$900,000)
....................................
............ 56,889

                                -------
---
Total apportioned state income tax
deduction ........................
$64,000
```

Of the total state income taxes of $69,000, the amount allocated and apportioned to foreign source general limitation income equals $12,111 ($5,000 + $7,111). The total amount of state income taxes allocated and apportioned to U.S. source income equals $56,889.

**Example 29**--Income Taxes--(i) Facts. (A) P, a domestic corporation, is a manufacturer and distributor of electronic equipment with operations in states F, G, and H. P also has a branch in country Y which manufactures and distributes the same type of electronic equipment. In addition, P has three wholly owned subsidiaries, US1, US2, and FS, the latter a controlled foreign corporation ("CFC") as defined in section 957(a) of the Code. P also owns stock representing 10 to 50 percent of the vote and value of various other first-tier CFCs that derive exclusively foreign source general limitation income.

(B) In 1988, P derives $1,000,000 of federal taxable income (without taking into account the deduction for state income taxes), which consists of $250,000 of foreign source general limitation income and $750,000 of U.S. source income. The foreign source general limitation

income consists of a $25,000 subpart F inclusion with respect to FS, $150,000 of dividends from the other first-tier CFCs deriving exclusively foreign source general limitation income, in which P owns stock representing 10 to 50 percent of the vote and value, and $75,000 of manufacturing and sales income derived by P's U.S. operations and country Y branch. The $750,000 of U.S. source income consists of manufacturing and sales income derived by P's U.S. operations.

(C) For federal income tax purposes, US1 derives $75,000 of taxable income, before deduction for state income taxes, which consists entirely of U.S. source income. US2, a so-called "80/20" corporation described in section 861(c)(1), derives $250,000 of federal taxable income before deduction for state or foreign income taxes, all of which is derived from foreign operations and consists entirely of foreign source general limitation income. FS is not engaged in a U.S. trade or business and derives $550,000 of foreign source general limitation income before deduction for foreign income taxes.

(D) State F imposes a corporate income tax of 10 percent of P's state F taxable income, which is determined by formulary apportionment of the total taxable income attributable to P's worldwide unitary business. State F determines P's taxable income for state F tax purposes by first making adjustments to the taxable income, as determined for federal income tax purposes, of the members of the unitary business group to determine the total taxable income of the group. State F then computes P's state taxable income by attributing a portion of that unitary business taxable income to activities of P that are conducted in state F. State F does this by multiplying the unitary business taxable income (federal taxable income with state adjustments) by a fraction (the "state apportionment fraction") that compares the relative amounts of the unitary business group's payroll, property, and sales (the "factors") in state F with the payroll, property, and sales of the unitary business group. P is the only member of its unitary business group that has state F factors and that is thereby subject to state F income tax and filing requirements. State F defines the unitary business group to include any corporation more than 50 percent of which is directly or indirectly owned by a state F taxpayer and is engaged in the same unitary business. P's unitary business group, therefore, includes P, US1, US2, and FS, but does not include the 10 to 50 percent owned CFCs. The income of the unitary business group excludes intercompany dividends between members of the unitary business group and subpart F inclusions with

26 C.F.R. § 1.861-8

respect to a member of the unitary business group. Dividends paid from nonmembers of the unitary group (the 10 to 50 percent owned CFCs) for state F tax purposes are referred to as "portfolio dividends" and are included in taxable income of the unitary business. None of the factors (in state F or worldwide) of the corporations paying portfolio dividends are included in the state F apportionment fraction for purposes of apportioning total taxable income of the unitary business to P's state F activities.

(E) After state adjustments to the taxable income of the unitary business group, as determined under federal tax principles, the total taxable income of P's unitary business group equals $2,000,000, consisting of $1,050,000 of P's income ($100,000 of foreign source manufacturing and sales income, $150,000 of foreign source portfolio dividends, and $800,000 of U.S. source manufacturing and sales income, but excluding the $25,000 subpart F inclusion attributable to FS since FS is a member of the unitary business group), $100,000 of US1's income (from sales made in the United States), $275,000 of US2's income (from an active business outside the United States), and $575,000 of FS's income. The differences between taxable income under federal tax principles and state F apportionable taxable income for P, US1, US2, and FS represent adjustments to taxable income under federal tax principles that are made pursuant to the tax laws of state F.

(F) The taxable income for each member of the unitary business group under federal tax principles and state law principles is summarized in the following table. (The items of income listed in the "Federal" column of the table refer to taxable income before deduction for state income tax.)

|  | Federal | State F |
|---|---|---|
| **P** |  |  |
| U.S. source income | $750,000 | $800,000 |
| Foreign source general limitation income: |  |  |
| Portfolio dividends | 150,000 | 150,000 |
| Subpart F income | 25,000 | 0 |
| Manufacturing and sales income | 75,000 | 100,000 |
| Total taxable income | 1,000,000 | 1,050,000 |
| **US1** |  |  |
| U.S. source income | 75,000 | 100,000 |
| **US2** |  |  |
| Foreign source general limitation income | 250,000 | 275,000 |
| **FS** |  |  |
| Foreign source general limitation income | 550,000 | 575,000 |
| Taxable income of the unitary business group | 2,000,000 |  |

(G) State F deems P to have state F taxable income of $500,000, which is determined by multiplying the total taxable income of the unitary business group ($2,000,000) by the group's state F apportionment fraction, which is assumed to be 25 percent in these facts. P's state F taxable income is then multiplied by the state F tax rate of 10 percent, resulting in a state F tax liability of $50,000. State G and state H, unlike state F, do not tax portfolio dividends. Although state G and state H apportion taxable income, respectively, on the basis of an apportionment fraction that compares state factors to total factors, state G and state H, unlike state F, do not apply a unitary business theory and consider only P's taxable income and factors in computing P's taxable income. P's taxable income under state G law equals $300,000, which is subject to a 5 percent tax rate resulting in a state G tax liability of $15,000. P's taxable income under state H law is $300,000, which is subject to a tax rate of 2 percent resulting in a state H tax liability of $6,000. P has a total federal income tax deduction for state income taxes of

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    **Attachment W– page 22 of 28**

26 C.F.R. § 1.861-8

$71,000 ($50,000 + 15,000 + 6,000).

(ii) Allocation. (A) P's deduction of $71,000 for state income taxes is definitely related and allocable to the gross income with respect to which the taxes are imposed. Adjustments may be necessary, however, before aggregate state taxable incomes can be compared with U.S. source taxable income on the federal income tax return in the manner described in Examples 25 and 26. In allocating P's deduction for state income taxes, it is necessary first to determine the portion, if any, of the deduction that is definitely related and allocable to a particular class of gross income. A definite relationship exists between a deduction for state income tax and dividend income when a state includes portfolio dividends in state taxable income apportionable to the taxpayer's activities in the state, but determines state taxable income by applying an apportionment formula that excludes the factors of the corporations paying portfolio dividends.

(B) In this case, $150,000 of foreign source portfolio dividends are subject to a state F apportionment fraction of 25 percent, which results in a total of $37,500 of state F taxable income attributable to such dividends. As illustrated in Example 28, $3,750 ($150,000 x 25 percent state F apportionment percentage x 10 percent state F tax rate) of P's state F income tax is definitely related and allocable to a class of gross income consisting entirely of the foreign source portfolio dividends. Since under the look-through rules of section 904(d)(3) the foreign source portfolio dividends paid by first-tier CFCs are included within the general limitation described in section 904(d)(1)(I), the $3,750 of state F tax on foreign source portfolio dividends is allocated entirely to foreign source general limitation income and, therefore, is not apportioned.

(C) After reducing state F taxable income of the unitary business group by the taxable income attributable to portfolio dividends, P's remaining state F taxable income equals $462,500 ($500,000 - $37,500), the portion of the taxable income of the unitary business that state F attributes to P's activities in state F. Accordingly, in order to allocate and apportion the remaining $46,250 of state F tax ($50,000 of state F tax minus the $3,750 of state F tax allocated to foreign source portfolio dividends), it is necessary first to determine if state F is taxing only P's non-unitary taxable income (as defined below) or is imposing its tax partly on other unitary business income that is attributed under state F law to P's activities in state F. P's state F non-unitary taxable income is computed by

applying the state F apportionment formula, solely on the basis of P's income (excluding portfolio dividends) and state F apportionment factors. If the state F taxable income (after reduction by the portfolio dividends attributed to state F) attributed to P under state F law exceeds P's non-unitary taxable income, a portion of the state F tax must be allocated and apportioned on the basis of the other unitary business income that is attributed to and taxable to P under state F law. If P's non-unitary taxable income equals or exceeds the $462,500 of remaining state F taxable income, it is presumed that state F is only taxing P's non-unitary taxable income, so that the entire amount of the remaining state F tax should be allocated and apportioned in the manner described in Example 25.

(D) If P's non-unitary taxable income is less than the $462,500 of remaining state F taxable income (after reduction for the $37,500 of state F taxable income attributable to portfolio dividends), it is presumed that state F is attributing to P, and taxing P upon, other unitary business income. In such a case, it is necessary to determine if state F is attributing to P, and imposing its income tax on, a part of the foreign source income that would be generally presumed under separate accounting to be the income of foreign affiliates and 80/20 companies included in the unitary group, or whether state F is limiting the income it attributes to P, and its taxation of P, to the U.S. source income that would be generally presumed under separate accounting to be the income of domestic members of the unitary group.

(E) Assume for purposes of this example that the non-unitary taxable income attributable to P equals $396,000, computed by multiplying P's state F taxable income of $900,000 (P's state F taxable income (before state F apportionment) of $1,050,000 less the $150,000 of foreign source portfolio dividends) by P's non-unitary state F apportionment fraction, which is assumed to be 44 percent. Because P's non-unitary taxable income of $396,000 is less than the $462,500 of remaining state F taxable income, state F is presumed to be attributing to P and taxing the income that would have been generally attributed under separate accounting to P's affiliates in the unitary group. To determine if state F tax is being imposed on members of the unitary group (other than P) that produce foreign source income, it is necessary to compute a hypothetical state F taxable income for all companies in the unitary group with significant U.S. operations. (For this purpose, the hypothetical group of companies with significant domestic operations is referred

26 C.F.R. § 1.861-8

to as the "water's edge group.") State F is presumed to be attributing to P and taxing income that would have been generally attributable under separate accounting to foreign corporations and 80/20 companies to the extent that the remaining state F taxable income ($462,500) of P exceeds the hypothetical state F taxable income that would have been attributed under state F law to P if state F had defined the unitary group to be the water's edge group.

(F) The members of the water's edge group would have been P and US1. The unitary business income of this water's edge group is $1,000,000, the sum of $900,000 (P's state F taxable income (before state F apportionment) of $1,050,000 less the $150,000 of foreign source portfolio dividends) and $100,000 (US1's state F taxable income). For purposes of this example, the state F apportionment fraction determined on a unitary basis for this water's edge group is assumed to equal 40 percent, the average of P and US1's state F payroll, property, and sales factor ratios (the water's edge group's state F factors over its worldwide factors). Applying this apportionment fraction to the $1,000,000 of unitary business income of the water's edge group yields state F water's edge taxable income of $400,000. The excess of the remaining $462,500 of P's state F taxable income over the $400,000 of P's state F water's edge taxable income equals $62,500, and is attributable to the inclusion of US2 and FS in the unitary group. The state F tax attributable to the $62,500 of taxable income attributed to P under state F law, and that would have generally been attributed to US2 and FS under non-unitary accounting, equals $6,250 and is allocated entirely to a class of gross income consisting of foreign source general limitation income, because the income of FS and US2 consists entirely of such income. After the $6,250 of state F tax attributable to US2 and FS is subtracted from the remaining $46,250 of net state F tax, P has $40,000 of state F tax remaining to be allocated and apportioned.

(G) To the extent that the remainder of P's state F taxable income ($400,000) exceeds P's non-unitary state F taxable income ($396,000), it is presumed that state F is attributing to and imposing on P a tax on U.S. source income that would have been attributed under separate accounting to members of the water's edge group other than P. In these facts, the $4,000 difference in P's state F taxable income results from the inclusion of US1 in the unitary group. The $400 of P's state F tax attributable to this $4,000 is allocated entirely to P's U.S. source income. P's remaining $39,600 of state F tax ($40,000 of P's state F tax resulting from the attribution of P of income that

would have been attributed under non-unitary accounting to other members of the water's edge group, minus $400 of state F tax attributable to US1 and allocated to P's U.S. source income) is the state F tax attributable to P's non-unitary state F taxable income that is to be allocated and apportioned together with P's state G tax of $15,000 and state H tax of $6,000 as illustrated in Example 25.

(H) In allocating the $60,600 of state tax liabilities ($39,600 state F tax attributable to P's non-unitary state F income + $15,000 state G tax + $6,000 state H tax) under Example 25, P's state taxable income in state G and state H ($300,000 + $300,000) must be added to P's non-unitary state F taxable income ($396,000). The resulting $996,000 of combined state taxable incomes is compared with $750,000 of U.S. source income on P's federal income tax return. Because P's combined state taxable incomes exceeds P's federal U.S. source taxable income, it is presumed that the remaining $60,600 of P's total state income taxes is imposed in part on foreign source income. Accordingly, P's remaining deduction of $60,600 ($39,600 + $15,000 + $6,000) for state income taxes is related and allocable to both P's foreign source and domestic source income and is subject to apportionment.

(iii) Apportionment. The $60,600 of state taxes (the remaining $39,600 of state F tax + $15,000 of state G tax + $6,000 of state H tax) must be apportioned between foreign source general limitation income and U.S. source income for federal income tax purposes. This apportionment is based upon the relative amounts of foreign source general limitation taxable income and U.S. source taxable income comprising the $996,000 of income subject to tax by the states, after reducing the total amount of income subject to tax by the portfolio dividends and the income attributed to P under state F law that would have been attributed under arm's length principles to other members of P's state F unitary business group. The deduction for the $60,600 of state income taxes is apportioned as follows:

```
State income tax deduction apportioned
to foreign source general
  limitation income (statutory
grouping): $60,600 x
  ($246,000/$996,000)
....................................
.......... $14,967
State income tax deduction apportioned
to income from sources
  within the United States (residual
```

26 C.F.R. § 1.861-8



```
grouping): $60,600 x
  ($750,000/$996,000)
.....................................
........... 45,633
                            -------
---
Total apportioned state income tax
deduction ...........................
60,600
```

Of the total state income taxes of $71,000, the amount allocated and apportioned to foreign source general limitation income is $24,967--the sum of $14,967 of state F, state G, and state H taxes apportioned to foreign source general limitation income, $3,750 of state F tax allocated to foreign source apportionable dividend income, and the $6,250 of state F tax allocated to foreign source general limitation income as the result of state F's worldwide unitary business theory of taxation. The total amount of state income taxes allocated and apportioned to U.S. source income equals $46,033--the sum of the $400 of state F tax attributable to the inclusion of US1 in the state F unitary business group and $45,633 of combined state F, G, and H tax apportioned under the method provided in Example 25.

**Example 30.** [Reserved]. For further guidance, see § 1.861-8T(g), Example 30.

**Example 31**--Income Taxes--(i) Facts. Assume that the facts are the same as in Example 29, except that state G requires P to adjust its federal taxable income by depreciating an asset at a different rate than is allowed P under the Internal Revenue Code for the same asset. Before using the methodology of Example 25 to determine whether a portion of its deduction for state income taxes is allocable to a class of gross income that includes foreign source income, P recomputes its taxable income under state G law by using the rate of depreciation that it is entitled to use under the Code, and uses this recomputed amount in applying the methodology of Example 25.

(ii) Allocation. P's modification of its state G taxable income is permissible. Under the methodology of Example 25, this modification of state G taxable income will produce a reasonable determination of the portion (if any) of P's state income taxes that is allocable to a class of gross income that includes foreign sources income.

**Example 32**--Income Taxes--(i) Facts. Assume the facts are the same as Example 29, except that P's state F taxable income differs from the amount of its U.S. source income under federal income tax principles solely because state F determines P's state taxable income under a worldwide unitary business theory instead of the arm's length principles applied in the Code. Before using the methodology of Example 25 to determine whether a portion of its deduction for state income taxes is allocable to a class of gross income that includes foreign source income, P recomputes state F taxable income under the arm's length principles applied in the Code. P substitutes that recomputed amount for the amount of taxable income actually determined under state F law in applying the methodology of Example 25.

(ii) Allocation. P's modification of state F taxable income does not accurately reflect the factual relationship between the deduction for state F income tax and the income on which the tax is imposed, because there is no factual relationship between the state F income tax and the state F taxable income as recomputed under Code principles. State F does not impose its income tax upon P's income as it might have been defined under the Internal Revenue Code. Consequently, P's modification of state F taxable income is impermissible because it will not produce a reasonable determination of the portion (if any) of P's state income taxes that is allocable to a class of gross income that includes foreign source income.

**Example 33**--Income Taxes--(i) Facts. Assume the same facts as in Example 29, except that state G does not impose an income tax on corporations, and P's non-unitary state F taxable income equals $462,500. Thus only $56,000 of state income taxes ($50,000 of state F income tax and $6,000 of state H income tax) are deductible and required to be allocated and (if necessary) apportioned. As in Example 29, P has $800,000 of aggregate state taxable income ($500,000 of state F taxable income and $300,000 of state H taxable income).

(ii) Method One. Assume that P has elected to allocate and apportion its deduction for state income tax under the safe harbor method provided in § 1.861-8 (e)(6)(ii)(D)(2) ("Method One").

(A) Step One--Specific allocation to foreign source portfolio dividends. P applies the methodology of paragraph (ii) of Example 28 to determine the portion of the deduction that must be allocated to a class of gross income consisting solely of foreign source portfolio

26 C.F.R. § 1.861-8

dividends. As illustrated in paragraphs (ii) (A) and (B) of Example 29, $3,750 of the deduction for state F income tax is attributable to the $37,500 of foreign source portfolio dividends attributed under state F law to P's activities in state F. Thus $3,750 of P's deduction for state income tax must be specifically allocated to a class of gross income consisting solely of $37,500 of foreign source portfolio dividends. No apportionment of the $3,750 is necessary. P's adjusted state taxable income is $762,500 (aggregate state taxable income of $800,000 reduced by $37,500 of foreign source portfolio dividends). Because the remaining amount of state F taxable income ($462,500) equals P's non-unitary state F taxable income, no further specific allocation of state tax is required.

(B) Step Two--Adjustment of U.S. source federal taxable income. P applies the methodology illustrated in paragraph (ii) of Example 27 (including the rules of UDITPA described therein) to determine the amount of its federal taxable income attributable to its activities in state G. Assume that P determines under this methodology that $300,000 of its federal taxable income is attributable to activities in state G. P's adjusted U.S. source federal taxable income equals $450,000 ($750,000 minus the $300,000 attributed to P's activities in state G).

(C) Step Three--Allocation. The portion of P's deduction for state income tax remaining to be allocated equals $52,250 ($56,000 minus the $3,750 specifically allocated to foreign source portfolio dividends). P allocates this portion by applying the methodology illustrated in paragraph (ii) of Example 25, as modified by paragraph (e)(6)(ii)(D)(2)(iii) of this section. Thus, P compares its adjusted state taxable income (as determined under Step One in paragraph (A) above) with an amount equal to 110% of its adjusted U.S. source federal taxable income (as determined under Step Two in paragraph (B) above). Because P's adjusted state taxable income ($762,500) exceeds 110% of P's adjusted U.S. source federal taxable income ($495,000, or 110% of $450,000), the remaining portion of P's deduction for state income tax ($52,500) must be allocated to a class of gross income that includes both U.S. and foreign source income.

(D) Step Four--Apportionment. P must apportion to U.S. source income the portion of the deduction that is attributable to state income tax imposed upon state taxable income in an amount equal to 110% of P's adjusted U.S. source federal taxable income. The remainder of the deduction must be apportioned to foreign

source general limitation income.

```
Amount of deduction to be apportioned
..........................
$52,250.00
Less portion of deduction to be
apportioned to income from sources
  within the United States (residual
grouping): $52,250 x
  ($495,000/$762,500)
.................................
........ $33,919.67

                              -------
---
Equals Portion of deduction to be
apportioned to foreign income
  general limitation income (statutory
grouping): .................
$18,330.33
```

(iii) Method Two. Assume that P has elected to allocate and apportion its deduction for state income tax under the safe harbor method provided in § 1.861-8(e)(6)(ii)(D)(3) ("Method Two").

(A) Step One--Specific allocation. Step One of Method Two is the same as Step One of Method One. Therefore, as described in paragraph (A) of paragraph (ii) above, $3,750 of P's deduction for state income tax must be specifically allocated to a class of gross income consisting solely of $37,500 of foreign source portfolio dividends. No apportionment of the $3,750 is necessary. P's adjusted state taxable income is $762,500 (aggregate state taxable income of $800,000 reduced by $37,500 of foreign source portfolio dividends).

(B) Step Two--Adjustment of U.S. source federal taxable income. Step Two of Method Two is the same as Step Two of Method One. Therefore, as described in paragraph (B) of paragraph (ii) above, assume that P determines that $300,000 of its federal taxable income is attributable to activities in state G. P's adjusted U.S. source federal taxable income equals $450,000 ($750,000 minus the $300,000 attributed to P's activities in state G).

(C) Step Three--Allocation. The portion of P's deduction for state income tax remaining to be allocated equals $52,250 ($56,000 minus the $3,750 of state F income tax specifically allocated to foreign source portfolio dividends). P allocates this portion by applying

26 C.F.R. § 1.861-8

the methodology illustrated in paragraph (ii) of Example 25, as modified by paragraph (e)(6)(ii)(D)(3)(iii) of this section. Thus, P compares its adjusted state taxable income (as determined under Step One in paragraph (A) above) with its adjusted U.S. source federal taxable income (as determined under Step Two in paragraph (B) above). Because P's adjusted state taxable income ($762,500) exceeds P's adjusted U.S. source federal taxable income ($450,000), the remaining portion of P's deduction for state income tax ($52,500) must be allocated to a class of gross income that includes both U.S. and foreign source income.

(D) Step Four--Apportionment. P must apportion to U.S. source income the portion of the deduction that is attributable to state income tax imposed upon state taxable income in an amount equal to P's adjusted U.S. source federal taxable income.

```
Amount of deduction to be apportioned
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
$52,250.00
Less portion of deduction initially
apportioned to income from
  sources within the United States
(residual grouping): $52,250 x
  ($450,000/$762,500)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . 30,836.07

                              -------
---
Remainder requiring further
apportionment: $52,250 x
  ($312,500/$762,500)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . 21,413.93
```

The remainder of $21,413.93 must be further apportioned between foreign source general limitation income and U.S. source federal taxable income in the same proportions that P's adjusted U.S. source federal taxable income and foreign source general limitation income bear to P's total federal taxable income (taking into account the adjustment of U.S. source federal taxable income and reduced by the amount of foreign source portfolio dividends to which the tax has been specifically allocated).

```
Portion of remainder apportioned to
foreign source general
```

```
  limitation income (statutory
grouping): $21,413.93 x
  ($212,500/$662,500)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . $6,868.62
Remaining state income tax deduction
to be apportioned to income
  from sources within the United
States (residual grouping):
  $21,413.93 X ($450,000/$662,500)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
$14,545.31
```

Of P's total deduction of $56,000 for state income tax, the portion allocated and apportioned to foreign source general limitation income equals $10,618.62-- the sum of $6,868.62 apportioned under Step Four and the $3,750.00 specifically allocated to foreign source portfolio dividend income under Step One. The portion of the deduction allocated and apportioned to U.S. source income equals $45,381.38--the sum of the $30,836.07 and the $14,545.31 apportioned under Step Four.

(h) Effective/applicability date. Paragraphs (f)(1)(vi)(E), (f)(1)(vi)(F), and (f)(1)(vi)(H) of this section apply to taxable years ending after April 9, 2008.

[T.D. 6500, 25 FR 11910, Nov. 26, 1960, as amended by T.D. 6892, 31 FR 11144, Aug. 23, 1966; T.D. 7378, 40 FR 45434, Oct. 2, 1975; T.D. 7456, 42 FR 1195, Jan. 6, 1977; T.D. 7749, 46 FR 1683, Jan. 7, 1981; T.D. 7939, 49 FR 4207, Feb. 3, 1984; T.D. 8228, 53 FR 35474, Sept. 14, 1988; T.D. 8236, 53 FR 49874, Dec. 12, 1988; T.D. 8286, 55 FR 3052, Jan. 30, 1990; T.D. 8337, 56 FR 10369, March 12, 1991; 56 FR 22760, May 16, 1991; 56 FR 24001, May 28, 1991; T.D. 8228, 60 FR 36669, July 18, 1995; T.D. 8646, 60 FR 66503, Dec. 22, 1995; T.D. 8805, 64 FR 1509, Jan. 11, 1999; T.D. 8973, 66 FR 67083, Dec. 28, 2001; T.D. 9143, 69 FR 44931, July 28, 2004; T.D. 9194, 70 FR 18928, April 11, 2005; T.D. 9211, 70 FR 40662, July 14, 2005; T.D. 9278, 71 FR 44514, Aug. 4, 2006; T.D. 9391, 73 FR 19358, April 9, 2008]

26 C. F. R. § 1.861-8, 26 CFR § 1.861-8

Current through April 17, 2008; 73 FR 20841

Copr. © 2008
Thomson/West

26 C.F.R. § 1.861-8

END OF DOCUMENT