prescribed in section 3717 of title 31 of the United States Code and will accrue from the date of the billing.

(d) ONDCP may assess search charges where records are not located or where records are exempt from disclosure.

(e) ONDCP may aggregate individual requests and charge accordingly for requests seeking portions of a document or documents.

### § 1401.12 Fees to be charged—categories of requesters.

(a) There are four categories of FOIA requesters: commercial use requesters; educational and non-commercial scientific institutions; representatives of the news media; and all other requesters.

(b) The specific levels of fees for each of these categories are:

(1) *Commercial use requesters.* ONDCP will recover the full direct cost of providing search, review and duplication services. Commercial use requesters will not receive free search-time or free production of documents.

(2) *Educational and non-commercial scientific institution requesters.* ONDCP will charge the cost of reproduction, excluding charges for the first 100 pages. Requesters must demonstrate the request is authorized by and under the auspices of a qualifying institution and that the records are sought for scholarly or scientific research not a commercial use.

(3) *Requesters who are representatives of the news media.* ONDCP will charge the cost of reproduction, excluding charges for the first 100 pages. Requesters must meet the criteria in § 1401.3(h), and the request must not be made for a commercial use. A request that supports the news dissemination function of the requester shall not be considered a commercial use.

(4) *All other requesters.* ONDCP will recover the full direct cost of the search and the reproduction of records, excluding the first 100 pages of reproduction and the first two hours of search time. Requests for records concerning the requester will be treated under the free provisions of the Privacy Act of 1974, 5 U.S.C. 552a, which permits fees only for reproduction.

### § 1401.13 Waiver or reduction of fees.

Fees chargeable in connection with a request may be waived or reduced where ONDCP determines that disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester.

Barry McCaffrey,
*Director.*
[FR Doc. 99–32495 Filed 12–14–99; 8:45 am]
**BILLING CODE 3180–02–U**

---

## DEPARTMENT OF THE TREASURY

### Internal Revenue Service

### 26 CFR Parts 1 and 602

**[TD 8847]**

**RIN 1545–AS39**

### Adjustments Following Sales of Partnership Interests

**AGENCY:** Internal Revenue Service (IRS), Treasury.
**ACTION:** Final regulations.

**SUMMARY:** This document finalizes regulations relating to the optional adjustments to the basis of partnership property following certain transfers of partnership interests under section 743, the calculation of gain or loss under section 751(a) following the sale or exchange of a partnership interest, the allocation of basis adjustments among partnership assets under section 755, the allocation of a partner's basis in its partnership interest to properties distributed to the partner by the partnership under section 732(c), and the computation of a partner's proportionate share of the adjusted basis of depreciable property (or depreciable real property) under section 1017. The changes will affect partnerships and partners where there are transfers of partnership interests, distributions of property, or elections under sections 108(b)(5) or (c). In addition, the final regulations under section 732(c) reflect changes to the law made by the Taxpayer Relief Act of 1997.
**DATES:** *Effective Dates:* These regulations are effective December 15, 1999.
*Applicability Date:* These regulations apply to transfers of partnership interests and distributions occurring on or after December 15, 1999.
**FOR FURTHER INFORMATION CONTACT:** Matthew Lay, (202) 622–3050.
**SUPPLEMENTARY INFORMATION:**

### Paperwork Reduction Act

The collections of information in these final regulations have been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act (44 U.S.C. 3507) under control number 1545–1588. Responses to these collections of information are mandatory for partnerships that have made an election under section 754 and for which a section 743 transfer has been made, and for partnerships which distribute property in a transaction subject to section 732(d).

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid control number assigned by the Office of Management and Budget.

The estimated annual burden per respondent varies from 1 hour to 300 hours, depending on the individual circumstances, with an estimated average of 4 hours.

Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be sent to the Internal Revenue Service, Attn: IRS Reports Clearance Officer, OP:FS:FP, Washington, DC 20224, and to the Office of Management and Budget, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC 20503.

Books or records relating to these collections of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

### Background

This document (a) revises §§ 1.743–1 and 1.755–1 of the Income Tax Regulations (26 CFR part 1), and (b) amends §§ 1.732–1, 1.732–2, 1.734–1, 1.751–1, 1.754–1, and § 1.1017–1 of the Income Tax Regulations.

On January 29, 1998, proposed regulations (REG 209682–94) were published in the **Federal Register** (63 FR 4408). Written comments were received in response to the notice of proposed rulemaking. One speaker provided testimony at a public hearing held on September 10, 1998.

After consideration of all the comments, the proposed regulations under sections 732, 734, 743, 751, 755, and 1017 are adopted, as revised by this Treasury Decision.

### Explanation of Revisions and Summary of Contents

*1. Basis in Distributed Property*

(a) Mandatory application of section 732(d). Section 1.732–1(d)(4) of the current regulations requires transferees to apply the special basis rules in certain

cases. In the preamble to the proposed regulations, the IRS and the Treasury Department requested comments on the proper scope of section 732(d), and specifically, under what circumstances, if any, the Secretary should continue to exercise his authority to mandate the application of section 732(d) to a transferee. Several commentators suggested that the mandatory application of section 732(d) no longer should be required, because the changes made to section 732(c) by the Taxpayer Relief Act of 1997, Public Law 105–34, 111 Stat. 788, 945–46 (1997), make the distortions targeted by the regulations less likely to occur. However, other commentators noted that distortions caused by section 732(c) still may occur. Accordingly, the rule contained in § 1.732–1(d)(4), which requires the mandatory application of section 732(d) in certain cases, remains in effect.

(b) Statement required by partnership. Because partners, rather than partnerships, are required to report basis adjustments under section 732(d), the final regulations require partnerships to provide transferees with such information as is necessary for the transferees properly to compute basis adjustments made under section 732(d). This information must be provided if a transferee notifies a partnership that it plans to make the election under section 732(d) or if a partnership makes a distribution subject to the mandatory application of section 732(d).

(c) Effective date. One commentator asked for clarification regarding the application of the final regulations to section 732(d) adjustments. If section 732(d) applies to a distribution, it is necessary to calculate the basis adjustments which would have been required under section 743(b) if a section 754 election were in effect for the partnership in the taxable year in which the partnership interest was transferred to the partner. In calculating this basis adjustments, the partnership should apply the final regulations under sections 743 and 755 if the distribution to which section 732(d) applies occurs after December 15, 1999.

2. *Basis Adjustments Under Section 743(b)*

(a) Coordination with section 704(c). Where a partnership adopts the remedial allocation method, the proposed regulations provide that the section 704(c) built-in gain portion of a basis adjustment under section 743(b) shall be recovered over the remaining cost recovery period for the section 704(c) built-in gain. Some commentators suggested that the final regulations should provide this treatment for the section 704(c) built-in gain portion of the adjustment regardless of the method elected by the partnership for allocating section 704(c) built-in gain and loss. The IRS and the Treasury Department continue to believe that, except for partnerships which adopt the remedial allocation method, it is appropriate for sections 704(c) and 743(b) to operate independently. Accordingly, this change has not been adopted.

In the preamble to the proposed regulations, comments were requested concerning the application of the remedial allocation method to contributed property where there are no distortions caused by the ceiling rule at the time the property was contributed to the partnership. Even if it is not clear that the ceiling rule will apply at the time the property is contributed because the adjusted basis of the contributed property is sufficient so that the non-contributing partners will be allocated their appropriate share of depreciation or amortization attributable to the property, the partnership's adoption of the remedial method still may be relevant due to allocations resulting from a subsequent disposition of the property. For instance, suppose that partners A and B form a partnership and agree that each partner will be allocated a 50 percent share of all partnership items, and that the partnership will make allocations under section 704(c) using the traditional method. A contributes depreciable property with an adjusted tax basis of $40 and a book value of $50, and B contributes $50 in cash. At the time of the contribution, it is not readily apparent that the ceiling rule will have any application. However, if, before any federal income tax depreciation accrues with respect to the contributed property, the property's value declines to $40, and the property is sold for that amount, there will be no tax gain or loss. The book loss of $10 would be shared equally between A and B. In this situation, the ceiling rule would prevent B from being allocated the $5 tax loss to which it otherwise would be entitled. However, if the partnership elected to use the remedial method with respect to the contributed property, B would be allocated a $5 tax loss, and A would be allocated a corresponding $5 tax gain. In addition, if a contributing partner transfers its interest in a partnership during a period when a section 754 election is in effect, the section 704(c) method adopted by the partnership will determine the recovery period for the built-in gain portion of the transferee's section 743(b) adjustment. The IRS and the Treasury Department believe that under the current regulations under section 704(c), a partnership may use the remedial method under § 1.704–3, even where it is not readily apparent at the time the property is contributed that the ceiling rule will be applicable.

(b) Previously taxed capital. One commentator suggested that the second sentence in proposed § 1.743–1(d)(2), relating to the correlation between a partner's interest in previously taxed capital and the partnership's capital accounts, is redundant and should be deleted. This suggestion has been adopted; however, no substantive change is intended by the deletion.

(c) Common basis election. Some commentators suggested that the provision in the proposed regulations that permitted the partners to elect to apply negative basis adjustments under section 743(b) to the partnership's common basis should be deleted. The commentators argued that the provision was contrary to the purposes of section 743(b), because it permitted basis adjustments under section 743(b) to affect nontransferring partners. The commentators also argued that the provision would be used by a small number of partnerships and would add unnecessary complexity to the regulations. In response to these suggestions, the provision that permitted the partners to elect to apply negative basis adjustments under section 743(b) to the partnership's common basis has been deleted.

(d) Statements by partners. Some commentators suggested modifying the statements which partners are required to provide to the partnership in the case of transfers which result in basis adjustments under section 743(b). Many of these suggestions have been adopted. For example, the regulations specify that the transferee of a partnership interest is required to provide the name, address, and taxpayer identification number of the transferor only if that information is ascertainable by the transferee. The regulations also specify that if a partnership interest is transferred to a nominee which is required to furnish the statement under § 1.6031(c)–1T to the partnership, the nominee may satisfy the notice requirements of both the section 743 and 6031 regulations by providing a single statement with respect to that transfer, but only if the statement satisfies all requirements of both regulations.

The regulations require the transferee to sign the statement under penalties of perjury, and require the transferee to provide the amount of any liabilities assumed or taken subject to by the transferee, and any other information

necessary for the partnership to compute the transferee's basis in the partnership interest. In order to assist the partnership in properly calculating depreciation and amortization deductions which may be subject to anti-churning provisions, the regulations require the transferee to describe its relationship, if any, to the transferor. Finally, the statement required by a transferee that acquires an interest by death must include the date of the decedent's death.

One commentator suggested that the statement required by a transferee that acquires a partnership interest by sale or exchange should be provided within 30 days of the sale or exchange, regardless of whether or not the transfer occurs at the end of the calendar year. This change has been adopted.

One commentator suggested that references to the tax matters partner in § 1.743–1(k) of the proposed regulations (regarding the partnership's obligations where a partner's statement is clearly erroneous, or a partner fails to notify the partnership that an interest has been transferred and the partnership has actual knowledge of the transfer) should be changed. This commentator emphasized that while the tax matters partner has a specialized role with respect to consolidated administrative and judicial proceedings to determine the tax treatment of partnership items at the partnership level, the tax matters partner does not have any special responsibilities with respect to federal income tax reporting. The final regulations adopt this comment. Section 1.743–1(k) now refers to partners who are responsible for federal income tax reporting by the partnership.

(e) Oil and gas. One commentator suggested that the example described in § 1.743–1(j)(6) should be changed to describe a non-oil and gas property. This change has been made. The commentator also suggested that in the case of domestic oil and gas properties that are depleted at the partner level, the transferee partner (rather than the partnership) should be required to make and allocate basis adjustments among such properties. The final regulations adopt this comment.

The same commentator suggested that the regulations should specify a method for adjusting the basis of section 613A(c)(7)(D) properties in order to account for percentage depletion made by a partner with respect to such properties. Under the principles of § 1.743–1(j), percentage depletion should reduce first any carryover basis under § 1.613A–3(e)(6)(iv). After the carryover basis has been recovered, any further percentage depletion should

reduce the section 743 adjustment for the property.

*3. Sales of Partnership Interests*

One commentator suggested that references to fair market value should specify whether fair market value is determined taking into account section 7701(g), which generally provides that fair market value shall be treated as being not less than the amount of any nonrecourse indebtedness to which the property is subject. The regulations specify that for purposes of the hypothetical sale employed to determine the income or loss realized by a partner upon the sale or exchange of its interest in section 751 property, fair market value is determined taking into account section 7701(g). Basis adjustments under section 743(b) also are allocated by reference to a hypothetical transaction. The IRS and the Treasury Department intend to issue guidance in the near future which will provide rules for determining the fair market value of partnership assets in certain situations, including for purposes of allocating section 743(b) basis adjustments upon the transfer of a partnership interest. The IRS and the Treasury Department anticipate that the guidance will provide that section 7701(g) will apply in determining the fair market value of partnership assets for purposes of allocating section 743(b) basis adjustments.

One commentator suggested that where a partnership interest is sold or exchanged, the transferor and the transferee of a partnership interest should be permitted jointly to assign values to partnership assets in a written agreement. Because this approach is inconsistent with the hypothetical sale approach of the regulations, this suggestion has not been adopted.

*4. Elections Under Section 754*

One commentator requested that partnerships be granted a one-time right to revoke section 754 elections in effect for such partnerships. Given the significant changes to the rules made by these final regulations as compared to the regulations that were in effect at the time that section 754 elections previously were made, the IRS and Treasury believe that it is appropriate to provide for a one-time revocation of such elections. Accordingly, a partnership having an election in effect under section 754 for its taxable year that includes December 15, 1999 may revoke such election by attaching a statement to the partnership's return for that year. The return must be filed on or before the due date (including extensions) for the return for that year.

*5. Allocation of Basis Adjustments Among Partnership Assets*

(a) Income in respect of a decedent. One commentator requested that the final regulations illustrate the allocation of basis adjustments among partnership assets where one or more of such assets represents income in respect of a decedent. Where a partnership interest is transferred as a result of the death of a partner, under section 1014(c) the transferee's basis in its partnership interest is not adjusted for that portion of the interest, if any, which is attributable to items representing income in respect of a decedent under section 691. Because the transferee's basis in its partnership interest does not include the value of assets which represent income in respect of a decedent, the section 743(b) adjustment likewise does not reflect the value of such assets. *George Edward Quick's Trust*, 54 TC 1336 (1970) (acq.), *aff'd per curiam*, 444 F.2d 90 (8th Cir. 1971); *Chrissie H. Woodhall*, 28 T.C.M. 1438 (1969), *aff'd*, 454 F.2d 226 (9th Cir. 1972); Rev. Rul. 66–325, 1966–2 C.B. 249. Where a partnership holds assets that represent income in respect of a decedent, the section 743(b) adjustment should be allocated solely to other assets. Accordingly, the final regulations provide that if a partnership interest is transferred as a result of the death of a partner, and the partnership holds assets representing income in respect of a decedent, no part of the basis adjustment under section 743(b) is allocated to these assets.

(b) Transferred basis transactions. One commentator called for a revised system for allocating basis adjustments under section 743(b) which are triggered by exchanges in which the transferee's basis in the interest is determined in whole or in part by reference to the transferor's basis in the interest. In many such cases, the net section 743(b) adjustment will be zero. However, a positive or negative section 743(b) adjustment may result, because the transferee's basis in the interest may not be equal to the transferor's share of the partnership's basis in its assets.

The IRS and the Treasury Department believe that, although these transferred basis transactions involve transfers which are subject to section 743(b), the new, comprehensive basis allocation rules in the proposed regulations should not be available. For example, where a partnership interest is contributed to a corporation in a transaction to which section 351 applies, or to a partnership in a transaction to which section 721(a) applies, the transferor merely has changed the form of its investment. If

the allocation rules which apply to other section 743(b) transfers were applied to these exchanges, then partners could use these exchanges to shift basis from capital gain assets to ordinary income assets, or vice versa.

Therefore, the final regulations contain special basis allocation rules for transferred basis exchanges. The special rules generally are modeled on the rules for allocating basis adjustments under section 734(b). The final regulations do not contain a specific anti-abuse rule regarding the special basis allocation rules which are applicable to such transfers. However, there may be situations where taxpayers will attempt to undertake abusive transactions using these special rules. For instance, a partner could acquire a partnership interest during a year in which no section 754 election is in effect, and then (in a related transaction) contribute the property to a wholly-owned corporation in order to take advantage of the basis allocation rules applicable to transferred basis exchanges. In appropriate situations, the IRS may attack such abusive transactions under a variety of judicial doctrines, including substance over form or step transaction, or under § 1.701–2 of the regulations.

(c) Unrealized receivables under section 751(c). One commentator requested that the final regulations illustrate the effect of depreciation recapture on the allocation of basis adjustments among partnership assets under section 755. For purposes of this section, the final regulations treat depreciation recapture, and any other properties or potential gain treated as unrealized receivables under section 751(c) and the regulations thereunder, as separate assets that are ordinary income property.

(d) Special rules for securities partnerships and tiered partnerships. One commentator suggested that the regulations permit securities partnerships to allocate basis adjustments among partnership assets using an aggregation method. Another commentator requested that the regulations clarify how the regulations would apply to tiered partnerships. The IRS and the Treasury Department believe that a method for allocating basis adjustments among partnership assets on an aggregate basis is not consistent with the hypothetical sale of individual assets, which is required by the regulations. In addition, the IRS and Treasury Department believe that special rules for tiered partnerships would make the regulations more complex. Therefore, these changes have not been adopted.

*6. Other Comments*

One commentator suggested that for purposes of allocating basis adjustments among partnership assets, the values of all partnership assets should be determined by reference to the basis of the transferor or distributee partner in its partnership interest. This suggestion is being considered in connection with a separate project currently under review by the IRS and the Treasury Department.

One commentator suggested that the language of section 743 does not authorize regulations that permit both positive and negative adjustments as part of the same transaction. The IRS and the Treasury Department continue to believe that this aspect of the regulations is within the IRS's authority to administer sections 743 and 755.

**Special Analysis**

It has been determined that this final regulations are not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It has been determined that a final regulatory flexibility analysis is required for the collection of information in this Treasury decision under 5 U.S.C. 604. A summary of the analysis is set forth below under the heading "Summary of Final Regulatory Flexibility Act Analysis." Pursuant to section 7805(f) of the Internal Revenue Code, these final regulations have been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on their impact on small business.

**Summary of Final Regulatory Flexibility Act Analysis**

This analysis is required under the Regulatory Flexibility Act (5 U.S.C. chapter 6). In general, the regulations require a transferee that acquires an interest in a partnership with an election under section 754 in effect to notify the partnership of the transfer. This notification must include the name and taxpayer identification number of the transferee and the transferee's basis in the acquired partnership interest. The partnership is required to include a statement with its Form 1065, U.S. Partnership Return of Income, for the taxable year in which the partnership acquires knowledge of the transfer. This statement must identify the name and taxpayer identification number of the transferee, the computation of the basis adjustment, and the allocation of that adjustment to partnership properties. These requirements will ensure that the partnership has notice that a transfer has occurred and that the proper basis

adjustments are computed. The legal basis for these requirements is contained in sections 743(b), 6001, and 7805(a).

If an interest is transferred in a partnership holding domestic oil and gas properties that are depleted at the partner level under 613A(c)(7)(D), the regulations require the transferee partner (rather than the partnership) to make and allocate basis adjustments under section 743(b) among such properties.

There were approximately 1,494,000 partnerships in 1994. However, these regulations apply only to partnerships that have made an election under section 754. The election under section 754 is generally not made unless there has been a transfer of a partnership interest or a distribution by the partnership. Moreover, the effects of the election attach to specific items of partnership property and may provide only temporary benefits for the partners. Except for the one-time revocation which is allowed in connection with the promulgation of these final regulations, the election cannot be revoked without the consent of the Secretary. The IRS and the Treasury Department believe that most partnerships do not make the election under section 754. Therefore, most partnerships will not be affected by the regulations in any given year.

After a partner conveys information to the partnership concerning a transfer of a partnership interest, the partnership must adjust the partner's interest in the basis of partnership property. Because these basis adjustments will affect the partner's share of depreciation or amortization deductions and amounts of gain or loss on the disposition of certain items of partnership property, the partnership must prepare and maintain special entries on its books. However, in many cases, partnerships returns are prepared using computer software that can prepare and maintain these special entries after the initial year.

The IRS and the Treasury Department are not aware of any federal rules that may duplicate, overlap, or conflict with this rule.

As an alternative to the disclosure described above, the IRS and the Treasury Department considered, but rejected, a rule that would have required the partners, and not the partnerships, to make the basis adjustments and to determine the effects of the basis adjustments on the partners' distributive shares. This alternative was rejected because the IRS and the Treasury Department believe that partnerships generally have better access to the information necessary to report section 743 basis adjustments properly. To

**Attachment II - page 4 of 20**

require the partners rather than the partnerships to bear the burden of reporting would require the partnerships to provide the partners with significant amounts of information not otherwise needed by the partners. There are no known alternative rules that are less burdensome to the partnerships and their partners but that accomplish the purposes of the statute.

Finally, because partners, rather than partnerships, are required to report basis adjustments under section 732(d), the final regulations require partnerships to provide transferees with such information as is necessary for the transferees properly to compute basis adjustments made under section 732(d). This information must be provided if a transferee notifies a partnership that it plans to make the election under section 732(d) or if a partnership makes a distribution subject to the mandatory application of section 732(d). The IRS and the Treasury Department believe that this requirement will apply under limited circumstances to a small percentage of partnerships.

**Drafting Information**

The principal author of these regulations is Matthew Lay of the Office of the Assistant Chief Counsel (Passthroughs and Special Industries). However, other personnel from the IRS and the Treasury Department participated in their development.

**List of Subjects**

*26 CFR Part 1*

Income taxes, Reporting and recordkeeping requirements.

*26 CFR Part 602*

Reporting and recordkeeping requirements.

**Adoption of Amendments to the Regulations**

Accordingly, 26 CFR parts 1 and 602 are amended as follows:

**PART 1—INCOME TAXES**

**Paragraph 1.** The authority citation for part 1 is amended by adding entries in numerical order to read as follows:

Authority: 26 U.S.C. 7805 * * *
Section 1.732–1 also issued under 26 U.S.C. 732.
Section 1.732–2 also issued under 26 U.S.C. 732.
Section 1.734–1 also issued under 26 U.S.C. 734.
Section 1.743–1 also issued under 26 U.S.C. 743.
Section 1.751–1 also issued under 26 U.S.C. 751.
Section 1.755–1 also issued under 26 U.S.C. 755. * * *

Section 1.1017–1 also issued under 26 U.S.C. 1017. * * *

**Par. 2.** Section 1.732–1 is amended as follows:
1. Revise paragraph (c).
2. Revise paragraph (d)(1)(ii).
3. Revise the last sentence of paragraph (d)(1)(v).
4. Revise paragraph (d)(1)(vi).
5. Revise paragraph (d)(4)(iii).
6. Remove the flush text and *Examples 1* and *2* following paragraph (d)(4)(iii).
7. Add paragraph (d)(5).

The additions and revisions read as follows:

**§ 1.732–1  Basis of distributed property other than money.**

\* \* \* \* \*

(c) *Allocation of basis among properties distributed to a partner*—(1) *General rule*—(i) *Unrealized receivables and inventory items.* The basis to be allocated to properties distributed to a partner under section 732(a)(2) or (b) is allocated first to any unrealized receivables (as defined in section 751(c)) and inventory items (as defined in section 751(d)(2)) in an amount equal to the adjusted basis of each such property to the partnership immediately before the distribution. If the basis to be allocated is less than the sum of the adjusted bases to the partnership of the distributed unrealized receivables and inventory items, the adjusted basis of the distributed property must be decreased in the manner provided in paragraph (c)(2)(i) of this section.

(ii) *Other distributed property.* Any basis not allocated to unrealized receivables or inventory items under paragraph (c)(1)(i) of this section is allocated to any other property distributed to the partner in the same transaction by assigning to each distributed property an amount equal to the adjusted basis of the property to the partnership immediately before the distribution. However, if the sum of the adjusted bases to the partnership of such other distributed property does not equal the basis to be allocated among the distributed property, any increase or decrease required to make the amounts equal is allocated among the distributed property as provided in paragraph (c)(2) of this section.

(2) *Adjustment to basis allocation*—(i) *Decrease in basis.* Any decrease to the basis of distributed property required under paragraph (c)(1) of this section is allocated first to distributed property with unrealized depreciation in proportion to each property's respective amount of unrealized depreciation before any decrease (but only to the extent of each property's unrealized

depreciation). If the required decrease exceeds the amount of unrealized depreciation in the distributed property, the excess is allocated to the distributed property in proportion to the adjusted bases of the distributed property, as adjusted pursuant to the immediately preceding sentence.

(ii) *Increase in basis.* Any increase to the basis of distributed property required under paragraph (c)(1)(ii) of this section is allocated first to distributed property (other than unrealized receivables and inventory items) with unrealized appreciation in proportion to each property's respective amount of unrealized appreciation before any increase (but only to the extent of each property's unrealized appreciation). If the required increase exceeds the amount of unrealized appreciation in the distributed property, the excess is allocated to the distributed property (other than unrealized receivables or inventory items) in proportion to the fair market value of the distributed property.

(3) *Unrealized receivables and inventory items.* If the basis to be allocated upon a distribution in liquidation of the partner's entire interest in the partnership is greater than the adjusted basis to the partnership of the unrealized receivables and inventory items distributed to the partner, and if there is no other property distributed to which the excess can be allocated, the distributee partner sustains a capital loss under section 731(a)(2) to the extent of the unallocated basis of the partnership interest.

(4) *Examples.* The provisions of this paragraph (c) are illustrated by the following examples:

*Example 1.* A is a one-fourth partner in partnership PRS and has an adjusted basis in its partnership interest of $650. PRS distributes inventory items and Assets X and Y to A in liquidation of A's entire partnership interest. The distributed inventory items have a basis to the partnership of $100 and a fair market value of $200. Asset X has an adjusted basis to the partnership of $50 and a fair market value of $400. Asset Y has an adjusted basis to the partnership and a fair market value of $100. Neither Asset X nor Asset Y consists of inventory items or unrealized receivables. Under this paragraph (c), A's basis in its partnership interest is allocated first to the inventory items in an amount equal to their adjusted basis to the partnership. A, therefore, has an adjusted basis in the inventory items of $100. The remaining basis, $550, is allocated to the distributed property first in an amount equal to the property's adjusted basis to the partnership. Thus, Asset X is allocated $50 and Asset Y is allocated $100. Asset X is then allocated $350, the amount of unrealized appreciation in Asset

X. Finally, the remaining basis, $50, is allocated to Assets X and Y in proportion to their fair market values: $40 to Asset X (400/500 × $50), and $10 to Asset Y (100/500 × $50). Therefore, after the distribution, A has an adjusted basis of $440 in Asset X and $110 in Asset Y.

*Example 2.* B is a one-fourth partner in partnership PRS and has an adjusted basis in its partnership interest of $200. PRS distributes Asset X and Asset Y to B in liquidation of its entire partnership interest. Asset X has an adjusted basis to the partnership and fair market value of $150. Asset Y has an adjusted basis to the partnership of $150 and a fair market value of $50. Neither of the assets consists of inventory items or unrealized receivables. Under this paragraph (c), B's basis is first assigned to the distributed property to the extent of the partnership's basis in each distributed property. Thus, Asset X and Asset Y are each assigned $150. Because the aggregate adjusted basis of the distributed property, $300, exceeds the basis to be allocated, $200, a decrease of $100 in the basis of the distributed property is required. Assets X and Y have unrealized depreciation of zero and $100, respectively. Thus, the entire decrease is allocated to Asset Y. After the distribution, B has an adjusted basis of $150 in Asset X and $50 in Asset Y.

*Example 3.* C, a partner in partnership PRS, receives a distribution in liquidation of its entire partnership interest of $6,000 cash, inventory items having an adjusted basis to the partnership of $6,000, and real property having an adjusted basis to the partnership of $4,000. C's basis in its partnership interest is $9,000. The cash distribution reduces C's basis to $3,000, which is allocated entirely to the inventory items. The real property has a zero basis in C's hands. The partnership bases not carried over to C for the distributed properties are lost unless an election under section 754 is in effect requiring the partnership to adjust the bases of remaining partnership properties under section 734(b).

*Example 4.* Assume the same facts as in *Example 3* of this paragraph except C receives a distribution in liquidation of its entire partnership interest of $1,000 cash and inventory items having a basis to the partnership of $6,000. The cash distribution reduces C's basis to $8,000, which can be allocated only to the extent of $6,000 to the inventory items. The remaining $2,000 basis, not allocable to the distributed property, constitutes a capital loss to partner C under section 731(a)(2). If the election under section 754 is in effect, section 734(b) for adjustment of the basis of undistributed partnership property.

(5) *Effective date.* This paragraph (c) applies to distributions of property from a partnership that occur on or after December 15, 1999.

(d) * * *

(1) * * *

(ii) When an election under section 754 is in effect, see section 743(b) and §§ 1.743–1 and 1.732–2.

\* \* \* \* \*

(v) * * * (For a shift of transferee's basis adjustment under section 743(b) to like property, see § 1.743–1(g).)

(vi) The provisions of this paragraph (d)(1) may be illustrated by the following example:

*Example.* (i) Transferee partner, T, purchased a one-fourth interest in partnership PRS for $17,000. At the time T purchased the partnership interest, the election under section 754 was not in effect and the partnership inventory had a basis to the partnership of $14,000 and a fair market value of $16,000. T's purchase price reflected $500 of this difference. Thus, $4,000 of the $17,000 paid by T for the partnership interest was attributable to T's share of partnership inventory with a basis of $3,500. Within 2 years after T acquired the partnership interest, T retired from the partnership and received in liquidation of its entire partnership interest the following property:

| | Assets | |
|---|---|---|
| | Adjusted basis to PRS | Fair market value |
| Cash | $1,500 | $1,500 |
| Inventory | 3,500 | 4,000 |
| Asset X | 2,000 | 4,000 |
| Asset Y | 4,000 | 5,000 |

(ii) The fair market value of the inventory received by T was one-fourth of the fair market value of all partnership inventory and was T's share of such property. It is immaterial whether the inventory T received was on hand when T acquired the interest. In accordance with T's election under section 732(d), the amount of T's share of partnership basis that is attributable to partnership inventory is increased by $500 (one-fourth of the $2,000 difference between the fair market value of the property, $16,000, and its $14,000 basis to the partnership at the time T purchased its interest). This adjustment under section 732(d) applies only for purposes of distributions to T, and not for purposes of partnership depreciation, depletion, or gain or loss on disposition. Thus, the amount to be allocated among the properties received by T in the liquidating distribution is $15,500 ($17,000, T's basis for the partnership interest, reduced by the amount of cash received, $1,500). This amount is allocated as follows: The basis of the inventory items received is $4,000, consisting of the $3,500 common partnership basis, plus the basis adjustment of $500 which T would have had under section 743(b). The remaining basis of $11,500 ($15,500 minus $4,000) is allocated among the remaining property distributed to T by assigning to each property the adjusted basis to the partnership of such property and adjusting that basis by any required increase or decrease. Thus, the adjusted basis to T of Asset X is $5,111 ($2,000, the adjusted basis of Asset X to the partnership, plus $2,000, the amount of unrealized appreciation in Asset X, plus $1,111 ($4,000/$9,000 multiplied by $2,500)). Similarly, the adjusted basis of Asset Y to T is $6,389 ($4,000, the adjusted basis of Asset Y to the partnership, plus $1,000, the amount of unrealized appreciation in Asset Y, plus, $1,389 ($5,000/$9,000 multiplied by $2,500)).

\* \* \* \* \*

(4) * * *

(iii) A basis adjustment under section 743(b) would change the basis to the transferee partner of the property actually distributed.

(5) *Required statements.* If a transferee partner notifies a partnership that it plans to make the election under section 732(d) under paragraph (d)(3) of this section, or if a partnership makes a distribution to which paragraph (d)(4) of this section applies, the partnership must provide the transferee with such information as is necessary for the transferee property to compute the transferee's basis adjustments under section 732(d).

\* \* \* \* \*

**Par. 3.** Section 1.732–2 is amended by revising the sentence at the end of the *Example* in paragraph (b) to read as follows:

### § 1.732–2   Special partnership basis of distributed property.

\* \* \* \* \*

(b) * * *

*Example.* * * * See § 1.743–1(g).

\* \* \* \* \*

**Par. 4.** In § 1.734–1, paragraph ( ) is added to read as follows:

### § 1.734–1   Optional adjustment to basis of undistributed partnership property.

\* \* \* \* \*

( ) *Recovery of adjustments to basis of partnership property*—(1) *Increases in basis.* For purposes of section 168, if the basis of a partnership's recovery property is increased as a result of the distribution of property to a partner, then the increased portion of the basis

must be taken into account as if it were newly-purchased recovery property placed in service when the distribution occurs. Consequently, any applicable recovery period and method may be used to determine the recovery allowance with respect to the increased portion of the basis. However, no change is made for purposes of determining the recovery allowance under section 168 for the portion of the basis for which there is no increase.

(2) *Decreases in basis.* For purposes of section 168, if the basis of a partnership's recovery property is decreased as a result of the distribution of property to a partner, then the decrease in basis must be accounted for over the remaining recovery period of the property beginning with the recovery period in which the basis is decreased.

(3) *Effective date.* This paragraph ( ) applies to distributions of property from a partnership that occur on or after December 15, 1999.

Par. 5. Section 1.743–1 is revised to read as follows:

### § 1.743–1 Optional adjustment to basis of partnership property.

(a) *Generally.* The basis of partnership property is adjusted as a result of the transfer of an interest in a partnership by sale or exchange or on the death of a partner only if the election provided by section 754 (relating to optional adjustments to the basis of partnership property) is in effect with respect to the partnership. Whether or not the election provided in section 754 is in effect, the basis of partnership property is not adjusted as the result of a contribution of property, including money, to the partnership.

(b) *Determination of adjustment.* In the case of the transfer of an interest in a partnership, either by sale or exchange or as a result of the death of a partner, a partnership that has an election under section 754 in effect—

(1) Increases the adjusted basis of partnership property by the excess of the transferee's basis for the transferred partnership interest over the transferee's share of the adjusted basis to the partnership of the partnership's property; or

(2) Decreases the adjusted basis of partnership property by the excess of the transferee's share of the adjusted basis to the partnership's property over the transferee's basis for the transferred partnership interest.

(c) *Determination of transferee's basis in the transferred partnership interest.* In the case of the transfer of a partnership interest by sale or exchange or as a result of the death of a partner, the transferee's basis in the transferred partnership interest is determined under section 742 and § 1.742–1. See also section 752 and §§ 1.752–1 through 1.752–5.

(d) *Determination of transferee's share of the adjusted basis to the partnership of the partnership's property*—(1) *Generally.* A transferee's share of the adjusted basis to the partnership of partnership property is equal to the sum of the transferee's interest as a partner in the partnership's previously taxed capital, plus the transferee's share of partnership liabilities. Generally, a transferee's interest as a partner in the partnership's previously taxed capital is equal to—

(i) The amount of cash that the transferee would receive on a liquidation of the partnership following the hypothetical transaction, as defined in paragraph (d)(2) of this section (to the extent attributable to the acquired partnership interest); increased by

(ii) The amount of tax loss (including any remedial allocations under § 1.704–3(d)), that would be allocated to the transferee from the hypothetical transaction (to the extent attributable to the acquired partnership interest); and decreased by

(iii) The amount of tax gain (including any remedial allocations under § 1.704–3(d)), that would be allocated to the transferee from the hypothetical transaction (to the extent attributable to the acquired partnership interest).

(2) *Hypothetical transaction defined.* For purposes of paragraph (d)(1) of this section, the hypothetical transaction means the disposition by the partnership of all of the partnership's assets, immediately after the transfer of the partnership interest, in a fully taxable transaction for cash equal to the fair market value of the assets.

(3) *Examples.* The provisions of this paragraph (d) are illustrated by the following examples:

*Example 1.* (i) A is a member of partnership PRS in which the partners have equal interests in capital and profits. The partnership has made an election under section 754, relating to the optional adjustment to the basis of partnership property. A sells its interest to T for $22,000. The balance sheet of the partnership at the date of sale shows the following:

| | Assets | |
|---|---:|---:|
| | Adjusted basis | Fair market value |
| Cash | $5,000 | $5,000 |
| Accounts receivable | 10,000 | 10,000 |
| Inventory | 20,000 | 21,000 |
| Depreciable assets | 20,000 | 40,000 |
| Total | 55,000 | 76,000 |

| | Liabilities and Capital | |
|---|---:|---:|
| | Adjusted per books | Fair market value |
| Liabilities | $10,000 | $10,000 |
| Capital: | | |
| A | 15,000 | 22,000 |
| B | 15,000 | 22,000 |
| C | 15,000 | 22,000 |
| Total | 55,000 | 76,000 |

**Attachment II - page 7 of 20**

**69910** Federal Register / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations

(ii) The amount of the basis adjustment under section 743(b) is the difference between the basis of T's interest in the partnership and T's share of the adjusted basis to the partnership of the partnership's property. Under section 742, the basis of T's interest is $25,333 (the cash paid for A's interest, $22,000, plus $3,333, T's share of partnership liabilities). T's interest in the partnership's previously taxed capital is $15,000 ($22,000, the amount of cash T would receive if PRS liquidated immediately after the hypothetical transaction, decreased by $7,000, the amount of tax gain allocated to T from the hypothetical transaction). T's share of the adjusted basis to the partnership of the partnership's property is $18,333 ($15,000 share of previously taxed capital, plus $3,333 share of the partnership's liabilities). The amount of the basis adjustment under section 743(b) to partnership property therefor, is $7,000, the difference between $25,333 and $18,333.

*Example 2.* A, B, and C form partnership PRS, to which A contributes land (Asset 1) with a fair market value of $1,000 and an adjusted basis to A of $400, and B and C each contribute $1,000 cash. Each partner has $1,000 credited to it on the books of the partnership as its capital contribution. The partners share in profits equally. During the partnership's first taxable year, Asset 1 appreciates in value to $1,300. A sells its one-third interest in the partnership to T for $1,100, when an election under section 754 is in effect. The amount of tax gain that would be allocated to T from the hypothetical transaction is $700 ($600 section 704(c) built-in gain, plus one-third of the additional gain). Thus, T's interest in the partnership's previously taxed capital is $400 ($1,100, the amount of cash T would receive if PRS liquidated immediately after the hypothetical transaction, decreased by $700, T's share of gain from the hypothetical transaction). The amount of T's basis adjustment under section 743(b) to partnership property is $700 (the excess of $1,100, T's cost basis for its interest, over $400, T's share of the adjusted basis to the partnership of partnership property).

(e) *Allocation of basis adjustment.* For the allocation of the basis adjustment under this section among the individual items of partnership property, see section 755 and the regulations thereunder.

(f) *Subsequent transfers.* Where there has been more than one transfer of a partnership interest, a transferee's basis adjustment is determined without regard to any prior transferor's basis adjustment. In the case of a gift of an interest in a partnership, the donor is treated as transferring, and the donee as receiving, that portion of the basis adjustment attributable to the gifted partnership interest. The provisions of this paragraph (f) are illustrated by the following example:

*Example.* (i) A, B, and C form partnership PRS. A and B each contribute $1,000 cash, and C contributes land with a basis and fair market value of $1,000. When the land has appreciated in value to $1,300, A sells its interest to T1 for $1,100 (one-third of $3,300, the fair market value of the partnership property). An election under section 754 is in effect; therefor, T1 has a basis adjustment under section 743(b) of $100.

(ii) After the land has further appreciated in value to $1,600, T1 sells its interest to T2 for $1,200 (one-third of $3,600, the fair market value of the partnership property). T2 has a basis adjustment under section 743(b) of $200. This amount is determined without regard to any basis adjustment under section 743(b) that T1 may have had in the partnership assets.

(iii) During the following year, T2 makes a gift to T3 of fifty percent of T2's interest in PRS. At the time of the transfer, T2 has a $200 basis adjustment under section 743(b). T2 is treated as transferring $100 of the basis adjustment to T3 with the gift of the partnership interest.

(g) *Distributions*—(1) *Distribution of adjusted property to the transferee*—(i) *Coordination with section 732.* If a partnership distributes property to a transferee and the transferee has a basis adjustment for the property, the basis adjustment is taken into account under section 732. See § 1.732–2(b).

(ii) *Coordination with section 734.* For certain adjustments to the common basis of remaining partnership property after the distribution of adjusted property to a transferee, see § 1.734–2(b).

(2) *Distribution of adjusted property to another partner*—(i) *Coordination with section 732.* If a partner receives a distribution of property with respect to which another partner has a basis adjustment, the distributee does not take the basis adjustment into account under section 732.

(ii) *Reallocation of basis.* A transferee with a basis adjustment in property that is distributed to another partner reallocates the basis adjustment among the remaining items of partnership property under § 1.755–1(c).

(3) *Distributions in complete liquidation of a partner's interest.* If a transferee receives a distribution of property (whether or not the transferee has a basis adjustment in such property) in liquidation of its interest in the partnership, the adjusted basis to the partnership of the distributed property immediately before the distribution includes the transferee's basis adjustment for the property in which the transferee relinquished an interest (either because it remained in the partnership or was distributed to another partner). Any basis adjustment for property in which the transferee is deemed to relinquish its interest is reallocated among the properties distributed to the transferee under § 1.755–1(c).

(4) *Coordination with other provisions.* The rules of sections 704(c)(1)(B), 731, 737, and 751 apply before the rules of this paragraph (g).

(5) *Example.* The provisions of this paragraph (g) are illustrated by the following example:

*Example.* (i) A, B, and C are equal partners in partnership PRS. Each partner originally contributed $10,000 in cash, and PRS used the contributions to purchase five nondepreciable capital assets. PRS has no liabilities. After five years, PRS's balance sheet appears as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Asset 1 | $10,000 | $10,000 |
| Asset 2 | 4,000 | 6,000 |
| Asset 3 | 6,000 | 6,000 |
| Asset 4 | 7,000 | 4,000 |
| Asset 5 | 3,000 | 13,000 |
| Total | 30,000 | 39,000 |

|  | Capital | |
|---|---|---|
|  | Adjusted per books | Fair market value |
| Partner A | $10,000 | $13,000 |
| Partner B | 10,000 | 13,000 |
| Partner C | 10,000 | 13,000 |
| Total | 30,000 | 39,000 |

(ii) A sells its interest to T for $13,000 when PRS has an election in effect under section 754. T receives a basis adjustment under section 743(b) in the partnership property that is equal to $3,000 (the excess of T's basis in the partnership interest, $13,000, over T's share of the adjusted basis to the partnership of partnership property, $10,000). The basis adjustment is allocated under section 755, and the partnership's balance sheet appears as follows:

|  | Assets | | |
|---|---|---|---|
|  | Adjusted basis | Fair market value | Basis adjustment |
| Asset 1 | $10,000 | $10,000 | $0.00 |
| Asset 2 | 4,000 | 6,000 | 666.67 |
| Asset 3 | 6,000 | 6,000 | 0.00 |
| Asset 4 | 7,000 | 4,000 | (1,000.00) |
| Asset 5 | 3,000 | 13,000 | 3,333.33 |
| Total | 30,000 | 39,000 | 3,000.00 |

|  | Capital | | |
|---|---|---|---|
|  | Adjusted per books | Fair market value | Special basis |
| Partner T | $10,000 | $13,000 | $3,000 |
| Partner B | 10,000 | 13,000 | 0 |
| Partner C | 10,000 | 13,000 | 0 |
| Total | 30,000 | 39,000 | 3,000 |

(iii) Assume that PRS distributes Asset 2 to T in partial liquidation of T's interest in the partnership. T has a basis adjustment under section 743(b) of $666.67 in Asset 2. Under paragraph (g)(1)(i) of this section, T takes the basis adjustment into account under section 732. Therefore, T will have a basis in Asset 2 of $4,666.67 following the distribution.

(iv) Assume instead that PRS distributes Asset 5 to C in complete liquidation of C's interest in PRS. T has a basis adjustment under section 743(b) of $3,333.33 in Asset 5. Under paragraph (g)(2)(i) of this section, C does not take T's basis adjustment into account under section 732. Therefore, the partnership's basis for purposes of sections 732 and 734 is $3,000. Under paragraph (g)(2)(ii) of this section, T's $3,333.33 basis adjustment is reallocated among the remaining partnership assets under § 1.755–1(c).

(v) Assume instead that PRS distributes Asset 5 to T in complete liquidation of its interest in PRS. Under paragraph (g)(3) of this section, immediately prior to the distribution of Asset 5 to T, PRS must adjust the basis of Asset 5. Therefore, immediately prior to the distribution, PRS's basis in Asset 5 is equal to $6,000, which is the sum of (A) $3,000, PRS's common basis in Asset 5, plus (B) $3,333.33, T's basis adjustment to Asset 5, plus (C) ($333.33), the sum of T's basis adjustments in Assets 2 and 4. For purposes of sections 732 and 734, therefore, PRS will be treated as having a basis in Asset 5 equal to $6,000.

(h) *Contributions of adjusted property*—(1) *Section 721(a) transactions.* If, in a transaction described in section 721(a), a partnership (the upper tier) contributes to another partnership (the lower tier) property with respect to which a basis adjustment has been made, the basis adjustment is treated as contributed to the lower-tier partnership, regardless of whether the lower-tier partnership makes a section 754 election. The lower tier's basis in the contributed assets and the upper tier's basis in the partnership interest received in the transaction are determined with reference to the basis adjustment. However, that portion of the basis of the upper tier's interest in the lower tier attributable to the basis adjustment must be segregated and allocated solely to the transferee partner for whom the basis adjustment was made. Similarly, that portion of the lower tier's basis in its assets attributable to the basis adjustment must be segregated and allocated solely to the upper tier and the transferee. A partner with a basis adjustment in property held by a partnership that terminates under section 708(b)(1)(B) will continue to have the same basis adjustment with respect to property deemed contributed by the terminated partnership to the new partnership under § 1.708–1(b)(1)(iv), regardless of whether the new partnership makes a section 754 election.

(2) *Section 351 transactions*—(i) *Basis in transferred property.* A corporation's adjusted tax basis in property transferred to the corporation by a partnership in a transaction described in section 351 is determined with reference to any basis adjustments to the property under section 743(b) (other than any basis adjustment that reduces a partner's gain under paragraph (h)(2)(ii) of this section).

(ii) *Partnership gain.* The amount of gain, if any, recognized by the partnership on a transfer of property by the partnership to a corporation in a transfer described in section 351 is determined without reference to any basis adjustment to the transferred property under section 743(b). The amount of gain, if any, recognized by the partnership on the transfer that is allocated to a partner with a basis adjustment in the transferred property is

adjusted to reflect the partner's basis adjustment in the transferred property.

(iii) *Basis in stock.* The partnership's adjusted tax basis in stock received from a corporation in a transfer described in section 351 is determined without reference to the basis adjustment in the property transferred to the corporation in the section 351 exchange. A partner with a basis adjustment in property transferred to the corporation, however, has a basis adjustment in the stock received by the partnership in the section 351 exchange in an amount equal to the partner's basis adjustment in the transferred property, reduced by any basis adjustment that reduced the partner's gain under paragraph (h)(2)(ii) of this section.

(iv) *Example.* The following example illustrates the principles of this paragraph (h):

*Example.* (i) A, B, and C are equal partners in partnership PRS. The partnership's only asset, Asset 1, has an adjusted tax basis of $60 and a fair market value of $120. Asset 1 is a nondepreciable capital asset and is not section 704(c) property. A has a basis in its partnership interest of $40, and a positive section 743(b) adjustment of $20 in Asset 1. In a transaction to which section 351 applies, PRS contributes Asset 1 to X, a corporation, in exchange for $15 in cash and X stock with a fair market value of $105.

(ii) Under paragraph (h)(2)(ii) of this section, PRS realizes $60 of gain on the transfer of Asset 1 to X ($120, its amount realized, minus $60, its adjusted basis), but recognizes only $15 of that gain under section 351(b)(1). Of this amount, $5 is allocated to each partner. A must use $5 of its basis adjustment in Asset 1 to offset A's share of PRS's gain. Under paragraph (h)(2)(iii) of this section, PRS's basis in the stock received from X is $60. However, A has a basis adjustment in the stock received by PRS equal to $15 (its basis adjustment in Asset 1, $20, reduced by the portion of the adjustment which reduced A's gain, $5). Under paragraph (h)(2)(i) of this section, X's basis in Asset 1 equals $75 (PRS's common basis in the asset, $60, plus A's basis adjustment under section 743(b), $20, less the portion of the adjustment which reduced A's gain, $5).

(i) [Reserved].

(j) *Effect of basis adjustment*—(1) *In general.* The basis adjustment constitutes an adjustment to the basis of partnership property with respect to the transferee only. No adjustment is made to the common basis of partnership property. Thus, for purposes of calculating income, deduction, gain, and loss, the transferee will have a special basis for those partnership properties the bases of which are adjusted under section 743(b) and this section. The adjustment to the basis of partnership property under section 743(b) has no effect on the partnership's computation of any item under section 703.

(2) *Computation of partner's distributive share of partnership items.* The partnership first computes its items of income, deduction, gain, or loss at the partnership level under section 703. The partnership then allocates the partnership items among the partners, including the transferee, in accordance with section 704, and adjusts the partners' capital accounts accordingly. The partnership then adjusts the transferee's distributive share of the items of partnership income, deduction, gain, or loss, in accordance with paragraphs (j)(3) and (4) of this section, to reflect the effects of the transferee's basis adjustment under section 743(b). These adjustments to the transferee's distributive share must be reflected on Schedules K and K–1 of the partnership's return (Form 1065). These adjustments to the transferee's distributive shares do not affect the transferee's capital account.

(3) *Effect of basis adjustment in determining items of income, gain, or loss*—(i) *In general.* The amount of a transferee's income, gain, or loss from the sale or exchange of a partnership asset in which the transferee has a basis adjustment is equal to the transferee's share of the partnership's gain or loss from the sale of the asset (including any remedial allocations under § 1.704–3(d)), minus the amount of the transferee's positive basis adjustment for the partnership asset (determined by taking into account the recovery of the basis adjustment under paragraph (j)(4)(i)(B) of this section) or plus the amount of the transferee's negative basis adjustment for the partnership asset (determined by taking into account the recovery of the basis adjustment under paragraph (j)(4)(ii)(B) of this section).

(ii) *Examples.* The following examples illustrate the principles of this paragraph (j)(3):

*Example 1.* A and B form equal partnership PRS. A contributes nondepreciable property with a fair market value of $50 and an adjusted tax basis of $100. PRS will use the traditional allocation method under § 1.704–3(b). B contributes $50 cash. A sells its interest to T for $50. PRS has an election in effect to adjust the basis of partnership property under section 754. T receives a negative $50 basis adjustment under section 743(b) that, under section 755, is allocated to the property. PRS then sells the property for $60. PRS recognizes a book gain of $10 (allocated equally between T and B) and a tax loss of $40. T will receive an allocation of $40 of tax loss under the principles of section 704(c). However, because T has a negative $50 basis adjustment in the nondepreciable property, T recognizes a $10 gain from the partnership's sale of the property.

*Example 2.* A and B form equal partnership PRS. A contributes nondepreciable property with a fair market value of $100 and an adjusted tax basis of $50. B contributes $100 cash. PRS will use the traditional allocation method under § 1.704–3(b). A sells its interest to T for $100. PRS has an election in effect to adjust the basis of partnership property under section 754. Therefore, T receives a $50 basis adjustment under section 743(b) that, under section 755, is allocated to the nondepreciable property. PRS then sells the nondepreciable property for $90. PRS recognizes a book loss of $10 (allocated equally between T and B) and a tax gain of $40. T will receive an allocation of the entire $40 of tax gain under the principles of section 704(c). However, because T has a $50 basis adjustment in the property, T recognizes a $10 loss from the partnership's sale of the property.

*Example 3.* A and B form equal partnership PRS. PRS will make allocations under section 704(c) using the remedial allocation method described in § 1.704–3(d). A contributes nondepreciable property with a fair market value of $100 and an adjusted tax basis of $150. B contributes $100 cash. A sells its partnership interest to T for $100. PRS has an election in effect to adjust the basis of partnership property under section 754. T receives a negative $50 basis adjustment under section 743(b) that, under section 755, is allocated to the property. The partnership then sells the property for $120. The partnership recognizes a $20 book gain and a $30 tax loss. The book gain will be allocated equally between the partners. The entire $30 tax loss will be allocated to T under the principles of section 704(c). To match its $10 share of book gain, B will be allocated $10 of remedial gain, and T will be allocated an offsetting $10 of remedial loss. T was allocated a total of $40 of tax loss with respect to the property. However, because T has a negative $50 basis adjustment to the property, T recognizes a $10 gain from the partnership's sale of the property.

(4) *Effect of basis adjustment in determining items of deduction*—(i) *Increases*—(A) *Additional deduction.* The amount of any positive basis adjustment that is recovered by the transferee in any year is added to the transferee's distributive share of the partnership's depreciation or amortization deductions for the year. The basis adjustment is adjusted under section 1016(a)(2) to reflect the recovery of the basis adjustment.

(B) *Recovery period*—(1) *In general.* Except as provided in paragraph (j)(4)(i)(B)(2) of this section, for purposes of section 168, if the basis of a partnership's recovery property is increased as a result of the transfer of a partnership interest, then the increased portion of the basis is taken into account as if it were newly-purchased recovery

property placed in service when the transfer occurs. Consequently, any applicable recovery period and method may be used to determine the recovery allowance with respect to the increased portion of the basis. However, no change is made for purposes of determining the recovery allowance under section 168 for the portion of the basis for which there is no increase.

(2) Remedial allocation method. If a partnership elects to use the remedial allocation method described in § 1.704–3(d) with respect to an item of the partnership's recovery property, then the portion of any increase in the basis of the item of the partnership's recovery property under section 743(b) that is attributable to section 704(c) built-in gain is recovered over the remaining recovery period for the partnership's excess book basis in the property as determined in the final sentence of § 1.704–3(d)(2). Any remaining portion of the basis increase is recovered under paragraph (j)(4)(i)(B)(1) of this section.

(C) Examples. The provisions of this paragraph (j)(4)(i) are illustrated by the following examples:

Example 1. (i) A, B, and C are equal partners in partnership PRS, which owns Asset 1, an item of depreciable property that has a fair market value in excess of its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, increases the basis of Asset 1 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 1 is $1,000. Also assume that, under paragraph (j)(4)(i)(B) of this section, the amount of the basis adjustment under section 743(b) that T recovers during the year is $500. The total amount of depreciation deductions from Asset 1 reported by T is equal to $1,500.

Example 2. (i) A and B form equal partnership PRS. A contributes property with an adjusted basis of $100,000 and a fair market value of $500,000. B contributes $500,000 cash. When PRS is formed, the property has five years remaining in its recovery period. The partnership's adjusted basis of $100,000 will, therefore, be recovered over the five years remaining in the property's recovery period. PRS elects to use the remedial allocation method under § 1.704–3(d) with respect to the property. If PRS had purchased the property at the time of the partnership's formation, the basis of the property would have been recovered over a 10-year period. The $400,000 of section 704(c) built-in gain will, therefore, be amortized under § 1.704–3(d) over a 10-year period beginning at the time of the partnership's formation.

(ii)(A) Except for the depreciation deductions, PRS's expenses equal its income in each year of the first two years commencing with the year the partnership is formed. After two years, A's share of the adjusted basis of partnership property is $120,000, while B's is $440,000:

|  | Capital accounts | | | |
|---|---|---|---|---|
|  | A | | B | |
|  | Book | Tax | Book | Tax |
| Initial Contribution | $500,000 | $100,000 | $500,000 | $500,000 |
| Depreciation Year 1 | (30,000) | | (30,000) | (20,000) |
| Remedial | | 10,000 | | (10,000) |
|  | 470,000 | 110,000 | 470,000 | 470,000 |
| Depreciation Year 2 | (30,000) | | (30,000) | (20,000) |
| Remedial | | 10,000 | | (10,000) |
|  | 440,000 | 120,000 | 440,000 | 440,000 |

(B) A sells its interest in PRS to T for its fair market value of $440,000. A valid election under section 754 is in effect with respect to the sale of the partnership interest. Accordingly, PRS makes an adjustment, pursuant to section 743(b), to increase the basis of partnership property. Under section 743(b), the amount of the basis adjustment is equal to $320,000. Under section 755, the entire basis adjustment is allocated to the property.

(iii) At the time of the transfer, $320,000 of section 704(c) built-in gain from the property was still reflected on the partnership's books, and all of the basis adjustment is attributable to section 704(c) built-in gain. Therefore, the basis adjustment will be recovered over the remaining recovery period for the section 704(c) built-in gain under § 1.704–3(d).

(ii) Decreases—(A) Reduced deduction. The amount of any negative basis adjustment allocated to an item of depreciable or amortizable property that is recovered in any year first decreases the transferee's distributive share of the partnership's depreciation or amortization deductions from that item of property for the year. If the amount of the basis adjustment recovered in any year exceeds the transferee's distributive share of the partnership's depreciation or amortization deductions from the item of property, then the transferee's distributive share of the partnership's depreciation or amortization deductions from all items of property is decreased. The transferee then recognizes ordinary income to the extent of the excess, if any, of the amount of the basis adjustment recovered in any year over the transferee's distributive share of the partnership's depreciation or amortization deductions from all items of property.

(B) Recovery period. For purposes of section 168, if the basis of an item of a partnership's recovery property is decreased as the result of the transfer of an interest in the partnership, then the decrease is recovered over the remaining useful life of the item of the partnership's recovery property. The portion of the decrease that is recovered in any year during the recovery period is equal to the product of—

(1) The amount of the decrease to the item's adjusted basis (determined as of the date of the transfer); multiplied by

(2) A fraction, the numerator of which is the portion of the adjusted basis of the item recovered by the partnership in that year, and the denominator of which is the adjusted basis of the item on the date of the transfer (determined prior to any basis adjustments).

(C) Examples. The provisions of this paragraph (j)(4)(ii) are illustrated by the following examples:

Example 1. (i) A, B, and C are equal partners in partnership PRS, which owns Asset 2, an item of depreciable property that has a fair market value that is less than its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, decreases the basis of Asset 2 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 2 is $1,000. Also assume that, under paragraph (j)(4)(ii)(B) of this section, the amount of the basis adjustment under section 743(b) that T recovers during the year is $500. The total amount of depreciation

deductions from Asset 2 reported by T is equal to $500.

*Example 2.* (i) A and B form equal partnership PRS. A contributes property with an adjusted basis of $100,000 and a fair market value of $50,000. B contributes $50,000 cash. When PRS is formed, the property has five years remaining in its recovery period. The partnership's adjusted basis of $100,000 will, therefore, be recovered over the five years remaining in the property's recovery period. PRS uses the traditional allocation method under § 1.704–3(b) with respect to the property. As a result, B will receive $5,000 of depreciation deductions from the property in each of years 1–5, and A, as the contributing partner, will receive $15,000 of depreciation deductions in each of the six years.

(ii) Except for the depreciation deductions, PRS's expenses equal its income in each of the first two years commencing with the year the partnership is formed. After two years, A's share of the adjusted basis of partnership property is $70,000, while B's is $40,000. A sells its interest in PRS to T for its fair market value of $40,000. A valid election under section 754 is in effect with respect to the sale of the partnership interest. Accordingly, PRS makes an adjustment, pursuant to section 743(b), to decrease the basis of partnership property. Under section 743(b), the amount of the adjustment is equal to ($30,000). Under section 755, the entire adjustment is allocated to the property.

(iii) The basis of the property at the time of the transfer of the partnership interest was $60,000. In each of years 3 through 5, the partnership will realize depreciation deductions of $20,000 from the property. Thus, one-third of the negative basis adjustment ($10,000) will be recovered in each of years 3 through 5. Consequently, T will be allocated, for tax purposes, depreciation of $15,000 each year from the partnership and will recover $10,000 of its negative basis adjustment. Thus, T's net depreciation deduction from the partnership in each year is $5,000.

*Example 3.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 2, an item of depreciable property that has a fair market value that is less than its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, decreases the basis of Asset 2 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 2 is $500. PRS allocates no other depreciation to T. Also assume that, under paragraph (j)(4)(ii)(B) of this section, the amount of the negative basis adjustment that T recovers during the year is $1,000. T will report $500 of ordinary income because the amount of the negative basis adjustment recovered during the year exceeds T's distributive share of the partnership's common basis depreciation deductions from Asset 2.

(5) *Depletion.* Where an adjustment is made under section 743(b) to the basis of partnership property subject to

depletion, any depletion allowance is determined separately for each partner, including the transferee partner, based on the partner's interest in such property. See § 1.702–1(a)(8). For partnerships that hold oil and gas properties that are depleted at the partner level under section 613A(c)(7)(D), the transferee partner (and not the partnership) must make the basis adjustments, if any, required under section 743(b) with respect to such properties. See § 1.613A–3( )(6)(iv).

(6) *Example.* The provisions of paragraph (j)(5) of this section are illustrated by the following example:

*Example.* A, B, and C each contributes $5,000 cash to form partnership PRS, which purchases a coal property for $15,000. A, B, and C have equal interests in capital and profits. C subsequently sells its partnership interest to T for $100,000 when the election under section 754 is in effect. T has a basis adjustment under section 743(b) for the coal property of $95,000 (the difference between T's basis, $100,000, and its share of the basis of partnership property, $5,000). Assume that the depletion allowance computed under the percentage method would be $21,000 for the taxable year so that each partner would be entitled to $7,000 as its share of the deduction for depletion. However, under the cost depletion method, at an assumed rate of 10 percent, the allowance with respect to T's one-third interest which has a basis to him of $100,000 ($5,000, plus its basis adjustment of $95,000) is $10,000, although the cost depletion allowance with respect to the one-third interest of A and B in the coal property, each of which has a basis of $5,000, is only $500. For partners A and B, the percentage depletion is greater than cost depletion and each will deduct $7,000 based on the percentage depletion method. However, as to T, the transferee partner, the cost depletion method results in a greater allowance and T will, therefore, deduct $10,000 based on cost depletion. See section 613(a).

(k) *Returns*—(1) *Statement of adjustments*—(i) *In general.* A partnership that must adjust the bases of partnership properties under section 743(b) must attach a statement to the partnership return for the year of the transfer setting forth the name and taxpayer identification number of the transferee as well as the computation of the adjustment and the partnership properties to which the adjustment has been allocated.

(ii) *Special rule.* Where an interest is transferred in a partnership which holds oil and gas properties that are depleted at the partner level under section 613A(c)(7)(D), the transferee must attach a statement to the transferee's return for the year of the transfer, setting forth the computation of the basis adjustment under section 743(b) which is allocable to such properties and the specific

properties to which the adjustment has been allocated.

(iii) *Example.* The provisions of paragraph (k)(1)(ii) of this section are illustrated by the following example:

*Example.* (i) Partnership XYZ owns a single section 613A(c)(7)(D) domestic oil and gas property (Prop rty) and other non-depletable assets. A, a partner in XYZ with an adjusted tax basis in Property of $100 (excluding any prior adjustments under section 743(b)), sells its partnership interest to B for $800 cash. Under § 1.613A–3( )(6)(iv), A's adjusted basis of $100 in Property carries over to B.

(ii) Under section 755, XYZ determines that Property accounts for 50% of the fair market value of all partnership assets. The remaining 50% of B's purchase price ($400) is attributable to non-depletable property. XYZ must provide a statement to B containing the portion of B's adjusted basis attributable to non-depletable property ($400). Under this paragraph (k)(1), XYZ must report basis adjustments under section 743(b) to non-depletable property. B must report basis adjustments under section 743(b) to Property.

(2) *Requirement that transferee notify partnership*—(i) *Sale or exchange.* A transferee that acquires, by sale or exchange, an interest in a partnership with an election under section 754 in effect for the taxable year of the transfer, must notify the partnership, in writing, within 30 days of the sale or exchange. The written notice to the partnership must be signed under penalties of perjury and must include the names and addresses of the transferee and (if ascertainable) of the transferor, the taxpayer identification numbers of the transferee and (if ascertainable) of the transferor, the relationship (if any) between the transferee and the transferor, the date of the transfer, the amount of any liabilities assumed or taken subject to by the transferee, and the amount of any money, the fair market value of any other property delivered or to be delivered for the transferred interest in the partnership, and any other information necessary for the partnership to compute the transferee's basis.

(ii) *Transfer on death.* A transferee that acquires, on the death of a partner, an interest in a partnership with an election under section 754 in effect for the taxable year of the transfer, must notify the partnership, in writing, within one year of the death of the deceased partner. The written notice to the partnership must be signed under penalties of perjury and must include the names and addresses of the deceased partner and the transferee, the taxpayer identification numbers of the deceased partner and the transferee, the relationship (if any) between the

transferee and the transferor, the deceased partner's date of death, the date on which the transferee became the owner of the partnership interest, the fair market value of the partnership interest on the applicable date of valuation set forth in section 1014, and the manner in which the fair market value of the partnership interest was determined.

(iii) *Nominee reporting.* If a partnership interest is transferred to a nominee which is required to furnish the statement under section 6031(c)(1) to the partnership, the nominee may satisfy the notice requirement contained in this paragraph (k)(2) by providing the statement required under § 1.6031(c)–1T, provided that the statement satisfies all requirements of § 1.6031(c)–1T and this paragraph (k)(2).

(3) *Reliance.* In making the adjustments under section 743(b) and any statement or return relating to such adjustments under this section, a partnership may rely on the written notice provided by a transferee pursuant to paragraph (k)(2) of this section to determine the transferee's basis in a partnership interest. The previous sentence shall not apply if any partner who has responsibility for federal income tax reporting by the partnership has knowledge of facts indicating that the statement is clearly erroneous.

(4) *Partnership not required to make or report adjustments under section 743(b) until it has notice of the transfer.* A partnership is not required to make the adjustments under section 743(b) (or any statement or return relating to those adjustments) with respect to any transfer until it has been notified of the transfer. For purposes of this section, a partnership is notified of a transfer when either—

(i) The partnership receives the written notice from the transferee required under paragraph (k)(2) of this section; or

(ii) Any partner who has responsibility for federal income tax reporting by the partnership has knowledge that there has been a transfer of a partnership interest.

(5) *Effect on partnership of failure of the transferee to comply.* If the transferee fails to provide the partnership with the written notice required by paragraph (k)(2) of this section, the partnership must attach a statement to its return in the year that the partnership is otherwise notified of the transfer. This statement must set forth the name and taxpayer identification number (if ascertainable) of the transferee. In addition, the following statement must be prominently displayed in capital letters on the first page of the partnership's return for such year, and on the first page of any schedule or information statement relating to such transferee's share of income, credits, deductions, etc.: "RETURN FILED PURSUANT TO § 1.743–1(k)(5)." The partnership will then be entitled to report the transferee's share of partnership items without adjustment to reflect the transferee's basis adjustment in partnership property. If, following the filing of a return pursuant to this paragraph (k)(5), the transferee provides the applicable written notice to the partnership, the partnership must make such adjustments as are necessary to adjust the basis of partnership property (as of the date of the transfer) in any amended return otherwise to be filed by the partnership or in the next annual partnership return of income to be regularly filed by the partnership. At such time, the partnership must also provide the transferee with such information as is necessary for the transferee to amend its prior returns to properly reflect the adjustment under section 743(b).

(l) *Effective date.* This section applies to transfers of partnership interests that occur on or after December 15, 1999.

**Par. 6.** Section 1.751–1 is amended by:

1. Revising paragraphs (a)(2) and (a)(3).
2. Revising paragraph (c)(3).
3. Removing paragraph (c)(4)(x).
4. Adding a sentence at the end of paragraph (f).
5. Revising *Example 1* of paragraph (g).

The addition and revisions read as follows:

**§ 1.751–1   Unrealized receivables and inventory items.**

\* \* \* \* \*

(a) \* \* \*

(2) *Determination of gain or loss.* The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property (including any remedial allocations under § 1.704–3(d)) that would have been allocated to the partner (to the extent attributable to the partnership interest sold or exchanged) if the partnership had sold all of its property in a fully taxable transaction for cash in an amount equal to the fair market value of such property (taking into account section 7701(g)) immediately prior to the partner's transfer of the interest in the partnership. Any gain or loss recognized that is attributable to section 751 property will be ordinary gain or loss. The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 and the amount of ordinary income or loss determined under this paragraph (a)(2) is the transferor's capital gain or loss on the sale of its partnership interest.

(3) *Statement required.* A partner selling or exchanging any part of an interest in a partnership that has any section 751 property at the time of sale or exchange must submit with its income tax return for the taxable year in which the sale or exchange occurs a statement setting forth separately the following information—

(i) The date of the sale or exchange;

(ii) The amount of any gain or loss attributable to the section 751 property; and

(iii) The amount of any gain or loss attributable to capital gain or loss on the sale of the partnership interest.

\* \* \* \* \*

(c) *Unrealized receivables.* \* \* \*

(3) In determining the amount of the sale price attributable to such unrealized receivables, or their value in a distribution treated as a sale or exchange, full account shall be taken not only of the estimated cost of completing performance of the contract or agreement, but also of the time between the sale or distribution and the time of payment.

\* \* \* \* \*

(f) \* \* \* The rules contained in paragraphs (a)(2) and (a)(3) of this section apply to transfers of partnership interests that occur on or after December 15, 1999.

(g) \* \* \*

*Example 1.* (i)(A) A and B are equal partners in personal service partnership PRS. B transfers its interest in PRS to T for $15,000 when PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

|  | Assets ||
|---|---|---|
|  | Adjusted basis | Fair market value |
| Cash | $3,000 | $3,000 |
| Loans Receivable | 10,000 | 10,000 |
| Capital Assets | 7,000 | 5,000 |
| Unrealized Receivables | 0 | 14,000 |
| Total | 20,000 | 32,000 |

|  | Liabilities and Capital ||
|---|---|---|
|  | Adjusted per books | Fair market value |
| Liabilities | $2,000 | $2,000 |
| Capital: |  |  |
| A | 9,000 | 15,000 |
| B | 9,000 | 15,000 |
| Total | 20,000 | 32,000 |

(B) None of the assets owned by PRS is section 704(c) property, and the capital assets are nondepreciable. The total amount realized by B is $16,000, consisting of the cash received, $15,000, plus $1,000, B's share of the partnership liabilities assumed by T. See section 752. B's undivided half-interest in the partnership property includes a half-interest in the partnership's unrealized receivables items. B's basis for its partnership interest is $10,000 ($9,000, plus $1,000, B's share of partnership liabilities). If section 751(a) did not apply to the sale, B would recognize $6,000 of capital gain from the sale of the interest in PRS. However, section 751(a) does apply to the sale.

(ii) If PRS sold all of its section 751 property in a fully taxable transaction immediately prior to the transfer of B's partnership interest to T, B would have been allocated $7,000 of ordinary income from the sale of PRS's unrealized receivables. Therefore, B will recognize $7,000 of ordinary income with respect to the unrealized receivables. The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 ($6,000) and the amount of ordinary income or loss determined under paragraph (a)(2) of this section ($7,000) is the transferor's capital gain or loss on the sale of its partnership interest. In this case, B will recognize a $1,000 capital loss.

\* \* \* \* \*

Par. 7. Section 1.754–1 is amended as follows:

1. Designate the text following the heading of paragraph (c) as paragraph (c)(1).

2. Add a heading to newly designated paragraph (c)(1).

3. Add paragraph (c)(2).

The additions read as follows:

**§ 1.754–1   Time and manner of making election to adjust basis of partnership property.**

\* \* \* \* \*

(c) *Revocation of election*—(1) *In general.* \* \* \*

(2) *Revocations made for first taxable year ending after December 15, 1999.* Notwithstanding paragraph (c)(1) of this section, any partnership having an election in effect under this section for its taxable year that includes December 15, 1999 may revoke such election by attaching a statement to the partnership's return for such year. For the revocation to be valid, the statement must be filed not later than the time prescribed by § 1.6031(a)-1( ) (including extensions thereof) for filing the return for such taxable year, and must set forth the name and address of the partnership revoking the election, be signed by any one of the partners who is authorized to sign the partnership's federal income tax return, and contain a declaration that the partnership revokes its election under section 754 to apply the provisions of section 734(b) and 743(b). In addition, the following statement must be prominently displayed in capital letters on the first page of the partnership's return for such year: "RETURN FILED PURSUANT TO 1.754–1(c)(2)."

Par. 8. Section 1.755–1 is revised to read as follows:

**§ 1.755–1   Rules for allocation of basis.**

(a) *Generally.* A partnership that has an election in effect under section 754 must adjust the basis of partnership property under the provisions of section 734(b) and section 743(b) pursuant to the provisions of this section. The basis adjustment is first allocated between the two classes of property described in section 755(b). The classes of property consist of capital assets and section 1231(b) property (capital gain property), and any other property of the partnership (ordinary income property). For purposes of this section, properties and potential gain treated as unrealized receivables under section 751(c) and the regulations thereunder shall be treated as separate assets that are ordinary income property. The portion of the basis adjustment allocated to each class is then allocated among the items within the class. Adjustments under section 743(b) are allocated under paragraph (b) of this section. Adjustments under section 734(b) are allocated under paragraph (c) of this section.

(b) *Adjustments under section 743(b)*—(1) *Generally.* (i) For exchanges in which the transferee's basis in the interest is determined in whole or in part by reference to the transferor's basis in the interest, paragraph (b)(5) of this section shall apply. For all other transfers which result in a basis adjustment under section 743(b), paragraphs (b)(2) through (b)(4) of this section shall apply. Except as provided in paragraph (b)(5) of this section, the portion of the basis adjustment allocated to one class of property may be an increase while the portion allocated to the other class is a decrease. This would be the case even though the total amount of the basis adjustment is zero. Except as provided in paragraph (b)(5) of this section, the portion of the basis adjustment allocated to one item of property within a class may be an increase while the portion allocated to another is a decrease. This would be the case even though the basis adjustment allocated to the class is zero.

(ii) *Hypothetical transaction.* For purposes of paragraphs (b)(2) through (b)(4) of this section, the allocation of

**Attachment II - page 14 of 20**

the basis adjustment under section 743(b) between the classes of property and among the items of property within each class are made based on the allocations of income, gain, or loss (including remedial allocations under § 1.704–3(d)) that the transferee partner would receive (to the extent attributable to the acquired partnership interest) if, immediately after the transfer of the partnership interest, all of the partnership's property were disposed of in a fully taxable transaction for cash in an amount equal to the fair market value of such property (the hypothetical transaction).

(2) *Allocations between classes of property*—(i) *In general.* The amount of the basis adjustment allocated to the class of ordinary income property is equal to the total amount of income, gain, or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the sale of all ordinary income property in the hypothetical transaction. The amount of the basis adjustment to capital gain property is equal to—

(A) The total amount of the basis adjustment under section 743(b); less

(B) The amount of the basis adjustment allocated to ordinary income property under the preceding sentence; provided, however, that in no event may the amount of any decrease in basis allocated to capital gain property exceed the partnership's basis (or in the case of a remedial allocation method, the transferee's share of any remedial loss under § 1.704–3(d) from the hypothetical transaction) in capital gain property. In the event that a decrease in basis allocated to capital gain property would otherwise exceed the partnership's basis in capital gain property, the excess must be applied to reduce the basis of ordinary income property.

(ii) *Examples.* The provisions of this paragraph (b)(2) are illustrated by the following examples:

*Example 1.* (i) A and B form equal partnership PRS. A contributes $50,000 and Asset 1, a nondepreciable capital asset with a fair market value of $50,000 and an adjusted tax basis of $25,000. B contributes $100,000. PRS uses the cash to purchase Assets 2, 3, and 4. After a year, A sells its interest in PRS to T for $120,000. At the time of the transfer, A's share of the partnership's basis in partnership assets is $75,000. Therefore, T receives a $45,000 basis adjustment.

(ii) Immediately after the transfer of the partnership interest to T, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Gain Property: | | |
| Asset 1 | $25,000 | $75,000 |
| Asset 2 | 100,000 | 117,500 |
| Ordinary Income Property: | | |
| Asset 3 | 40,000 | 45,000 |
| Asset 4 | 10,000 | 2,500 |
| Total | 175,000 | 240,000 |

(iii) If PRS sold all of its assets in a fully taxable transaction at fair market value immediately after the transfer of the partnership interest to T, the total amount of capital gain that would be allocated to T is equal to $46,250 ($25,000 section 704(c) built-in gain from Asset 1, plus fifty percent of the $42,500 appreciation in capital gain property). T would also be allocated a $1,250 ordinary loss from the sale of the ordinary income property.

(iv) The amount of the basis adjustment that is allocated to ordinary income property is equal to ($1,250) (the amount of the loss allocated to T from the hypothetical sale of the ordinary income property).

(v) The amount of the basis adjustment that is allocated to capital gain property is equal to $46,250 (the amount of the basis adjustment, $45,000, less ($1,250), the amount of loss allocated to T from the hypothetical sale of the ordinary income property).

*Example 2.* (i) A and B form equal partnership PRS. A and B each contribute $1,000 cash which the partnership uses to purchase Assets 1, 2, 3, and 4. After a year, A sells its partnership interest to T for $1,000. T's basis adjustment under section 743(b) is zero.

(ii) Immediately after the transfer of the partnership interest to T, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Gain Property: | | |
| Asset 1 | $500 | $750 |
| Asset 2 | 500 | 500 |
| Ordinary Income Property: | | |
| Asset 3 | 500 | 250 |
| Asset 4 | 500 | 500 |
| Total | 2,000 | 2,000 |

(iii) If, immediately after the transfer of the partnership interest to T, PRS sold all of its assets in a fully taxable transaction at fair market value, T would be allocated a loss of $125 from the sale of the ordinary income property. Thus, the amount of the basis adjustment to ordinary income property is ($125). The amount of the basis adjustment to capital gain property is $125 (zero, the amount of the basis adjustment under section 743(b), less ($125), the amount of the basis adjustment allocated to ordinary income property).

(3) *Allocation within the class*—(i) *Ordinary income property.* The amount of the basis adjustment to each item of property within the class of ordinary income property is equal to—

(A) The amount of income, gain, or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the item; reduced by

(B) The product of—

(1) Any decrease to the amount of the basis adjustment to ordinary income property required pursuant to the last sentence of paragraph (b)(2)(i) of this section; multiplied by

(2) A fraction, the numerator of which is the fair market value of the item of property to the partnership and the denominator of which is the total fair market value of all of the partnership's items of ordinary income property.

(ii) *Capital gain property.* The amount of the basis adjustment to each item of property within the class of capital gain property is equal to—

(A) The amount of income, gain, or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the item; minus

(B) The product of—

(1) The total amount of gain or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all items of capital gain property, minus the amount of the positive basis adjustment to all items of capital gain property or plus the amount of the negative basis adjustment to capital gain property; multiplied by

(2) A fraction, the numerator of which is the fair market value of the item of property to the partnership, and the denominator of which is the fair market value of all of the partnership's items of capital gain property.

(iii) *Examples.* The provisions of this paragraph (b)(3) are illustrated by the following examples:

*Example 1.* (i) Assume the same facts as Example 1 in paragraph (b)(2)(ii) of this section. Of the $45,000 basis adjustment, $46,250 was allocated to capital gain property. The amount allocated to ordinary income property was ($1,250).

(ii) Asset 1 is a capital gain asset, and T would be allocated $37,500 from the sale of Asset 1 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 1 is $37,500.

(iii) Asset 2 is a capital gain asset, and T would be allocated $8,750 from the sale of Asset 2 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 2 is $8,750.

(iv) Asset 3 is ordinary income property, and T would be allocated $2,500 from the sale of Asset 3 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 3 is $2,500.

(v) Asset 4 is ordinary income property, and T would be allocated ($3,750) from the sale of Asset 4 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 4 is ($3,750).

*Example 2.* (i) Assume the same facts as Example 1 in paragraph (b)(2)(ii) of this section, except that A sold its interest in PRS to T for $110,000 rather than $120,000. T, therefore, receives a basis adjustment under section 743(b) of $35,000. Of the $35,000 basis adjustment, ($1,250) is allocated to ordinary income property, and $36,250 is allocated to capital gain property.

(ii) Asset 3 is ordinary income property, and T would be allocated $2,500 from the sale of Asset 3 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 3 is $2,500.

(iii) Asset 4 is ordinary income property, and T would be allocated ($3,750) from the sale of Asset 4 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 4 is ($3,750).

(iv) Asset 1 is a capital gain asset, and T would be allocated $37,500 from the sale of Asset 1 in the hypothetical transaction. Asset 2 is a capital gain asset, and T would be allocated $8,750 from the sale of Asset 2 in the hypothetical transaction. The total amount of gain that would be allocated to T from the sale of the capital gain assets in the hypothetical transaction is $46,250, which exceeds the amount of the basis adjustment allocated to capital gain property by $10,000. The amount of the adjustment to Asset 1 is $33,604 ($37,500 minus $3,896 ($10,000 × $75,000/192,500)). The amount of the basis adjustment to Asset 2 is $2,646 ($8,750 minus $6,104 ($10,000 × $117,500/192,500)).

(4) *Income in respect of a decedent*—
(i) *In general.* Where a partnership interest is transferred as a result of the death of a partner, under section 1014(c) the transferee's basis in its partnership interest is not adjusted for that portion of the interest, if any, which is attributable to items representing income in respect of a decedent under section 691. See § 1.742–1. Accordingly, if a partnership interest is transferred as a result of the death of a partner, and the partnership holds assets representing income in respect of a decedent, no part of the basis adjustment under section 743(b) is allocated to these assets. See § 1.743–1(b).

(ii) The provisions of this paragraph (b)(4) are illustrated by the following example:

*Example.* (i) A and B are equal partners in personal service partnership PRS. As a result of B's death, B's partnership interest is transferred to T when PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Asset | $2,000 | $5,000 |
| Unrealized Receivables | 0 | 15,000 |
| Total | 2,000 | 20,000 |

|  | Liabilities and Capital | |
|---|---|---|
|  | Adjusted per books | Fair market value |
| Capital: | | |
| A | 1,000 | 10,000 |
| B | 1,000 | 10,000 |
| Total | 2,000 | 20,000 |

(ii) None of the assets owned by PRS is section 704(c) property, and the capital asset is nondepreciable. The fair market value of T's partnership interest on the applicable date of valuation set forth in section 1014 is $10,000. Of this amount, $2,500 is

attributable to T's share of the partnership's capital asset, and $7,500 is attributable to T's 50% share of the partnership's unrealized receivables. The partnership's unrealized receivables represent income in respect of a decedent. Accordingly, under section 1014(c), T's basis in its partnership interest is not adjusted for that portion of the interest which is attributable to the unrealized receivables. Therefore, T's basis in its partnership interest is $2,500.

(iii) At the time of the transfer, B's share of the partnership's basis in partnership assets is $1,000. Accordingly, T receives a $1,500 basis adjustment under section 743(b). Under this paragraph (b)(4), the entire basis adjustment is allocated to the partnership's capital asset.

(5) *Transferred basis exchanges*—(i) *In general.* This paragraph (b)(5) applies to basis adjustments under section 743(b) which result from exchanges in which the transferee's basis in the interest is determined in whole or in part by reference to the transferor's basis in the interest. For example, this paragraph applies if a partnership interest is contributed to a corporation in a transaction to which section 351 applies or to a partnership in a transaction to which section 721(a) applies.

(ii) *Allocations between classes of property.* If the total amount of the basis adjustment under section 743(b) is zero, then no adjustment to the basis of partnership property will be made under this paragraph (b)(5). If there is an increase in basis to be allocated to partnership assets, such increase must be allocated to capital gain property or ordinary income property, respectively, only if the total amount of gain or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all such property would result in a net gain or net income, as the case may be, to the transferee. Where, under the preceding sentence, an increase in basis may be allocated to both capital gain assets and ordinary income assets, the increase shall be allocated to each class in proportion to the net gain or net income, respectively, which would be allocated to the transferee from the sale of all assets in each class. If there is a decrease in basis to be allocated to partnership assets, such decrease must be allocated

to capital gain property or ordinary income property, respectively, only if the total amount of gain or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all such property would result in a net loss to the transferee. Where, under the preceding sentence, a decrease in basis may be allocated to both capital gain assets and ordinary income assets, the decrease shall be allocated to each class in proportion to the net loss which would be allocated to the transferee from the sale of all assets in each class.

(iii) *Allocations within the classes*—
(A) *Increases.* If there is an increase in basis to be allocated within a class, the increase must be allocated first to properties with unrealized appreciation in proportion to the transferee's share of the respective amounts of unrealized appreciation before such increase (but only to the extent of the transferee's share of each property's unrealized appreciation). Any remaining increase must be allocated among the properties within the class in proportion to the transferee's share of the amount that would be realized by the partnership upon the hypothetical sale of each asset in the class.

(B) *Decreases.* If there is a decrease in basis to be allocated within a class, the decrease must be allocated first to properties with unrealized depreciation in proportion to the transferee's share of the respective amounts of unrealized depreciation before such decrease (but only to the extent of the transferee's share of each property's unrealized depreciation). Any remaining decrease must be allocated among the properties within the class in proportion to the transferee's share of the adjusted bases (as adjusted under the preceding sentence).

(C) *Limitation in decrease of basis.* Where, as the result of a transaction to which this paragraph (b)(5) applies, a decrease in basis must be allocated to capital gain assets, ordinary income assets, or both, and the amount of the decrease otherwise allocable to a particular class exceeds the transferee's share of the adjusted basis to the partnership of all depreciated assets in that class, the transferee's negative basis

adjustment is limited to the transferee's share of the partnership's adjusted basis in all depreciated assets in that class.

(D) *Carryover adjustment.* Where a transferee's negative basis adjustment under section 743(b) cannot be allocated to any asset, because the adjustment exceeds the transferee's share of the adjusted basis to the partnership of all depreciated assets in a particular class, the adjustment is made when the partnership subsequently acquires property of a like character to which an adjustment can be made.

(iv) *Examples.* The provisions of this paragraph (b)(5) are illustrated by the following examples:

*Example 1.* A is a member of partnership LTP, which has made an election under section 754. The three partners in LTP have equal interests in capital and profits. Solely in exchange for a partnership interest in UTP, A contributes its interest in LTP to UTP in a transaction described in section 721. At the time of the transfer, A's basis in its partnership interest ($5,000) equals its share of inside basis (also $5,000). Under section 723, UTP's basis in its interest in LTP is $5,000. LTP's only two assets on the date of contribution are inventory with a basis of $5,000 and a fair market value of $7,500, and a nondepreciable capital asset with a basis of $10,000 and a fair market value of $7,500. The amount of the basis adjustment under section 743(b) to partnership property is $0 ($5,000, UTP's basis in its interest in LTP, minus $5,000, UTP's share of LTP's basis in partnership assets). Because UTP acquired its interest in LTP in a transferred basis exchange, and the total amount of the basis adjustment under section 743(b) is zero, UTP receives no special basis adjustments under section 743(b) with respect to the partnership property of LTP.

*Example 2.* (i) A purchases a partnership interest in LTP at a time when an election under section 754 is not in effect. The three partners in LTP have equal interests in capital and profits. During a later year for which LTP has an election under section 754 in effect, and in a transaction that is unrelated to A's purchase of the LTP interest, A contributes its interest in LTP to UTP in a transaction described in section 721 (solely in exchange for a partnership interest in UTP). At the time of the transfer, A's adjusted basis in its interest in LTP is $20,433. Under section 721, A recognizes no gain or loss as a result of the contribution of its partnership interest to UTP. Under section 723, UTP's basis in its partnership interest in LTP is $20,433. The balance sheet of LTP on the date of the contribution shows the following:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Cash | $5,000 | $5,000 |
| Accounts receivable | 10,000 | 10,000 |
| Inventory | 20,000 | 21,000 |

**Attachment II - page 17 of 20**

**69920** Federal Register / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Nondepreciable capital asset | 20,000 | 40,000 |
| Total | 55,000 | 76,000 |

|  | Liabilities and Capital | |
|---|---|---|
|  | Adjusted per books | Fair market value |
| Liabilities | $10,000 | $10,000 |
| Capital: | | |
| A | 15,000 | 22,000 |
| B | 15,000 | 22,000 |
| C | 15,000 | 22,000 |
| Total | 55,000 | 76,000 |

(ii) The amount of the basis adjustment under section 743(b) is the difference between the basis of UTP's interest in LTP and UTP's share of the adjusted basis to LTP of partnership property. UTP's interest in the previously taxed capital of LTP is $15,000 ($22,000, the amount of cash UTP would receive if LTP liquidated immediately after the hypothetical transaction, decreased by $7,000, the amount of tax gain allocated to UTP from the hypothetical transaction). UTP's share of the adjusted basis to LTP of partnership property is $18,333 ($15,000 share of previously taxed capital, plus $3,333 share of LTP's liabilities). The amount of the basis adjustment under section 743(b) to partnership property therefor, is $2,100 ($20,433 minus $18,333).

(iii) The total amount of gain that would be allocated to UTP from the hypothetical sale of capital gain property is $6,666.67 (one-third of the excess of the fair market value of LTP's nondepreciable capital asset, $40,000, over its basis, $20,000). The total amount of gain that would be allocated to UTP from the hypothetical sale of ordinary income property is $333.33 (one-third of the excess of the fair market value of LTP's inventory, $21,000, over its basis, $20,000). Under paragraph (b)(5), LTP must allocate $2,000 ($6,666.67 divided by $7,000 times $2,100) of UTP's basis adjustment to the nondepreciable capital asset. LTP must allocate $100 ($333.33 divided by $7,000 times $2,100) of UTP's basis adjustment to the inventory.

(c) *Adjustments under section 734(b)*—(1) *Allocations between classes of property*—(i) *General rule*. Where there is a distribution of partnership property resulting in an adjustment to the basis of undistributed partnership property under section 734(b)(1)(B) or (b)(2)(B), the adjustment must be allocated to remaining partnership property of a character similar to that of the distributed property with respect to which the adjustment arose. Thus, when the partnership's adjusted basis of distributed capital gain property immediately prior to distribution exceeds the basis of the property to the distributee partner (as determined under section 732), the basis of the undistributed capital gain property remaining in the partnership is increased by an amount equal to the excess. Conversely, when the basis to the distributee partner (as determined under section 732) of distributed capital gain property exceeds the partnership's adjusted basis of such property immediately prior to the distribution, the basis of the undistributed capital gain property remaining in the partnership is decreased by an amount equal to such excess. Similarly, where there is a distribution of ordinary income property, and the basis of the property to the distributee partner (as determined under section 732) is not the same as the partnership's adjusted basis of the property immediately prior to distribution, the adjustment is made only to undistributed property of the same class remaining in the partnership.

(ii) *Special rule*. Where there is a distribution resulting in an adjustment under section 734(b)(1)(A) or (b)(2)(A) to the basis of undistributed partnership property, the adjustment is allocated only to capital gain property.

(2) *Allocations within the classes*—(i) *Increases*. If there is an increase in basis to be allocated within a class, the increase must be allocated first to properties with unrealized appreciation in proportion to their respective amounts of unrealized appreciation before such increase (but only to the extent of each property's unrealized appreciation). Any remaining increase must be allocated among the properties within the class in proportion to their fair market values.

(ii) *Decreases*. If there is a decrease in basis to be allocated within a class, the decrease must be allocated first to properties with unrealized depreciation in proportion to their respective amounts of unrealized depreciation before such decrease (but only to the extent of each property's unrealized depreciation). Any remaining decrease must be allocated among the properties within the class in proportion to their adjusted bases (as adjusted under the preceding sentence).

(3) *Limitation in decrease of basis*. Where a decrease in the basis of partnership assets is required under section 734(b)(2) and the amount of the decrease exceeds the adjusted basis to the partnership of property of the required character, the basis of such property is reduced to zero (but not below zero).

(4) *Carryover adjustment*. Where, in the case of a distribution, an increase or a decrease in the basis of undistributed property cannot be made because the partnership owns no property of the character required to be adjusted, or because the basis of all the property of a like character has been reduced to zero, the adjustment is made when the partnership subsequently acquires property of a like character to which an adjustment can be made.

(5) *Example*. The following example illustrates this paragraph (c):

*Example.* (i) A, B, and C form equal partnership PRS. A contributes $50,000 and Asset 1, capital gain property with a fair market value of $50,000 and an adjusted tax basis of $25,000. B and C each contributes $100,000. PRS uses the cash to purchase Assets 2, 3, 4, 5, and 6. Assets 4, 5, and 6 are the only assets held by the partnership which are subject to section 751. The partnership has an election in effect under section 754. After seven years, the adjusted basis and fair market value of PRS's assets are as follows:

**Attachment II - page 18 of 20**

Federal Register / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations    69921

|  | Assets | |
| --- | --- | --- |
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
| Asset 1 | $ 25,000 | $ 75,000 |
| Asset 2 | 100,000 | 117,500 |
| Asset 3 | 50,000 | 60,000 |
| Ordinary Income Property: |  |  |
| Asset 4 | $ 40,000 | $ 45,000 |
| Asset 5 | 50,000 | 60,000 |
| Asset 6 | 10,000 | 2,500 |
| Total | 275,000 | 360,000 |

(ii) *Allocation between classes.* Assume that PRS distributes Assets 3 and 5 to A in complete liquidation of A's interest in the partnership. A's basis in the partnership interest was $75,000. The partnership's basis in Assets 3 and 5 was $50,000 each. A's $75,000 basis in its partnership interest is allocated between Assets 3 and 5 under sections 732(b) and (c). A will, therefore, have a basis of $25,000 in Asset 3 (capital gain property), and a basis of $50,000 in Asset 5 (section 751 property). The distribution results in a $25,000 increase in the basis of capital gain property. There is no change in the basis of ordinary income property.

(iii) *Allocation within class.* The amount of the basis increase to capital gain property is $25,000 and must be allocated among the remaining capital gain assets in proportion to the difference between the fair market value and basis of each. The fair market value of Asset 1 exceeds its basis by $50,000. The fair market value of Asset 2 exceeds its basis by $17,500. Therefore, the basis of Asset 1 will be increased by $18,519 ($25,000, multiplied by $50,000, divided by $67,500), and the basis of Asset 2 will be increased by $6,481 ($25,000 multiplied by $17,500, divided by $67,500).

(d) *Effective date.* This section applies to transfers of partnership interests and distributions of property from a partnership that occur on or after December 15, 1999.

Par. 9. Section 1.1017–1 is amended by:

1. Revising paragraph (g)(2)(iv).
2. Adding paragraph (g)(2)(v).

The addition and revision read as follows:

### § 1.1017–1  Basis reductions following a discharge of indebtedness.

\* \* \* \* \*

(g) \* \* \*
(2) \* \* \*
(iv) *Partner's share of partnership basis*—(A) *In general.* For purposes of this paragraph (g), a partner's proportionate share of the partnership's basis in depreciable property (or depreciable real property) is equal to the sum of—

(1) The partner's section 743(b) basis adjustments to items of partnership depreciable property (or depreciable real property); and

(2) The common basis depreciation deductions (but not including remedial allocations of depreciation deductions under § 1.704–3(d)) that, under the terms of the partnership agreement effective for the taxable year in which the discharge of indebtedness occurs, are reasonably expected to be allocated to the partner over the property's remaining useful life. The assumptions made by a partnership in determining the reasonably expected allocation of depreciation deductions must be consistent for each partner. For example, a partnership may not treat the same depreciation deductions as being reasonably expected by more than one partner.

(B) *Effective date.* This paragraph (g)(2)(iv) applies to elections made under sections 108(b)(5) and 108(c) on or after December 15, 1999.

(v) *Treatment of basis reduction*—(A) *Basis adjustment.* The amount of the reduction to the basis of depreciable partnership property constitutes an adjustment to the basis of partnership property with respect to the partner only. No adjustment is made to the common basis of partnership property. Thus, for purposes of income, deduction, gain, loss, and distribution, the partner will have a special basis for those partnership properties the bases of which are adjusted under section 1017 and this section.

(B) *Recovery of adjustments to basis of partnership property.* Adjustments to the basis of partnership property under this section are recovered in the manner described in § 1.743–1.

(C) *Effect of basis reduction.* Adjustments to the basis of partnership property under this section are treated in the same manner and have the same effect as an adjustment to the basis of partnership property under section 743(b). The following example illustrates this paragraph (g)(2)(v):

*Example.* (i) A, B, and C are equal partners in partnership PRS, which owns (among other things) Asset 1, an item of depreciable property with a basis of $30,000. A's basis in its partnership interest is $20,000. Under the terms of the partnership agreement, A's share of the depreciation deductions from Asset 1 over its remaining useful life will be $10,000. Under section 1017, A requests, and PRS agrees, to decrease the basis of Asset 1 with respect to A by $10,000.

(ii) In the year following the reduction of basis under section 1017, PRS amends its partnership agreement to provide that it ms of depreciation and loss from Asset 1 will be allocated equally between B and C. In that year, A's distributive share of the partnership's common basis depreciation deductions from Asset 1 is now $0. Under § 1.743–1(j)(4)(ii)(B), the amount of the section 1017 basis adjustment that A recovers during the year is $1,000. A will report $1,000 of ordinary income because A's distributive share of the partnership's common basis depreciation deductions from Asset 1 ($0) is insufficient to offset the amount of the section 1017 basis adjustment recovered by A during the year ($1,000).

(iii) In the following year, PRS sells Asset 1 for $15,000 and recognizes a $12,000 loss. This loss is allocated equally between B and C, and A's share of the loss is $0. Upon the sale of Asset 1, A recovers its entire remaining section 1017 basis adjustment ($9,000). A will report $9,000 of ordinary income.

(D) *Effective date.* This paragraph (g)(2)(v) applies to elections made under sections 108(b)(5) and 108(c) on or after December 15, 1999.

### PART 602—OMB CONTROL NUMBERS UNDER THE PAPERWORK REDUCTION ACT

Par. 10. The authority citation for part 602 continues to read as follows:

**Authority:** 26 U.S.C. 7805.

Par. 11. In § 602.101, paragraph (b) is amended by revising the entries for 1.732–1 and 1.743–1 in the table to read as follows:

### § 602.101  OMB Control numbers.

\* \* \* \* \*

(b) \* \* \*

**69922**  Federal Register / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations

| CFR part or section where identified and described | Current OMB control No. |
|---|---|
| * * * * * | |
| 1.732–1 | 1545–0099 |
| | 1545–1588 |
| * * * * * | |
| 1.743–1 | 1545–0074 |
| | 1545–1588 |
| * * * * * | |

**David A. Mader,**
*Acting Deputy Commissioner of Internal Revenue.*

Approved November 29, 1999.

**Jonathan Talisman,**
*Acting Assistant Secretary of the Treasury.*

[FR Doc. 99–32400 Filed 12–14–99; 8:45 am]
**BILLING CODE 4830-01-U**

---

## PENSION BENEFIT GUARANTY CORPORATION

### 29 CFR Part 4044

### Allocation of Assets in Single-Employer Plans; Interest Assumptions for Valuing Benefits

**AGENCY:** Pension Benefit Guaranty Corporation.
**ACTION:** Final rule.

---

**SUMMARY:** The Pension Benefit Guaranty Corporation's regulation on Allocation of Assets in Single-Employer Plans prescribes interest assumptions for valuing benefits under terminating single-employer plans. This final rule amends the regulation to adopt interest assumptions for plans with valuation dates in January 2000. Interest assumptions are also published on the PBGC's web site (http://www.pbgc.gov).

**EFFECTIVE DATE:** January 1, 2000.

**FOR FURTHER INFORMATION CONTACT:** Harold J. Ashner, Assistant General Counsel, Office of the General Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, NW., Washington, DC 20005, 202–326–4024. (For TTY/TDD users, call the Federal Relay Service toll-free at 1–800–877–8339 and ask to be connected to 202–326–4024.)

**SUPPLEMENTARY INFORMATION:** The PBGC's regulation on Allocation of Assets in Single-Employer Plans (29 CFR part 4044) prescribes actuarial assumptions for valuing plan benefits of terminating single-employer plans covered by title IV of the Employee Retirement Income Security Act of 1974.

Among the actuarial assumptions prescribed in part 4044 are interest assumptions. These interest assumptions are intended to reflect current conditions in the financial and annuity markets.

Two sets of interest assumptions are prescribed, one set for the valuation of benefits to be paid as annuities and one set for the valuation of benefits to be paid as lump sums. This amendment adds to appendix B to part 4044 the annuity and lump sum interest assumptions for valuing benefits in plans with valuation dates during January 2000.

For annuity benefits, the interest assumptions will be 6.90 percent for the first 25 years following the valuation date and 6.25 percent thereafter. These annuity interest assumptions (in comparison with those in effect during December 1999) reflect a 5-year increase as in the period during which the initial rate applies (from a period of 20 years following the valuation date to a period of 25 years following the valuation date). The initial rate, in effect for the first 25 years following the valuation date, represents an increase (from the initial rate in effect for December 1999) of 0.40 percent. The ultimate rate, in effect thereafter, represents an increase as (from the ultimate rate in effect for December 1999) of 1.00 percent.

For benefits to be paid as lump sums, the interest assumptions to be used by the PBGC will be 5.00 percent for the period during which a benefit is in pay status, 4.25 percent during the seven-year period directly preceding the benefit's placement in pay status, and 4.00 percent during any other years preceding the benefit's placement in pay status. The lump sum interest assumptions represent a decrease (from those in effect for December 1999), of 0.25 percent for the period during which a benefit is in pay status and for the seven-year period directly preceding the benefit's placement in pay status; they are otherwise unchanged.

The PBGC has determined that notice and public comment on this amendment are impracticable and contrary to the public interest. This finding is based on the need to determine and issue new interest assumptions promptly so that the assumptions can reflect, as accurately as possible, current market conditions.

Because of the need to provide immediate guidance for the valuation of benefits in plans with valuation dates during January 2000, the PBGC finds that good cause exists for making the assumptions set forth in this amendment effective less than 30 days after publication.

The PBGC has determined that this action is not a "significant regulatory action" under the criteria set forth in Executive Order 12866.

Because no general notice of proposed rulemaking is required for this amendment, the Regulatory Flexibility Act of 1980 does not apply. See 5 U.S.C. 601(2).

### List of Subjects in 29 CFR Part 4044

Pension insurance, Pensions.

In consideration of the foregoing, 29 CFR part 4044 is amended as follows:

### PART 4044—ALLOCATION OF ASSETS IN SINGLE-EMPLOYER PLANS

1. The authority citation for part 4044 continues to read as follows:

**Authority:** 29 U.S.C. 1301(a), 1302(b)(3), 1341, 1344, 1362.

2. In appendix B, a new entry is added to Table I, and Rate Set 75 is added to Table II, as set forth below. The introductory text of each table is republished for the convenience of the reader and remains unchanged.

### Appendix B to Part 4044—Interest Rates Used to Value Annuities and Lump Sums

**TABLE I.—Annuity Valuations:**

[This table sets forth, for each indicated calendar month, the interest rates (denoted by $i_1, i_2, \ldots$, and referred to generally as $i_t$) assumed to be in effect between specified anniversaries of a valuation date that occurs within that calendar month; those anniversaries are specified in the columns adjacent to the rates. The last listed rate is assumed to be in effect after the last listed anniversary date.]

| For valuation dates occurring in the month— | The values of $i_t$ are: | | | | | |
|---|---|---|---|---|---|---|
| | $i_t$ | for $t =$ | $i_t$ | for $t =$ | $i_t$ | for $t =$ |
| * | * | * | * | * | * | * |
| January 2000 | .0690 | 1–25 | .0625 | >25 | N/A | N/A |