**39910**   Federal Register / Vol. 59, No. 149 / Thursday, August 4, 1994 / Rules and Regulations

## DEPARTMENT OF JUSTICE

**28 CFR Part 77**

[AG Order No. 1903-94]

### Communications With Represented Persons

**AGENCY:** Department of Justice.
**ACTION:** Final rule.

**SUMMARY:** This final rule governs the circumstances under which attorneys employed by the Department of Justice ("Department") may communicate with persons known to be represented by counsel in the course of law enforcement investigations and proceedings.

The purpose of this rule is to impose a comprehensive, clear, and uniform set of regulations on the conduct of government attorneys during criminal and civil investigations and enforcement proceedings. The rule is intended to ensure that government attorneys adhere to the highest ethical standards, while eliminating the uncertainty and confusion arising from the variety of interpretations of state rules, some of which have been incorporated as local court rules in a number of federal district courts.

The rule establishes, prospectively, a general prohibition, subject to limited enumerated exceptions, against contacts with "represented parties" without the consent of counsel. This prohibition derives from the American Bar Association ("ABA") Code of Professional Responsibility and its successor, the ABA Model Rules of Professional Conduct. The rule, on the other hand, generally permits investigative contacts with "represented persons": that is, individuals or organizations that are represented by counsel but that have not yet been named as defendants in a civil or criminal enforcement proceeding or arrested as part of a criminal proceeding. However, the rule does not permit contacts with represented persons without the consent of counsel for the purpose of negotiating plea agreements, settlements, or other similar legal arrangements.

In addition, the Department intends to issue substantial additions to the United States Attorneys' Manual ("Manual") to provide additional direction to Department attorneys when they deal with represented individuals and organizations, in order to accommodate more fully the principles and purposes underlying the state bar rules. Those provisions will further restrict government attorneys when they contact targets of criminal or civil law enforcement investigations who are known to be represented by counsel, and when they communicate with other represented persons.

**EFFECTIVE DATE:** September 6, 1994.

**FOR FURTHER INFORMATION CONTACT:**
F. Mark Terison, Senior Attorney, Legal Counsel, Executive Office for United States Attorneys, United States Department of Justice, (202) 514-4024. This is not a toll-free number.

**SUPPLEMENTARY INFORMATION:**

### I. Background

This final rule on the subject of communications with represented persons culminates a lengthy rulemaking process in which a proposed rule on the same subject was issued three separate times for comment. See 59 FR 10086 (Mar. 3, 1994); 58 FR 39976 (July 26, 1993); and 57 FR 54737 (Nov. 20, 1992). Comments received after the publication in November 1992 and in July 1993 of earlier versions of the rule resulted in major substantive changes being made to the rule. As a result, a new proposal reflecting these changes was published on March 3, 1994. During the most recent comment period, the Department received many thoughtful comments from private attorneys, local bar organizations, state courts, federal prosecutors, and others. The Department closely scrutinized all of these comments. After considering those comments, the Department made several relatively minor amendments to the proposed rule. Therefore, the final rule remains in substantially the same form as the proposed rule issued in March 1994.

The final rule reflects the Department's commitment to fostering ethical behavior consistent with the principles informing DR 7-104(A)(1) of the ABA Code of Professional Responsibility and Rule 4.2 of the Model Rules of Professional Conduct, while setting forth clear and uniform national guidelines upon which government attorneys can rely in carrying out their responsibilities to enforce federal laws. (The term "attorney for the government" is defined in paragraph 77.2(a), and where this phrase, or a variant of it, such as "government attorney," is used elsewhere in this commentary, it has the meaning set forth in paragraph 77.2(a), unless the context clearly indicates otherwise, and it is typically used interchangeably with "Department attorney.") In essence, this regulation permits federal prosecutors and agents to continue to conduct legitimate criminal and civil investigations against all individuals, whether or not those persons are represented by counsel. It allows government attorneys to continue to make or direct undercover or overt contacts with individuals and organizations represented by counsel for the purpose of developing factual information up until the point at which they are arrested or charged with a crime or named as defendants in a civil law enforcement action. However, the regulation generally does not permit federal prosecutors to attempt to negotiate plea agreements, settlements, or similar arrangements with individuals represented by counsel without the consent of their attorneys. This regulation also precludes, with certain narrow exceptions, any contacts with represented parties after an arrest, indictment, or the filing of a complaint on the subject matter of the representation.

Additionally, the Department plans to add provisions to the United States Attorneys' Manual that will set forth further guidance. The Department intends to prohibit overt approaches by federal attorneys to represented targets of criminal or civil enforcement proceedings without the consent of counsel, unless certain enumerated exceptions are met. The planned provisions also will generally require that government attorneys receive approval from their supervisors before communicating with any represented party or represented target.

Since early in this century, the rules of professional conduct that govern attorneys have required that lawyers for one party in a dispute communicate only through an adverse party's lawyer, rather than directly. DR 7-104(A)(1) of the ABA Model Code of Professional Responsibility provides:

A. During the course of his representation of a client a lawyer shall not:
1. Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Rule 4.2 of the ABA Model Rules states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Disciplinary authorities in all 50 states and in the District of Columbia have adopted one of these rules, or a similar prohibition. Underlying these rules is the recognition that when two parties in a legal proceeding are represented, it is generally unfair for an attorney to

**Attachment A - page 1 of 6**

circumvent opposing counsel and employ superior skills and legal training to take advantage of the opposing party.

At the same time, the courts have long recognized that government law enforcement agents must be allowed broad powers, within constitutional limits, to investigate crime and civil violations of police and regulatory laws. These powers properly include the authority to conduct undercover operations and to interview witnesses, potential suspects, targets, and even those defendants who waive their right to remain silent. Although the Fifth and Sixth Amendments significantly restrict contacts with defendants after their initial appearance before a judge or after indictment, these constraints generally do not apply before a person has been taken into custody or charged in an adversary proceeding. Sound policies support this substantial power of police to investigate. The general public, victims of crime, and even potential suspects have a strong interest in vigorous inquiry by law enforcement officers before arrest or the filing of charges.

As long as investigations were treated as within the province of the police alone, the traditional rule forbidding counsel from directly contacting represented persons did not come into conflict with legitimate law enforcement activities. In recent years, however, the Department of Justice has encouraged federal prosecutors to play a larger role in preindictment, prearrest investigations. Some of this increased involvement stems from the wider use of law enforcement techniques, such as electronic surveillance, which require the preparation of legal filings. Also, complex white collar and organized crime investigations necessitate more intensive engagement of lawyers, who present such cases to grand juries. Most important, greater participation of lawyers at the preindictment stage of law enforcement has been regarded as helpful in assuring that police investigations comply with legal and ethical standards.

This extension of the traditional prosecutor's responsibility has been a salutary development. One by-product, however, has been uncertainty about whether the traditional professional limitation on attorney contacts with represented parties should be viewed as a restriction upon prosecutors engaged in investigations and, by extension, the agents with whom they work. The overwhelming preponderance of federal appellate courts have held that the restriction on contacts with represented persons does not apply at the preindictment investigation stage. See, e.g., *United States v. Ryans*, 903 F.2d 731, 739 (10th Cir.), cert. denied, 498 U.S. 855 (1990); *United States v. Fitterer*, 710 F.2d 1328, 1333 (8th Cir.), cert. denied, 464 U.S. 852 (1983); *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.), cert. denied, 452 U.S. 920 (1981); *United States v. Weiss*, 599 F.2d 730, 739 (5th Cir. 1979); and *United States v. Lemonakis*, 485 F.2d 941, 955–56 (D.C. Cir. 1973), cert. denied, 415 U.S. 989 (1974). Only the Second Circuit has suggested otherwise. See *United States v. Hammad*, 846 F.2d 854, amended, 858 F.2d 834 (2d Cir. 1988), cert. denied, 498 U.S. 871 (1990). However, that suggestion was muted significantly in a revised opinion by the Second Circuit that "urge[d] restraint in applying the rule to criminal investigations," 858 F.2d at 838, and ultimately concluded that "a prosecutor is 'authorized by law' to employ legitimate investigative techniques in conducting or supervising criminal investigations * * * " *Id.* at 839. By contrast, state courts and state bar organizations have varied widely in their interpretation of the scope of the prohibition on contacts embodied in DR 7–104, Model Rule 4.2, and their analogs. Some examples of the varying interpretations are detailed below.

Uncertainty about the scope and applicability of DR 7–104, Model Rule 4.2, and their state counterparts has directly affected the investigative activities of agents, including Federal Bureau of Investigation and Drug Enforcement Administration personnel, who work with prosecutors. The expansive application of these rules in some jurisdictions may have the effect of blocking preindictment interviews or undercover operations that most courts have held permissible under federal constitutional and statutory law. Additionally, the heightened threat of disciplinary action that accompanies the expansive application of these rules has created a chilling effect on prosecutors responsible for directing these legitimate investigative activities.

These problems are compounded when federal attorneys assigned to the same case are members of different state bars. Under federal law, a Department attorney must be a member in good standing of a state bar, but he or she need not belong to the bar in each state in which he or she is practicing for the government. Therefore, prosecution teams often comprise attorneys admitted to different bars. The application of different state disciplinary rules to these individuals creates uncertainty, confusion, and the possibility of unfairness. Indeed, one member of a two-member federal prosecution team could receive a commendation for effective law enforcement while the other member, licensed in a different state, might be subject to state discipline for the same conduct.

In light of these circumstances, the Department has concluded that a compelling need exists that warrants a uniform federal rule to reconcile the traditional rule against contacts with a represented party with the obligation of the Department of Justice to enforce the law vigorously. Indeed, absent a uniform federal rule, prosecutors have been moved on occasion to reduce their participation in the investigative phase of law enforcement so as to leave federal agents unfettered by state disciplinary rules that were never intended to govern police behavior. Such a retreat from the field by prosecutors serves neither efficiency nor the interest in elevating legal compliance and ethical standards in all phases of law enforcement.

Furthermore, the disciplinary rules themselves invite promulgation of a regulation such as this one. Nearly all the states have adopted rules that include an "authorized by law" exception. This final rule, a duly promulgated regulation, is intended to constitute "law" within the meaning of those exceptions.

Finally, the Department has long maintained, and continues to maintain, that it has the authority to exempt its attorneys from the application of DR 7–104 and Model Rule 4.2 and their state counterparts. Furthermore, the Department maintains that whether, and to what extent, such prohibitions should apply to Department attorneys is a policy question. See Ethical Restraints of the ABA Code of Professional Responsibility on Federal Criminal Investigations, 4B Op. O.L.C. 576, 577 (1980). In light of the fact that all 50 states and the District of Columbia have adopted some form of a prohibition on contacts with represented parties, and in view of the long history of those rules, the Department believes that its attorneys should adhere to the principles underlying those rules to the maximum extent possible, consistent with the Department's law enforcement responsibilities. Therefore, even though the Department has the authority to exempt its attorneys from the reach of these rules, the Department has decided not to implement a wholesale exemption.

Rather, this regulation attempts to reconcile the purposes underlying DR 7–104 and Model Rule 4.2 with effective law enforcement. Recognizing the importance of the attorney-client relationship and the desirability that an individual who is represented by

counsel be fully advised by counsel before negotiating legal agreements, this regulation provides that federal attorneys may not negotiate plea bargains, settlement agreements, immunity agreements, or similar arrangements without the consent of the individual's attorney. There is a heightened risk in this context of the prosecutor's superior legal training and specialized knowledge being used to the detriment of the untutored layperson. Thus, the regulations comport with the principal purpose of DR 7-104 and Model Rule 4.2 by insisting that the individual's attorney participate in these types of negotiations. Further, even when contacts are allowed, the regulation is designed to minimize any intrusion into the attorney-client relationship. At the same time, this regulation does permit direct contacts at the preindictment, prearrest investigative stage with any individual, whether or not he or she is represented by counsel. The regulation is drafted to conform to the approach of most federal appellate courts that have considered the matter. See, e.g., United States v. Ryans, 903 F.2d 731 (10th Cir.) (discussing cases), cert. denied, 498 U.S. 855 (1990), and other cases cited previously in connection with the discussion of preindictment contacts. The Department believes that public policy and effective law enforcement would not be served if the simple act of retaining an attorney could serve to exempt a person from lawful, court-approved investigative techniques. The Department believes that it is inappropriate to alter investigative techniques based upon an individual's financial ability to retain counsel before the point at which an indigent would be afforded court-appointed counsel.

This regulation and the planned changes to the United States Attorneys' Manual also will give effect to other important aspects of the bar rules against contacts with represented parties. For example, the regulation precludes federal attorneys from disparaging an individual's counsel or from attempting to gain access to attorney-client confidences or lawful defense strategy. The guidelines that the Department intends to add to the Manual also will make clear that once an individual is in a likely adversarial situation with the government and has retained an attorney to represent himself or herself with respect to the particular subject matter under investigation, the government attorney must take greater care before making any ex parte contacts. While the regulation authorizes most communications before arrest, the planned Manual changes provide that, as a matter of internal policy guidance, federal prosecutors generally should not make overt contacts with represented targets of investigations. However, the planned Manual provisions permit overt contacts with a represented target when initiated by the target; when necessary to prevent death or physical injury; when the relevant investigation involves ongoing or additional crimes, or different crimes from that to which the representation relates; or when a United States Attorney or an Assistant Attorney General expressly concludes, under all of the circumstances, that the contact is needed for effective law enforcement.

Finally, the regulation and planned Manual provisions also address when a government attorney may communicate with an employee, officer, or director of a represented corporation or organization without the consent of counsel. The regulation generally prohibits a government attorney from communicating with a current, high-level employee of a represented organization who participates as a "decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter" once the organization has been named as a defendant in a criminal or civil law enforcement proceeding. Further, the contemplated Manual provisions would generally prohibit contacts without the consent of counsel with controlling individuals of organizations that have not yet been named as defendants but are targets of federal criminal or civil law enforcement investigations.

This final rule recognizes that state courts and disciplinary bodies generally play the primary role in regulating the conduct of all attorneys, including those who work for the federal government. The Department also recognizes that with respect to most matters, Department attorneys are subject to the bar rules and disciplinary proceedings of the states in which they are licensed. However, the Department believes it must be the final arbiter of the scope of policing with respect to ex parte contacts involving federal prosecutors, subject to the Constitution and the laws of the United States. As noted above, because of the expanded participation of federal prosecutors in preindictment investigations, and the trend of state courts increasingly to apply DR 7-104 and Model Rule 4.2 expansively against federal prosecutors, these rules have affected and circumscribed the power of federal officials to carry out their legally mandated responsibilities. This regulation provides that the Attorney General shall have exclusive authority to determine these rules. Further, the Department's rules are intended fully to preempt and supersede the application of state and local court rules relating to contacts by Department of Justice attorneys when carrying out their federal law enforcement functions. Only if the Attorney General finds that a Department attorney has willfully violated these new rules would that attorney continue to be subject to the full measure of state disciplinary jurisdiction.

The Department is confident that, taken together, this regulation, the planned Manual amendments, and this supplemental information will promote the public interest in effective law enforcement in a manner that also conforms to the highest standards of legal ethics.

The procedures established by this rule apply to conduct occurring after the rule's publication.

## II. Rulemaking History

On November 22, 1992, the Department of Justice published in the Federal Register a proposed rule regarding communications with represented persons. 57 FR 54737. By December 21, 1992, the close of the comment period, the Department had received comments from 20 sources.

The Department was concerned that not all interested parties had received sufficient opportunity to respond during the initial comment period. Noting "the complex and important nature of the rule to the criminal and civil justice systems and the licenses and livelihoods of its attorneys," on July 26, 1993, the Department reissued the proposed rule for an additional 30-day comment period. 58 FR 39976. The Department received 219 comments following this second publication of the proposed rule.

On March 3, 1994, the Department issued a new proposed rule governing the same subject matter for an additional 30-day comment period. 59 FR 10086. In response to concerns raised by bar organizations, bar counsel, state and federal judges, and others, that proposal reflected substantial changes from the earlier proposals. This publication of the proposed rule was accompanied by the issuance of companion provisions that the Department intends to include in the United States Attorneys' Manual, which set forth certain more restrictive policies with regard to overt investigatory communications. The discussion that follows summarizes the issues that were raised in response to the Department's latest publication of the proposed rule.

### III. Summary of Comments Received

During the most recent comment period, which closed on April 4, 1994, timely comments were received from 31 sources, including nine individuals, nine organizations, four state court judges, one federal court judge, five U.S. Attorney's Offices, two Department of Justice components, and one other federal agency. Of the 31 comments received, nine comments supported promulgation of the proposed rule, 20 comments opposed the rule, and two other comments failed to take any definitive position on the proposed rule as a whole. As with previous versions of this rule, many writing in opposition to the Department's proposal argued that it unfairly permits the Department to hold its attorneys to ethical rules different from those that apply to all other attorneys. Other opponents of the proposed rule—most notably the ABA and a special committee of the Conference of State Supreme Court Chief Justices—challenged the proposed rule on constitutional and statutory grounds, arguing that the Department lacks authority to preempt state ethics rules or to supersede local federal district court rules. Those writing in support of the proposal generally praised it for bringing certainty and clear guidance to an area that previously has been unclear and disruptive of law enforcement functions.

The Department has considered carefully each comment and appreciates the thoughtfulness reflected in them. The Department's responses to those comments are discussed below, either in the "General Comments" section or in the context of the particular section or paragraph to which they pertain as part of the "Section-by-Section" analysis. All revisions adopted in the final rule are indicated.

### IV. General Comments

Comments were received on the following three general issues: (1) the need for the rule; (2) the constitutional and statutory authority for the rule; and (3) the sufficiency of the rule's internal enforcement mechanisms. These general comments essentially repeated comments received in response to previous versions of the proposed rule. After careful reconsideration of these recurring issues, the Department's position on many of these subjects—in particular, the constitutional and statutory basis for this rule and the need for and advisability of such a rule—remains the same. Therefore, the Department's response in this section builds upon responses published in previous commentaries.

*A. The Need for the Rule.* One state court judge, one federal judge, five individuals, and six organizations criticized the proposed rule as holding government attorneys to lower ethical standards than those that apply to all other attorneys. This comment was formulated in a variety of ways, with the following as illustrative examples: "[t]he rules apply to everyone, and it should especially apply to attorneys in Government service;" "I do not know why it is that the department somehow thinks [it] can exempt [its] attorneys from the rules of conduct that all of the lawyers must abide by;" "[Department] lawyers should be treated as subject to the same rule of law that applies to the conduct of all other lawyers;" and "[f]airness simply will not tolerate exalting the role of one adversary's advocate above the other."

In response to these comments, the Department finds it important, first, to make clear that this rule is not designed to diminish the ethical responsibilities of government attorneys; it is intended to clarify those responsibilities. The current situation, in which state contact rules purport to govern the substantive conduct of federal law enforcement attorneys, has proven unsatisfactory because the standards of ethical conduct are uncertain and subject to unpredictable and varying interpretations. This uncertainty as to what constitutes appropriate conduct by Department attorneys has interfered with the responsible exercise of the law enforcement duties of Department attorneys. The basic purpose of this regulation is to provide a uniform rule of ethics regarding contacts with represented persons that can be consistently and predictably applied. By doing so, the regulation will allow all Department attorneys involved in a federal law enforcement proceeding to understand and abide by applicable standards. There is simply no basis for believing that there will be a reduction in compliance with ethical standards by federal prosecutors.

Many commenters opposing the proposed rule dismissed as unnecessary the creation of a uniform set of rules for Department attorneys. Some commented that the *ex parte* contact rules currently in place do not vary significantly, given that virtually every jurisdiction has adopted some version of the ABA's anti-contact rule. Other commenters argued that, in any event, state and local ethics rules do not interfere substantially with federal law enforcement activities because only in rare instances have federal prosecutors actually been investigated by a state disciplinary authority.

Although an anti-contact rule is in effect in nearly all jurisdictions, it is not interpreted uniformly. Among other things, jurisdictions differ as to whether the anti-contact rule applies in the investigatory stage, *compare United States v. Ryans,* 903 F.2d 731, 739 (10th Cir.), *cert. denied,* 498 U.S. 855 (1990) *with United States v. Hammad,* 858 F.2d 834, 839 (2d Cir. 1988), *cert. denied,* 498 U.S. 871 (1990); whether the rule applies to prosecutors, *compare Matter of Doe,* 801 F. Supp. 478 (D.N.M. 1992) *with* District of Columbia Rules of Professional Conduct Rule 4.2 cmt. ¶ 8; whether the rule applies to former employees of a represented corporate party, *compare Public Serv. Elec. & Gas v. Associated Elec. & Gas,* 745 F. Supp. 1037, 1042 (D.N.J. 1990) *with Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 628 (S.D.N.Y. 1990); and whether the rule applies to all corporate employees who could make admissions on behalf of the corporation or only to employees who belong to a so-called "control group." *Compare* Model Rules of Professional Conduct Rule 4.2 cmt. (1983) *with Wright by. Wright v. Group Health Hosp.,* 691 P.2d 564 (Wash. 1984). The lack of uniformity in interpreting existing anti-contact rules has created concern among government attorneys of inadvertently running afoul of state court or federal district court rules. The threat of disciplinary proceedings (and the possible resulting loss of license and livelihood) against a government attorney engaged in legitimate law enforcement activities has had a chilling effect on the responsible exercise of law enforcement duties. Many federal prosecutors who submitted comments in connection with the earlier versions of this rule stated that they feel compelled to refrain from authorizing or participating in legitimate and ethical law enforcement activities because of the current uncertainty as to the acceptability of various *ex parte* contacts.

To add to the confusion inherent in the current situation, the Department's attorney staff consists of members of many different state bars who commonly appear in multiple jurisdictions. Under the Model Rule's approach, an attorney practicing in a jurisdiction in which he or she is not a member of the bar remains subject to the jurisdiction of the bar of which he or she is a member, but if the rules in the two places differ, principles of conflict of laws may apply. Model Rules of Professional Conduct Rule 8.5 and cmt. (1983). As a result, when state anti-contact rules purport to govern the conduct of federal attorneys, the

**Attachment A - page 4 of 6**

question of which rule governs the conduct of Department lawyers may often be complicated. Indeed, as was noted in the "Background" section of this commentary, government attorneys may be subject to substantially different rules when they are working alongside one another on the same case. One commenter proposed that instead of issuing a uniform contacts rule for Department attorneys, the Department should encourage its attorneys to practice only in a given jurisdiction and to obtain bar membership in that jurisdiction. However, Congress has made clear that Department attorneys should be able to practice in different jurisdictions so long as they are a member of some state bar, and there is a significant federal interest in preserving the Department's ability to assign its attorneys wherever there are law enforcement needs to be met. This uniform rule regarding contacts with represented persons achieves consistency and high ethical standards without hampering federal law enforcement activity.

In formulating this uniform rule, the Department has not disregarded existing state ethics rules, as a number of comments imply. As set forth in section 77.12, this regulation is specifically intended to fit within the structure of DR 7–104 and Model Rule 4.2, as well as analogous state and local district court disciplinary rules. Both DR 7–104 and Model Rule 4.2 provide that communications that are "authorized by law" are exempted from the general prohibition of the rule and, according to the Reporter for the commission that developed the Model Rules, Yale Law School ethics professor Geoffrey Hazard, this exception was drafted with the "government lawyer" problem in mind. See Letter of January 19, 1994 from Professor Geoffrey C. Hazard, Jr. to Chief Justice E. Norman Veasey, at 2 ("I can state from first-hand knowledge that this [authorized by law] qualification was drafted mindful of the government lawyer problem, among others. In my opinion it is within the authority of the federal government, particularly the Justice Department, to promulgate such regulations.") (This letter and all comments are on file with the Office of the Associate Attorney General, United States Department of Justice). As explained later in this commentary, the Department's position is that communications with represented persons undertaken pursuant to this duly promulgated regulation clearly constitute communications "authorized by law." Therefore, in nearly all jurisdictions, communications approved under the Department's rules will be appropriate under existing ethical rules as well.

Furthermore, the content of this rule derives largely from DR 7–104 and Model Rule 4.2 and is wholly consistent with the principles underlying these rules. This regulation grants greater latitude for lawyer communications with a represented "person" during the investigative phase of law enforcement than with a represented "party" after adversarial proceedings have commenced. This distinction appears in the texts of DR 7–104 and Model Rule 4.2, which prohibit only communications with "a party" the lawyer knows to be represented by another lawyer in the matter. This distinction also accords with the great weight of federal court interpretations of the state ethics rules. See *Ryans*, 903 F.2d at 739 ("We are not convinced that the language of [the anti-contact rule] calls for its application to the investigative phase of law enforcement" because "the rule appears to contemplate an adversarial relationship between litigants, whether in a criminal or a civil setting"); *United States v. Sutton*, 801 F.2d 1346, 1365–66 (D.C. Cir. 1986) (anti-contact rule "was never meant to apply to [pre-indictment, non-custodial] situations such as this one"); *United States v. Dobbs*, 711 F.2d 84, 86 (8th Cir. 1983) (agent's "noncustodial interview of [suspect] prior to the initiation of judicial proceedings against the appellant did not constitute an ethical breach"); *United States v. Fitterer*, 710 F.2d 1328, 1333 (8th Cir.) (anti-contact rule does not prohibit prosecutors from using undercover informants to communicate with represented persons prior to indictment), cert. denied, 464 U.S. 852 (1983); *United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983) (prosecutor's use of undercover informant in pre-indictment, non-custodial setting to communicate with represented person does not violate DR 7–104); *United States v. Vasquez*, 675 F.2d 16, 17 (2d Cir. 1982) (anti-contact rule was not intended to prohibit use of undercover informants prior to indictment); *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.) ("the government's use of such investigative techniques at this stage of a criminal matter does not implicate the sorts of ethical problems addressed by the Code"), cert. denied, 452 U.S. 920 (1981); *United States v. Weiss*, 599 F.2d 730, 739–40 (5th Cir. 1979) (prosecutor's investigatory communications upheld against challenge under anti-contact rule); *United States v. Lemonakis*, 485 F.2d 941, 953–56 (D.C. Cir. 1973) (anti-contact rule does not apply prior to indictment, and use of undercover informant did not violate rule in any event), cert. denied, 415 U.S. 989 (1974); *In re U.S. Dept. of Justice Antitrust Investigation*, 1992–2 Trade Cases (CCH) ¶ 69,933, at 68,469 (D. Minn. 1992) (Minnesota's Rule 4.2 held inapplicable because "[t]he word 'parties' in Rule 4.2 indicates the presence of a lawsuit" and "[t]he present controversy relates to an investigation, not a lawsuit"); *United States v. Infelise*, 773 F. Supp. 93, 95 n.3 (N.D. Ill. 1991) (DR 7–104(A)(1) "speaks in terms of communications with a 'party', suggesting that the rule is to be applied only when adversarial proceedings have been initiated"); *United States v. Western Electric Co.*, 1990–2 Trade Cases (CCH) ¶ 69,148, at 64,314 & n.6 (D.D.C. 1990); *United States v. Buda*, 718 F. Supp. 1094, 1096 (W.D.N.Y. 1989); *United States v. Chestman*, 704 F. Supp. 451, 454 (S.D.N.Y. 1989), rev'd on other grounds, 903 F.2d 75 (2d Cir. 1990), aff'd in part, 947 F.2d 551 (2d Cir. 1991) (en banc); *United States v. Galanis*, 685 F. Supp. 901, 903–04 (S.D.N.Y. 1988); *United States v. Guerrerio*, 675 F. Supp. 1430, 1438 (S.D.N.Y. 1987). But see *United States v. Hammad*, 858 F.2d 834, 839 (2d Cir. 1988) (pre-indictment communications may be improper if accompanied by "misconduct" on the part of the government), cert. denied, 498 U.S. 871 (1990); *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.), cert. denied, 488 U.S. 867 (1988); *United States v. Sam Goody, Inc.*, 518 F. Supp. 1223, 1224–25 n.3 (E.D.N.Y. 1981), appeal dismissed, 675 F.2d 17 (2d Cir. 1982); see also Comment to ABA Model Rule 4.2 (notwithstanding use of the term "party," the rule does not require that a person be "a party to a formal legal proceeding").

The courts have readily recognized that Department attorneys engaged in criminal and civil law enforcement matters perform distinctly different functions from attorneys engaged in the private practice of law. The courts have further recognized that the rules governing communications with represented persons should take account of these differences. To disregard these differences would therefore impose substantial and deleterious restrictions on the legitimate law enforcement duties of Department attorneys that do not presently exist.

For much the same reasons, the Department believes that there is a basis for distinguishing for purposes of this regulation between Department attorneys engaged in law enforcement activities (who are covered by this regulation) and Department attorneys